| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>William C. Beall, Bar No. 97100<br>Beall & Burkhardt, APC<br>1114 State Street, Suite 200<br>Santa Barbara, CA 93101<br>Phone (805) 966-6774; Fax (805) 963-5988<br>Will@BeallandBurkhardt.com<br><br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**                    [

| In re:<br>New Holland, LLC<br><br><br><br><br><br>                                    Debtor(s). | CASE NO.: 2:21-bk-16454-BR<br>CHAPTER: 11 |
|---|---|
|  | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** (with supporting declarations) **(REAL PROPERTY)** |
|  | DATE: 11/23/2021<br>TIME: 10:00 a.m.<br>COURTROOM:1668 |

**Movant:** Grimm Investments, LLC

1. **Hearing Location**:
   - ☒ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☐ 3420 Twelfth Street, Riverside, CA 92501
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 1                              **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 10/27/21

Beall & Burkhardt, APC
_____
Printed name of law firm (if applicable)

William C. Beall
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                    Page 2                    F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 13511 W. Mulholland Drive.   And see attachments
   *Unit/suite number*:
   *City, state, zip code*: Beverly Hills, CA 90270

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _A___):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13
   was filed on (*date*) _08/13/2021_.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

   (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

   (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

   (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

   (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

   (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

   (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☒ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: (Declaration(s) MUST be signed under penalty of perjury and attached to this motion)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                     Page 4                     F 4001-1.RFS.RP.MOTION

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☒ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☒ See attached continuation page for other relief requested.

Date: 10/27/21

Beall & Burkhardt, APC
Printed name of law firm (*if applicable*)
William C. Beall
Printed name of individual Movant or attorney for Movant

*William C Beall*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 5                          F 4001-1.RFS.RP.MOTION

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) <u>Colin Miller</u>_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐ I am the Movant.

    b.  ☐ I am employed by Movant as (*state title and capacity*):

    c.  ☒ Other (*specify*): Controller of the Movant

2.  a.  ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐ Other (*see attached*):

3.  The Movant is:

    a.  ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

    b.  ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit <u>A</u>.

    c.  ☐ Servicing agent authorized to act on behalf of the:

        ☐ Holder.
        ☐ Beneficiary.

    d.  ☐ Other (*specify*):

4.  a.  The address of the Property is:

        *Street address*: 13511 W. Mulholland Drive.   And see attachments
        *Unit/suite no.*:
        *City, state, zip code*: Beverly Hills, CA 90270

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        Recorded as Instrument No. 20180241310 in the official records of the County of Los Angeles

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence  b. ☒ Other residence
   c. ☐ Multi-unit residential  d. ☐ Commercial
   e. ☐ Industrial  f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) (*specify*): Owned jointly with 8th Street MB, LLC

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☐ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _____.

7. Movant holds a ☐ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit A____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit B____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 5,000,000 | $ | $ |
| b. | Accrued interest: | $ 1,868,333.35 | $ | $ |
| c. | Late charges | $ 87,916.67 | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 8,274.58 | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): | $ 6,964,524.60 | $ | $ |

   h. ☒ Loan is all due and payable because it matured on (*date*) 03/22/2021

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of
_____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $_____.

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $ 10,275,500 , established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☒ Other (*specify*):
Separately filed Appraiser's Declaration.

    e. **Calculation of equity/equity cushion in Property:**

      Based upon ☒ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Grimm Investment, LLC | $ 2,000,000 | $ 2,249,749.30 |
| 2nd deed of trust: | Movant | $ 6,364,166.66 | $ 6,964,524.60 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | County of Los Angeles | $ 1,023,189 | $ 1,023,189 |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 10,237,462.90 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☒ Relevant portions of the Debtor's schedules.

      (3) ☒ Other (*specify*): Declaration of Colin Miller

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 38,037 and is 1 % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 38,037 .

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 8                    F 4001-1.RFS.RP.MOTION

i. ☒ Estimated costs of sale: $ 719,285_____ (estimate based upon __7_____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                              $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                    $[                    ]

         TOTAL POSTPETITION DELINQUENCY:          $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                   Page 9                         F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☒ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

  a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

  b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

  c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

  d. ☒ Other (specify):
     Movant is in possession of a Deed in Lieu of Foreclosure, which needs to be recorded.


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

  a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

  b. ☐ Multiple bankruptcy cases affecting the Property include:

    1. Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____   Date discharged: _____   Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not  granted.

    2. Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____   Date discharged: _____   Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not  granted.

    3. Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____   Date discharged: _____   Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 10                                    F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/27/21 | Colin Miller | |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

### ADDITIONAL MATTERS

### Points and Authorities

### Additional collateral

Movant's debt is secured by 8 pieces of property with separate legal descriptions and assessor's parcel numbers. The full legal descriptions are attached to the Trust Deed, Exhibit A hereto. Movant has obtained 8 separate appraisals, one for each different legal parcel, and those appraisals are attached to the Declaration of Larry Scott filed concurrently herewith. A summary of the various valuations is included in the next section. The same parcels serve as collateral for the First Trust Deed, also held by Grimm Investments, LLC.

### Movant has not commenced a foreclosure proceeding

In this case, Movant has not commenced a foreclosure. Instead, the Debtor and its co-owner have provided Movant with a Deed in Lieu of Foreclosure. A true and correct copy of the Deed in Lieu of Foreclosure is attached hereto as Exhibit C and incorporated herein by this reference. The Deed in Lieu of Foreclosure as accompanied by an Agreement. A true and correct copy of the Deed in Lieu of Foreclosure Agreement is attached hereto as Exhibit D and incorporated herein by this reference.

This procedure was agreed at the specific request of the Debtor and its co-owner, 8th Street MB, LLC. The Debtor and its co-owner requested the Deed in Lieu procedure as they informed Movant that a Notice of Default would adversely affect the value of the properties. Movant agreed to accept the Deed in Lieu as an alternative method of realizing on its collateral.

Although it is possible for such a procedure to prejudice the Trustor under a Trust Deed, in this case, that has not occurred. The Deed in Lieu Agreement is dated December 22, 2020. If Movant had commenced a non-judicial foreclosure at that time, it would have been able to hold a Trustee's sale in late April, 2021. Holding the Deed in Lieu for a similar time period, as contemplated by the Agreement merely permitted the Debtor to attempt to pay the obligation without the recordation of a Notice of Default. In fact, various negotiations meant that the Deed in Lieu had not been recorded as of the date this Chapter 11 was commenced, August 13, 2021, almost eight full months after the date of the Deed in Lieu of Foreclosure Agreement. Grimm Investments, LLC extended the time periods in the Deed

12

in Lieu of Foreclosure Agreement more than a dozen times at the Debtor's request, upon it's representations that it had an imminent sale.

### Debtor's co-owner

All of the collateral properties are owned half by the Debtor, and half by 8th Street MB, LLC. Each of Exhibits A, B, C and D are signed by both the Debtor and 8th Street MB, LLC. All signatures for both the Debtor and 8th Street MB, LLC are made by the same individual, Patrick Kealy. All negotiations on behalf of either the Debtor or 8th Street MB, LLC have been with Mr. Kealy.

Since the co-owner is an insider and related entity, this Motion will be served upon the co-owner, and the Motion specifically seeks relief from the stay in the event of a filing by 8th Street MB, LLC.

### Movant is not adequately protected

Movant is not adequately protected. The appraised values of all the properties that form Movant's collateral are as follows:

| | | |
|---|---|---|
| 3430 N Dixie | 2386-003-004 | $743,000.00 |
| 13511 W. Mullholland | 2386-002-005 | $2,973,000.00 |
| N. Dixie Canyon | 2386-010-008 | $253,000.00 |
| 35551 N. Dixie Canyon | 2386-010-009 | $862,000.00 |
| 3400 N. Beverly | 2386-003-003 | $353,000.00 |
| 36010 N. Ventura | 2386-011-002 | $2,351,000.00 |
| 13420 W. Sidney Dr. | 2386-006-002 | $557,000.00 |
| 3441 N. Dixie | 2386-006-001 | $2,183,500.00 |
| TOTAL: | | $10,275,500.00 |

The Debt structure is as follows:

| Property Taxes | From Schedules (RJN A) | $1,023,189.00 |
| First Lien | From Declaration of Colin Miller below | $2,249,749.30 |
| Movant | From Motion | $6,964,524.60 |
| Total | | $10,237,462.90 |

The equity of less than $40,000 is razor thin.  This is less than 1% of the value of the property.  Essentially the Debtor has no realizable equity in the collateral, since costs of sale will prevent any ability for the Debtor to benefit from the property.

**The Debtor has no Equity in the Property and the Property is not Necessary to an Effective Reorganization**

From the analysis above, the Debtor's equity is tiny, far less than the costs of sale or refinance, not to mention the costs of this Chapter 11 proceeding.  Such a small equity is not realizable equity for the purposes of 362(d)(2).  See, e.g., In re Figueroa Ruiz, 121 B.R. 419 (Bky. D.P.R. 1990).

Nor is the property necessary for an effective reorganization.  The Debtor does not have a viable Plan in contemplation, and without equity, there is nothing the property can contribute to a Plan in this case.  As the Court well knows, the Debtor must establish that the property is necessary to a reorganization that is "reasonably in prospect" United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988).

**362(d)(3) will soon give additional grounds for relief**

The Court has made an oral ruling that the case is "single asset real estate".  No Order has yet been entered, but 30 days after entry of such an Order, relief will be appropriate unless the Debtor has either commenced payments, or has proposed a Plan that has a reasonable possibility to be confirmed within a reasonable time.

This argument is not yet ripe.  Attached as Exhibit B to the Request for Judicial Notice is the Plan filed by the Debtor in this case.  It is unknown whether the Debtor will file another Plan, or amend this one, within 30 days of the entry of the single asset real estate order.  Movant submits that the current

1  Plan is not one that has a reasonable possibility to be confirmed within a reasonable time, and will make

2  that argument if it becomes ripe.

3  <u>Conclusion</u>

4  Relief is appropriate under (d)(1) and (d)(2), and will soon be appropriate under (d)(3).  The stay

5  should be lifted.  Specifically, Movant seeks relief to record the Deed in Lieu of Foreclosure (Exhibit C

6  hereto).  In addition, Movant requests that the Order provide for prospective relief from stay as to any

7  Chapter proceeding filed by 8th Street MB, LLC.

8  Dated: _Oct  27_, 2021                         BEALL & BURKHARDT, APC

9

10                                                        By: _William C. Beall_

11                                                        William C. Beall, Counsel for Grimm Investments,
                                                          LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUPPLEMENTAL DECLARATION OF COLIN MILLER

I, Colin Miller, declare and state as follows:

1.    I am Controller of Grimm Investments, LLC, as well as the custodian of its records as stated above.  Each of the matters set forth herein are stated of my personal knowledge and if called as a witness I could competently testify to each of them.

2.    Movant's debt is secured by 8 pieces of property with separate legal descriptions and assessor's parcel numbers.  The full legal descriptions are attached to the Trust Deed, Exhibit A hereto.  The same parcels serve as collateral for the First Trust Deed, also held by Grimm Investments, LLC.

3.    Movant has not commenced a foreclosure.  Instead, the Debtor and its co-owner have provided Movant with a Deed in Lieu of Foreclosure.  A true and correct copy of the Deed in Lieu of Foreclosure is attached hereto as Exhibit C and incorporated herein by this reference.  The Deed in Lieu of Foreclosure as accompanied by an Agreement.  A true and correct copy of the Deed in Lieu of Foreclosure Agreement is attached hereto as Exhibit D and incorporated herein by this reference.

4.    Grimm Investments, LLC extended the time periods in the Deed in Lieu of Foreclosure Agreement more than a dozen times at the Debtor's request, upon it's representations that it had an imminent sale.

5.    This procedure was agreed at the specific request of the Debtor and its co-owner, 8th Street MB, LLC.  The Debtor and its co-owner requested the Deed in Lieu procedure as they informed Movant that a Notice of Default would adversely affect the value of the properties.  Movant agreed to accept the Deed in Lieu as an alternative method of realizing on its collateral.

6.    All of the collateral properties are owned half by the Debtor, and half by 8th Street MB, LLC.  Each of Exhibits A, B, C and D are signed by both the Debtor and 8th Street MB, LLC.  All signatures for both the Debtor and 8th Street MB, LLC are made by the same individual, Patrick Kealy.  All negotiations on behalf of either the Debtor or 8th Street MB, LLC have been with Mr. Kealy.

7.     Grimm Investments, LLC is also the holder of a note, and beneficiary of the First Deed of Trust secured by all of the parcels which form the collateral for Movant. As of October 13, 2021, there is owing with regard to the First Lien:  Principal:  $1,946,156.00, Interest: $281,699.04, Payment Late Fees: $21,894.26, Total: $2,249,749.30.

I declare the foregoing is true under penalty of perjury.

Dated: 10/27/21

Colin Miller

6

This page is part of your document - DO NOT DISCARD



**20180241310**



Pages:
0019

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/13/18 AT 08:00AM

| | |
|---|---|
| FEES: | 188.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 413.00 |



L E A D S H E E T



201803130150005

00014991472



008957079

SEQ:
16

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T18

Exhibit A - Page 18

RECORDING REQUESTED BY

Tiger Title Company of California

Grimm Investments, LLC

WHEN RECORDED, MAIL TO:

Simas Taylor LLP
6465 Nursery Way
San Luis Obispo, CA 93405

APNs: 2386-002-005; 2386-003-004; 2386-003-003;
2386-010-009; 2386-010-008; 2386-011-002; 2386-006-002;
2386-006-001

SPACE ABOVE THIS LINE FOR RECORDER'S USE

03/13/2018

*20180241310*

DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (this "**Deed of Trust**"), is given as of March 1, 2018 by New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd, Hermosa Beach, CA 90254 (collectively, "**Trustor**") to Fidelity National Title Company, a California corporation ("**Trustee**"), for the benefit of Grimm Investments, LLC, a California limited liability company, having an address at 1377 East Valley Road, Santa Barbara, CA 93108 (together with its successors and assigns, "**Beneficiary**").

ARTICLE I
DEFINITIONS

For purposes of this Deed of Trust, the following terms shall have the following meanings. Capitalized terms used in this Deed of Trust without definition shall have the meanings ascribed to such terms in the Loan Agreement.

"**Event of Default**" has the meaning set forth in the Note.

"**Guaranty Agreement**" means that certain Guaranty Agreement dated of even date herewith and executed by Patrick Kealy guaranteeing the payment of the Guaranteed Obligations (as defined in the Guaranty Agreement), as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"**Land**" means that certain real property located at 13511 Mulholland Drive, Beverly Hills, California, as further described on Exhibit A attached hereto and made a part hereof.

"**Loan**" means a certain loan in the original principal amount of FIVE MILLION DOLLARS and 00/100 DOLLARS ($5,000,000).

"**Loan Agreement**" means a certain Loan Agreement, dated of even date herewith by and among Trustor, as the borrower, and Beneficiary, as the lender (as amended, amended and restated, supplemented, renewed or otherwise modified from time to time).

"**Loan Documents**" has the meaning set forth in the Loan Agreement.

"**Note**" has the meaning set forth in the Loan Agreement.

"**Obligor**" means Trustor, any Guarantor under the Guaranty Agreement, together with their respective successors and assigns.

"**Permitted Encumbrances**" means: (a) any matters set forth in any policy of lender title insurance issued to Beneficiary which are acceptable to Beneficiary as of the date hereof; (b) the liens and security interests evidenced by this Deed of Trust; (c) statutory liens for real estate taxes and assessments on the Property which are not yet delinquent; (d) other liens and security interests (if any) in favor of Beneficiary; (e) the rights of tenants in possession as of the date hereof, if any, pursuant to Leases approved by Beneficiary and the rights of future tenants under any Leases made in accordance with the Loan Documents, and the assignment of such Leases pursuant to this Deed of Trust; and (f) any matters consented to in writing by Beneficiary in its sole and absolute discretion.



SEE EXHIBIT "A"
ATTACHED

Exhibit A - Page 19



"Secured Indebtedness" the principal amount of the Loan as secured by and evidenced by, the Note and the Loan Agreement, together with all interest accrued and unpaid thereon and all other sums due to Beneficiary in respect of the Loan under the Note, the Loan Agreement, or this Deed of Trust and the performance and observance of all the provisions hereof, of the Loan Agreement and of all other documents, agreements, and certificates executed and/or delivered by Trustor in connection with the Loan Documents.

## ARTICLE II
## GRANT OF SECURITY

Section 2.01    Grant. In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor does hereby GRANT, BARGAIN, SELL, ASSIGN, TRANSFER, WARRANT, CONVEY, AND MORTGAGE, to Trustee, in trust for Beneficiary, with power of sale and right of entry, the following property, rights, interests, and estates now owned, or hereafter acquired by Trustor (collectively, the "Property"):

(a)    The Land and all minerals, oil, gas, and other hydrocarbon substances, sand, gravel, and other materials that may be mined, produced, or extracted from the Land, in, on, or under the surface of the Land, as well as all development rights, permits, licenses, air rights, water, water rights, water stock, utility reservations, sanitary sewer, and other utility capacities relating to the Land.

(b)    All buildings, structures, and other improvements of every kind and nature whatsoever now or hereafter situated on the Land (collectively, the "Improvements"), all apparatus, equipment, fittings, fixtures, machinery, materials, supplies, and other items of personal property now or hereafter affixed or attached to, installed in, or used in connection with the operation or maintenance of the Land or Improvements including any fixtures as defined in the Uniform Commercial Code in effect in the jurisdiction in which the Land and Improvements are located and/or where Trustor is located or organized (the "UCC") and any appliances, storm doors and windows, lighting, plumbing, pipes, pumps, tanks, conduits, sprinkler and other fire prevention or suppression, refrigeration, incineration, escalator, elevator, loading, security, water, steam, gas, electrical, telephone, cable, internet, switchboards, storm and sanitary sewer, drainage, HVAC, boilers, waste removal, or other utility equipment or systems (collectively, the "Fixtures and Equipment") and building, construction, development, and landscaping supplies and materials now or hereafter affixed to or located at the Land or the Improvements and all replacements, substitutions, and additions to the foregoing.

(c)    All easements, rights-of-way or use, strips and gores of land, streets, ways, alleys, passages, sewer rights, utility reservations and capacity rights, waters, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, minerals, royalties, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating, or pertaining to the Land or the Improvements, or any part thereof and the reversions, remainders, rents, issues, and profits thereof; and all land lying in the bed of any street, road, or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim, and demand whatsoever, both at law and in equity, of Trustor of, in, and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto.

(d)    Any and all rents, revenues, issues, profits, royalties, income, cash proceeds, security deposits, accounts, moneys, and other benefits that are now due or may hereafter become due by reason of the renting, leasing, bailment of all or any portion of the Land or the Improvements, or the use or occupancy thereof (collectively "Rents").

(e)    Subject to the rights of Trustor hereunder and under the Loan Documents, all leasehold estates, leases, subleases, sub-subleases, licenses, concessions, occupancy agreements, or other agreements (written or oral, now or at any time in effect and every modification, amendment, or other agreement relating thereto, including every guarantee of the performance and observance of the covenants, conditions, and agreements to be performed and observed by the other party thereto) which grant a possessory interest in, or the right to use or occupy, all or any part of the Land and/or Improvements, together with all related security and other deposits (in each case, as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, collectively, "Leases").

(f)    All other contracts and agreements in any way relating to, executed in connection with, or used in, the development, construction, use, occupancy, operation, maintenance, enjoyment, acquisition, management, or

2

ownership of the Land and/or Improvements, or any sale thereof (including, produced in or relating to the Land and/or Improvements (collectively, in each case as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, the "Property Agreements") including: (i) all construction contracts, architects' agreements, engineers' contracts, utility contracts, letters of credit, escrow agreements, maintenance agreements, management, leasing and related agreements, parking agreements, equipment leases, service contracts, operating leases, catering and restaurant leases and agreements, agreements for the sale, lease or exchange of goods or other property, agreements for the performance of services, permits, variances, licenses, certificates, and entitlements; (ii) all material agreements and instruments under which Trustor or any of its affiliates or the seller of the Land and/or Improvements have remaining rights or obligations in respect of Trustor's acquisition of the Land and/or Improvements or equity interests therein; (iii) business licenses, variances, entitlements, certificates, state or local health department licenses, liquor licenses, food service licenses, certificates of need, and all other permits, licenses, and rights obtained from any governmental authority or private person; (iv) all rights of Trustor to receive monies due and to become due under or pursuant to the Property Agreements; (v) all claims of Trustor for damages arising out of or for breach of or default under the Property Agreements; and (vi) all rights of Trustor to terminate, amend, supplement, modify, or waive performance under the Property Agreements, to compel performance and otherwise to exercise all remedies thereunder, and, with respect to Property Agreements that are letters of credit, to make any draws thereon.

(g)     All insurance or other settlement proceeds relating to or arising out of the foregoing, all proceeds of a sale of all or any portion of the foregoing, and all causes of action, claims, compensation, awards, damages, proceeds, payments, relief, or recoveries, including interest thereon, as a result of any Casualty or Condemnation (as defined in the Loan Agreement) of all or any part of the Land and/or Improvements or for any damage or injury to it or for any loss or diminution in value of the Land and/or Improvements (collectively, the "**Proceeds**").

(h)     All refunds, rebates, or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction.

(i)     The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property.

(j)     All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications, and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management, or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title, and interest of Trustor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Trustor thereunder.

(k)     All tradenames, trademarks, service marks, logos, copyrights, goodwill, books and records, and all other general intangibles relating to or used in connection with the operation of the Property.

(l)     All reserves, escrows, and deposit accounts maintained by Trustor with respect to the Property, including without limitation, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments, and other property held therein from time to time and all proceeds, products, distributions or dividends, or substitutions thereon and thereof (collectively, the "**Accounts**");

(m)     To the extent not included in the foregoing, all cash and non-cash proceeds, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions, renewals, extensions, substitutions, replacements, and accessions of and to any and all of the foregoing.

(n)     Any and all other rights of Trustor in and to the items set forth in subsections (a) through (m) above.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns, forever; PROVIDED, HOWEVER, that if the entire Secured Indebtedness is paid, performed and discharged in full, then the liens, security interests, estates, and rights granted by Trustor shall cease, terminate and become void (except those obligations that expressly survive the reconveyance of this Deed of Trust shall continue), and shall be released or reconveyed by Trustee, at the cost and expense of Trustor.

3

ARTICLE III

ASSIGNMENT OF LEASES AND RENTS

Section 3.01    Assignment of Leases and Rents.

(a)    In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor hereby absolutely, presently, irrevocably, and unconditionally grants, assigns, and transfers to Beneficiary all of Trustor's present and future right, title, interest, and estate in, to, and under all current and future Leases and Rents, and the absolute, present, irrevocable, and unconditional right to receive, collect, and possess all Rents

(b)    This Article III shall be fully operative and effective to create a present security interest in existing and future Rents under California Civil Code § 2938 without any further action on the part of Trustor or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents whether or not Beneficiary takes possession of the Property. Trustor hereby further grants to Beneficiary the right to: (i) enter and take possession of the Property for the purposes of collecting the Rents; (ii) dispossess by the usual summary proceedings of any tenant defaulting in the payment thereof to Beneficiary; (iii) let the Property or any part thereof; and (iv) apply the Rents, after payment of all necessary charges and expenses (including attorneys' fees and costs) to the Secured Indebtedness.

(c)    Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to: (i) enforce in Trustor's name or Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation, checks and money orders, tendered as payments of Rents; (ii) demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in Trustor's or Beneficiary's name, for all Rents; and (iii) do any and all things necessary and proper to carry out the purposes of this Article III.

(d)    The execution of this Deed of Trust constitutes Trustor's irrevocable consent to Beneficiary's entry and taking possession of the Property pursuant to this Article III, whether or not sale or foreclosure has been instituted. Neither the exercise of any rights under this Article III by Beneficiary nor the application of the Rents to the Secured Indebtedness shall cure or waive an Event of Default or notice of default, and shall be cumulative with all other rights and remedies of Beneficiary.

(e)    Such grant, assignment, and transfer shall not be construed to: (i) bind Beneficiary to the performance of any of the covenants, conditions, or provisions contained in any Lease or otherwise impose any obligation upon Beneficiary; or (ii) create, or operate to place or impose, any responsibility, obligation, or liability upon Beneficiary for: (A) the control, care, maintenance, management, or repair of the Property; (B) any dangerous or defective condition of the Property, including, without limitation, the presence of any environmental contamination or conditions; (C) any waste committed on the Property by any Person; and/or (D) any negligence in the management, upkeep, repair, or control of the Property.

(f)    Any entering upon and taking and maintaining of control of the Property or the Rents by Beneficiary or the receiver and any application of Rents as provided herein shall not: (i) constitute Lender as a "mortgagee in possession" unless affirmatively elected by Lender in writing; (ii) make Beneficiary an agent of Borrower; (iii) constitute an action, render the Indebtedness unenforceable, violate Section 726 of the California Code of Civil Procedure, or otherwise limit any rights available to Beneficiary with respect to its security; or (iv) be deemed to create any bar to a deficiency judgment on the Secured Indebtedness. Beneficiary shall not be liable to Trustor, anyone claiming under or through Trustor or anyone having an interest in the Property by reason of anything done or left undone by Beneficiary hereunder, except as may be due to gross negligence or intentional acts of Beneficiary, its employees or agents. Neither Beneficiary's application nor Beneficiary's failure to apply the Rents in accordance with the terms hereof shall result in a loss of any lien or security interest which Beneficiary may have in the Property, render the Secured Indebtedness unenforceable, constitute a violation of Section 726 of the Code of Civil Procedure, or otherwise limit any right available to Beneficiary with respect to its security.

Section 3.02    Revocable License.

(a)    Notwithstanding the grant, assignment, and transfer of Leases and Rents from Trustor to Beneficiary herein, so long as no Event of Default shall occur and be continuing, Beneficiary grants to Trustor a revocable license to collect and receive Rents as they become due, and to retain, use, and apply Rents to the payment of the Secured Indebtedness and to the costs and expenses incurred in connection with the operation and maintenance of

4

the Property, and to exercise any other rights or remedies hereunder, subject to the terms of this Deed of Trust and the other Loan Documents. After the occurrence of an Event of Default, Beneficiary shall have the rights set forth in California Civil Code § 2938 without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Indebtedness.

      (b)    From and after the occurrence of any Event of Default:

          (i)    the revocable license granted to Trustor pursuant to Section 3.02(a) shall immediately and automatically, with or without notice from Beneficiary, cease and terminate and shall be void and of no further force or effect;

          (ii)    Beneficiary shall immediately and automatically be entitled to receive, collect, and possess all Rents in accordance with California Civil Code § 2938;

          (iii)    Beneficiary may, at its sole option, notify in writing all tenants under Leases that all Rents due thereunder from and after the date of such notice shall be paid to Beneficiary at its address set forth in this Deed of Trust, or at such other place as Beneficiary shall notify Trustor or the tenants in writing; and

          (iv)    any portion of Rents then or thereafter received or held by Trustor shall be payable immediately upon written demand to Beneficiary for application by Beneficiary, at its option, to the payment of the Secured Indebtedness and/or expenses in connection with the operation and maintenance of the Property.

      (c)    Upon the occurrence of an Event of Default, Trustor agrees that, at Beneficiary's sole option from time to time, Beneficiary, and not Trustor, shall be deemed to be the creditor of each tenant under each Lease in respect of any and all assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution, or receivership proceedings affecting each tenant, with an option to apply in accordance with the Loan Documents any money received from such tenant in reduction of any amounts due under the Loan Documents. In each such case, Trustor at Beneficiary's direction shall be obligated to file or make timely filings of claims in such proceedings and to otherwise pursue creditor's rights in such proceedings.

    **Section 3.03**    **Certain Rights of Beneficiary.** From and after any revocation of the license granted pursuant to Section 3.02(a), Beneficiary shall, at its option and in addition to its other rights and remedies provided in this Deed of Trust and the other Loan Documents and/or at law or in equity, have the immediate and continuing right, power, and authority, either personally or by agent without bringing any foreclosure or other action or proceeding, or by a receiver appointed by a court and without the necessity of taking possession of the Property in its own name, and without the need for any other authorization or action by Trustor or Beneficiary, to take any or all of the following actions:

      (a)    Notify any tenant or other person that Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary.

      (b)    Settle, compromise, release, extend the time of payment for, and make allowances, adjustments, and discounts of, any Rents or other obligations in, to, and under Leases.

      (c)    Lease all or any part of the Property and/or modify, amend, renew, or terminate any Leases.

      (d)    Perform any and all obligations of Trustor under Leases and exercise any and all rights of Trustor therein contained to the full extent of Trustor's rights and obligations thereunder.

### ARTICLE IV
### SECURITY AGREEMENT AND FIXTURE FILING

    **Section 4.01**    **Security Agreement.** This Deed of Trust shall also constitute a security agreement and fixture filing within the meaning of the UCC with respect to all of Trustor's present and future estate, right, title, and interest in, to, and under the Fixtures and Equipment and any portion of the Property that is not real property (the "**Personal Property**"). Trustor hereby grants to Beneficiary a security interest in and to the Personal Property and the Fixtures and Equipment and every component thereof, and hereby transfers and assigns to Beneficiary all of Trustor's present and future estate,

5

right, title, and interest in, to, and under all of the Property and the Fixtures and Equipment and every component thereof, to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise. Beneficiary shall have the remedies of a secured party under the UCC, in addition to, but not in limitation of, the other rights afforded Beneficiary by the Loan Documents. In exercising any of these remedies, Beneficiary may proceed against the items of Property and any items of Personal Property separately or together and in any order whatsoever, without in any way affecting the availability of Beneficiary's remedies under the UCC or of the remedies in the Loan Documents.

Section 4.02    Financing Statements. Trustor hereby authorizes Beneficiary, at the expense of Trustor, at any time and from time to time to file any initial financing statements, amendments thereto, and continuation statements under the UCC and as authorized by applicable law, as applicable to all or part of the Personal Property in such filing offices as may be necessary, advisable, or required by law in order to create, establish, perfect, preserve, and protect the security interest hereunder. For purposes of such filings, Trustor agrees to furnish any information requested by Beneficiary promptly upon request by Beneficiary. Trustor also ratifies its authorization for Beneficiary to have filed any like initial financing statements, amendments thereto, or continuation statements, if filed prior to the date of this Deed of Trust. Trustor hereby irrevocably constitutes and appoints Beneficiary and any officer or agent of Beneficiary, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Trustor or in Trustor's own name to execute in Trustor's name any such documents and otherwise to carry out the purposes of this Section 4.02, to the extent that Trustor's authorization above is not sufficient and Trustor fails or refuses to promptly execute such documents. To the extent permitted by law, Trustor hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

Section 4.03    Fixture Filing. The filing or recording of this Deed of Trust is intended to and will constitute a financing statement filed as a fixture filing under California Commercial Code §§ 9102(a)(40) and 9502(c) with respect to that portion of the Property which is or is to become Fixtures and Equipment. The "Secured Party" is Beneficiary and the "Debtor" is Trustor. The name, type of organization, jurisdiction of organization, and mailing addresses of the Secured Party and of the Debtor are set out in the preamble to this Deed of Trust. The land to which the Fixtures and Equipment are related is the Land, and Trustor is the record owner of the Land. Trustor agrees that Beneficiary may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Beneficiary may elect, as a financing statement for any of the items specified above as part of the Property.

Section 4.04    Other Security Agreement, Harmonization of Conflicts. If Trustor has executed and delivered to Beneficiary one or more separate security agreements in connection with the Secured Indebtedness, such security agreements and the security interests created thereby are in addition to and not in substitution of this Deed of Trust and the liens and security interests created hereby, and this Deed of Trust shall be in addition to and not in substitution of such security agreements and security interests. In all cases, this Deed of Trust and the aforesaid security agreements shall be applied and enforced in harmony with and in conjunction with each other to the end that Beneficiary realizes fully upon its rights and remedies in each and the liens and security interests created by each. If conflicts exist among this Deed of Trust and such other security agreements, Beneficiary may elect which of such instruments govern with respect to each category of Property encumbered hereby and thereby.

ARTICLE V
TRUSTOR'S COVENANTS

Section 5.01    Payment of Secured Indebtedness. Trustor shall pay the Secured Indebtedness at the time and in the manner provided in the Note, the Loan Agreement, and this Deed of Trust.

Section 5.02    No Liens or Transfers. Trustor shall not sell, transfer, convey, lease, let, deed of trust, pledge, encumber, create or permit a lien on or security interest, or otherwise hypothecate all or any part of the Property except for: (a) Permitted Encumbrances; and (b) other liens, encumbrances, and transfers expressly permitted under the Loan Agreement.

Section 5.03    Warrant Title. Trustor shall forever warrant and defend the title to the Property unto Trustee against the claims of all persons whomsoever in accordance with the terms of Section 9(d) of the Loan Agreement.

6

Section 5.04    Commercial Loan. Trustor shall use all funds, advances, and all proceeds of the Secured Indebtedness for business or commercial investment purposes only and shall not use such funds or proceeds for personal, family or household purposes.

Section 5.05    Other Covenants. Trustor shall perform and comply with all of the covenants and provisions of the Loan Agreement, which are incorporated herein by this reference.

ARTICLE VI
DUE ON SALE

Section 6.01    Due on Sale or Encumbrance. If Trustor sells, conveys, assigns, transfers, or further pledges, mortgages or otherwise encumbers (hereinafter collectively referred to as a "Transfer") all or any part of the Property or any interest in the Property, whether any such Transfer occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Secured Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to Trustor. For purposes of this Deed of Trust, a transfer of the interests in Trustor, whether direct or indirect or in one or more transactions, shall be deemed a Transfer.

ARTICLE VII
REMEDIES

Section 7.01    Remedies Following Event of Default. If an Event of Default exists, in addition to any other rights, remedies and powers that Beneficiary may have under the other Loan Documents or as provided by law, Beneficiary (either personally or by its agents, nominees, or attorneys) may immediately take such action, without notice or demand, as it deems advisable to protect and enforce the lien and security interest hereof and its rights hereunder, including without limitation the following actions, each of which may be pursued in its own name or in the name of Trustor, concurrently or otherwise, at such time and in such manner as Beneficiary may determine in its sole discretion, without impairing or otherwise affecting the other rights, remedies, and powers of Beneficiary:

(a)    Acceleration. Declare the entire Secured Indebtedness immediately due, payable, and collectible, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable, and collectible.

(b)    Entry and Possession. (i) Enter upon and take possession of the Property, with or without the appointment of a receiver or an application therefor; (ii) dispossess and exclude Trustor and its agents and servants wholly therefrom by summary proceedings or otherwise; (iii) take possession of all books, records, and accounts relating thereto; (iv) use, operate, manage, control, insure, maintain, repair, restore, improve, alter, and otherwise deal with all and every part of the Property and conduct the business thereat; (v) make, cancel, enforce, or modify Leases and obtain and evict tenants; (vi) demand, sue for, collect, and receive the Rents, incomes, issues, and profits of the Property and apply the same, after payment of all charges and expenses (including reasonable attorneys' fees and expenses), on account of the Secured Indebtedness; or (vii) require Trustor to transfer and assign to Beneficiary, in form satisfactory to Beneficiary, Trustor's interest as lessor in any Lease now or hereafter affecting the whole or any part of the Property, it being understood that in the event Trustor fails to render an assignment of Leases to Trustor this document shall upon the occurrence of any Event of Default serve as a de facto notice of such assignment to any interested party.

(c)    Payment of Sums. Pay any sums in any form or manner deemed expedient by Beneficiary to protect the lien and security interest of this Deed of Trust or to cure any Event of Default other than payment of principal of or interest on the Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Beneficiary shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the Default Rate (as defined in the Note) shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Beneficiary; and Beneficiary shall be subrogated to any encumbrance, lien, claim, or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Beneficiary under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument.

7

(d)     Judicial Foreclosure. Institute foreclosure proceedings with any applicable law in effect on the date foreclosure is commenced, or take any other action as may be allowed, at law or in equity, for the enforcement of the Secured Indebtedness and realization on the Property (or such part or parts thereof as Beneficiary may from time to time elect to foreclose upon) or any other security afforded by the Loan Documents. In the case of a judicial proceeding, Beneficiary may proceed to final judgment and execution for the amount of the Secured Indebtedness owed as of the date of the judgment, together with all costs of suit, reasonable attorneys' fees, and interest on the judgment at the maximum rate permitted by law from the date of the judgment until paid. If Beneficiary is the purchaser at the foreclosure sale of the Property, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

(e)     Deficiency Judgment. If permitted by applicable law, Beneficiary may sue for and obtain a judgment for any deficiency remaining in the Secured Indebtedness after applications of all amounts received from the exercise of the rights provided in Section 7.01(d).

(f)     Power of Sale. Beneficiary may elect to sell the Property which is real property or which Lender has elected to treat as real property as follows:

(i)     Beneficiary shall deliver a written declaration of default and demand for sale to Trustee. Upon Trustee's receipt of such declaration of default, Trustee shall give and record a notice of default and election to sell as may then be required by law.

(ii)     After the expiration of such time as may then be required by law following the recordation of such notice of default, and the giving of a notice of sale as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash and lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. After making such sale, Trustee shall deliver to the purchaser or purchasers its deed or deeds conveying the Property so sold, but without any covenant or warranty, express or implied. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. If Beneficiary is the purchaser at the sale, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

(iii)     After deducting all costs, fees and expenses of Trustee and of the trust created by this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: (A) all sums expended in connection with such sale, together with reasonable expenses of the trust created hereby, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; (B) all other sums advanced or expended by Beneficiary and secured hereby; (C) the Secured Indebtedness remaining unpaid; and (D) the remainder, if any, to the person or persons legally entitled thereto.

(iv)     The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Property remaining unsold, but shall continue unimpaired until all of the Property has been sold by exercise of the power of sale in this Deed of Trust and all Secured Indebtedness has been paid and discharged in full.

Section 7.02     Sale in Parcels. In any trustee sale or action to foreclose this Deed of Trust, at the election of Beneficiary, the Property or any part thereof may be sold together or separately, in one sale or separate sales, in one parcel and as an entirety, or in such parcels, manner, or order as Beneficiary in its sole discretion may elect, and one or more exercises of the rights and powers herein granted shall not extinguish or exhaust Beneficiary's rights and powers unless the entire Property is sold or the Secured Indebtedness is paid in full. Trustor expressly waives any right which it may have to direct the order in which any of the Property shall be sold, and its rights, if any, to require the Property be sold as separate tracts, lots, units, or parcels.

Section 7.03     Receiver. Upon the occurrence of an Event of Default, Beneficiary shall have the right to apply for the appointment of a receiver, trustee, liquidator, or conservator (a "Receiver") of the Rents and profits, or of the

8

Property, or both, without notice, to the appointment of such receiver as a matter of right, without consideration of the value of the Property as security for the amounts due Beneficiary, or the solvency of any person or entity liable for the payment of such amounts. Trustor hereby consents to such appointment and waives notice of any application therefor (except as may be required by applicable law) and any requirements on the receiver or Beneficiary to post any surety or other bond.

Section 7.04    Environmental Remedies.

(a)    Beneficiary may sue for breach of Trustor's covenants, representations, warranties and/or indemnities set forth in Section 7(e) of the Loan Agreement, in any separate environmental indemnity or other agreement relating to environmental matters, pursuant to California Code of Civil Procedure Section 736, and may seek the recovery of any and all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred by Beneficiary (collectively the "Environmental Costs") or advanced by Beneficiary for the cleanup, remediation or other response action required by law, or which Beneficiary believes necessary to protect the Property, it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action of or to the Property were made by Beneficiary in good faith.

(b)    In the event that any portion of the Property is determined to be "environmentally impaired" (as defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Deed of Trust, Lender may elect to: (i) exercise its right under California Code of Civil Procedure Section 726.5(a) to waive its lien on such environmentally impaired or affected portion of the Property and (ii) exercise (A) the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment, and (B) any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

(c)    All Environmental Costs and costs and expenses, including, but not limited to, attorneys' fees, incurred by Lender in connection with any action commenced under this Section 7.04, including any action pursuant to California Code of Civil Procedure Section 736 or California Code of Civil Procedure Section 726.5(b), plus interest thereon at the Default Rate (as defined in the Note) until paid, shall be added to the Secured Indebtedness secured by this Deed of Trust and shall be due and payable to Beneficiary upon its demand.

(d)    Trustor acknowledges and agrees that notwithstanding any term or provision contained herein or in the other Loan Documents, all environmental costs incurred pursuant to this Deed of Trust and all judgments and awards entered against trustor in respect of or pertaining to the provisions of this Section 7.04, shall be exceptions to any nonrecourse or exculpatory provision of the Loan Documents, whether specifically set forth in the Loan Documents or provided by statute, and trustor shall be fully and personally liable for all such environmental costs and for all such judgments and awards entered against trustor thereunder, and such liability shall not be limited to the original principal amount of the Secured Indebtedness. Trustor's obligations with respect to such Environmental Costs and judgments and awards shall survive a foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Deed of Trust.

Section 7.05    Beneficiary's Right to Sue. Beneficiary shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed of Trust, without regard to whether or not all of the Secured Indebtedness shall be due on demand and without prejudice to the right of Beneficiary thereafter to enforce any appropriate remedy against Trustor, including an action of foreclosure, or any other action, for a default or defaults by Trustor existing at the time such earlier action was commenced.

Section 7.06    Actions and Proceedings. Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Trustor, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property.

9

**Section 7.07    No Obligation to Marshal Assets.** In exercising its rights and remedies hereunder, Beneficiary shall have no obligation whatsoever to marshal assets, or to realize upon all of the Property. Beneficiary shall have the right to realize upon all or any part of the Property from time to time as Beneficiary deems appropriate. Trustor hereby waives any right to have any of the Property marshaled in connection with any sale or other exercise of Beneficiary's rights, remedies, and powers hereunder.

**Section 7.08    Remedies Cumulative.** The rights, powers, and remedies of Beneficiary granted and arising under this Deed of Trust and the other Loan Documents are separate, distinct, and cumulative of other rights, powers, and remedies granted herein or therein and all other rights, powers, and remedies that Beneficiary may have at law or in equity, none of which are to the exclusion of the others and all of which are cumulative to the rights, powers, and remedies provided at law for the collection of indebtedness, enforcement of rights under mortgages, and preservation of security. No act of Beneficiary shall be construed as an election to proceed under any one provision herein or under the Loan Agreement, this Deed of Trust, or any other Loan Document to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

**Section 7.09    Discontinuance of Proceedings.** If Beneficiary commences the enforcement of any right, power, or remedy, whether afforded under this Deed of Trust or otherwise, and including without limitation foreclosure or entry upon the Property, and such enforcement is then discontinued or abandoned for any reason, or is determined adversely to Beneficiary, then and in every such case Trustor and Beneficiary shall be restored to their former positions and rights hereunder, without waiver of any Event of Default and without novation, and all rights, powers, and remedies of Beneficiary shall continue as if no such enforcement had been commenced.

**Section 7.10    Expenses.** Trustor shall reimburse Beneficiary on demand for all costs, fees, and expenses (including expenses and fees of its counsel) incurred by Beneficiary in connection with the transactions contemplated hereby including the negotiation, documentation, and execution of this Deed of Trust and the other Loan Documents and the enforcement of Beneficiary's rights, powers, or remedies hereunder, thereunder, or available under applicable law, all of which sums are part of the Secured Indebtedness and are secured by this Deed of Trust. Trustor's statutory rights of redemption, if any, are expressly conditioned upon Trustor's payment of the foregoing and of all sums required under any applicable redemption statute and performance of all required acts thereunder.

**Section 7.11    Trustor's Waivers.** To the fullest extent permitted by law, Trustor, for Trustor and its successors and assigns, and for any and all persons ever claiming any interest in the Property, except as otherwise provided herein or in the other Loan Documents, hereby:

(a)    Waives any and all rights which it may have to notice prior to seizure by Beneficiary of the Property or any part thereof under the provisions of this Deed of Trust, whether such seizure is by writ of possession or otherwise.

(b)    Waives and renounces all right of homestead exemption in the Property and any other right to designate all or any portion of the Property as exempt from forced sale under any provision of the Constitution or laws of the United States, the state where the Land and Improvements are located, or any other state in the United States.

(c)    Acknowledges the right to accelerate the Secured Indebtedness and the power given to Beneficiary to sell the Property by foreclosure without any notice other than such notice (if any) as is specifically required to be given hereunder or under applicable law and waives presentment, demand for payment, protest, notice of dishonor, notice of protest or nonpayment, notice of intent to accelerate, notice of acceleration of maturity, and diligence in connection with the enforcement of the Secured Indebtedness or the taking of any action to collect sums owing under the Loan Documents.

(d)    Waives the benefit of all laws now or subsequently in effect providing for: (i) any appraisement before sale of any portion of the Property; (ii) any extension of the time for the enforcement of the collection of the Secured Indebtedness or the creation or extension of a period of redemption from any sale made in collecting such debt; and (iii) exemption of the Property from attachment, levy, or sale under execution or exemption from civil process.

10

(e)    Agrees not as a matter of defense or otherwise to plead or claim any benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, exemption, extension, or redemption, or requiring foreclosure of this Deed of Trust before exercising any other remedy granted hereunder.

(f)    Waives the right to assert any statute of limitations as a defense to the Secured Indebtedness secured by this Deed of Trust.

(g)    Waives the benefits of California Code of Civil Procedure § 431.70 and any right that Trustor may have to offset any portion of the Secured Indebtedness by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Trustor may have against Beneficiary.

**Section 7.12    Right of Set-Off.** In addition to any rights, remedies, or powers now or hereafter granted under applicable law and not by way of limitation of any such rights, Beneficiary is hereby authorized by Trustor at any time or from time to time, without notice to Trustor, any other Obligor or any other person, any such notice being hereby expressly waived, to set-off any obligations or liabilities any time held or owing by Beneficiary to or for the credit or the account of Trustor or any other Obligor against the Secured Indebtedness and any other obligations and liabilities of Trustor or any such Obligor to Beneficiary, including, but not limited to, all claims of any nature or description arising out of or connected with this Deed of Trust, the Loan Agreement, or any other Loan Document, irrespective of whether or not Beneficiary has made any demand hereunder or has declared the Secured Indebtedness to be due and owing and although said obligations and liabilities, or any of them, may be contingent or not matured.

**Section 7.13    Right to Cure Violations.** If Trustor or Beneficiary receives notice of a current or pending violation of any applicable law, rule, regulation, ordinance, code, requirement, covenant, condition, restriction, order, license, permit, or approval related to the maintenance, repair, replacement, nuisance, or other condition of the Property or any Improvements or tangible property thereon (a "**Compliance Notice**") and: (a) an Event of Default has occurred and is continuing; or (b) such violation in the reasonable good faith judgment of Beneficiary is likely to have a material adverse effect on its rights and remedies under this Deed of Trust or on the value of the Property, then Beneficiary and any person authorized by Beneficiary shall have the right, but not the obligation, to enter upon the Property at any reasonable time to repair, alter, replace, clean up, or perform any necessary or appropriate work or maintenance activities that, in Beneficiary's sole discretion, are necessary or advisable to comply with the requirements of the Compliance Notice and cure the alleged, possible, or pending violation. Beneficiary shall have the right to remove any tangible property, motor vehicles, rubbish, stored materials, debris, refuse, trash, or other items on the Property and to dispose of the same as Beneficiary may determine in its sole discretion without being deemed guilty of trespass or theft of such items.

ARTICLE VIII
TRUSTEE PROVISIONS

**Section 8.01    Trustee.** The Trustee shall be deemed to have accepted this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust hereby created shall be irrevocable by Trustor.

**Section 8.02    Substitution of Trustee.** Beneficiary, at Beneficiary's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Beneficiary and recorded in the manner required by law, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Property. The instrument shall contain the names of the original Trustor, Trustee, and Beneficiary under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution.

**Section 8.03    Power of Trustee.** At any time, without liability and without notice to Trustor, on Beneficiary's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Trustor or any other person for the payment of the Secured Indebtedness, or (b) the lien of this Deed of Trust on the remainder of the Property as security for the repayment of the full amount of the Secured Indebtedness, or (c) any right or power of Beneficiary or Trustee with respect to the remainder of the Property, Trustee may: (i) reconvey or release any part of the Property from the lien of this Deed of Trust; (ii) approve the preparation or

11

filing of any map or plat of the Property (iii) grant any easement or creating any restriction affecting the Property; or (iv) enter into any extension or subordination agreement affecting the Property or the lien of this Deed of Trust.

Section 8.04   Reconveyance by Trustee. Upon written request of Beneficiary stating that the Secured Indebtedness has been paid in full, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention, and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder. The recitals in such reconveyances of any matters or facts shall be conclusive proof of the truthfulness thereof. Such request and reconveyance shall operate as a reassignment of the Rents assigned to Beneficiary in this Deed of Trust.

Section 8.05   Compensation and Indemnification. Trustee shall be entitled to reasonable compensation for all services rendered or expenses incurred in the administration or execution of the trusts hereby created and Trustor hereby agrees to pay same. Trustee shall be indemnified, held harmless and reimbursed by Trustor for any liability, damage or expense, including attorneys' fees and amounts paid in settlement, which Trustee may incur or sustain in the execution of this trust or in the doing of any act that Trustee is required or permitted to do by the terms hereof or by law.

## ARTICLE IX
### NOTICES

Section 9.01   Notices. Unless specifically stated otherwise in this Deed of Trust, all notices, requests, and communications required or permitted to be delivered hereunder shall be in writing and delivered to all persons at the addresses below, or as otherwise indicated by either party in writing, by one of the following methods: (a) Hand delivery, whereby delivery is deemed to have occurred at the time of delivery; (b) A nationally recognized overnight courier company, whereby delivery is deemed to have occurred the Business Day following deposit with the courier; (c) Registered United States Mail, signature required and postage-prepaid, whereby delivery is deemed to have occurred on the third Business Day following deposit with the United States Postal Service; or (d) Electronic transmission (facsimile or email) provided that the transmission is completed no later than 5:00 p.m. on a Business Day and the original also is sent via overnight courier or U.S. Mail, whereby delivery is deemed to have occurred at the end of the Business Day on which such electronic transmission is completed.

| To Trustor: | Name: Patrick Kealy |
| | Address: 936 Monterey Blvd, Hermosa Beach, CA 90254 |
| | Email: patrick@kealyconstruction.com |

| To Beneficiary: | Name: Grimm Investments, LLC |
| | Address: 1379 East Valley Rd., Santa Barbara, CA 93108 |
| | Email: colin@bluepacificbio.com |

Section 9.02   Trustor hereby requests that a copy of any notice of default and every notice of sale hereunder be mailed to it as provided by law at the Trustor's address set forth in Section 9.01.

## ARTICLE X
### MISCELLANEOUS

Section 10.01   Amendments, Extensions, and Modifications. No amendment, supplement, or other modification of this Deed of Trust shall be effective unless it is in writing and executed by Trustor and Beneficiary.

Section 10.02   Counterparts; Entire Agreement. This Deed of Trust and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Deed of Trust and the other Loan Documents constitute the entire contract of Trustor and Beneficiary with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Deed of Trust and the Loan Documents or any amendment, modification, or supplement thereto by facsimile or in electronic format shall be effective as delivery of a manually executed counterpart of this Deed of Trust and the Loan Documents.

Section 10.03   Successors and Assigns. This Deed of Trust may be assigned or transferred, in whole or in part, by Beneficiary to any person at any time without notice to or the consent of Trustor. Trustor may not assign or transfer this Deed of Trust or any of its rights hereunder without the prior written consent of Beneficiary. This Deed of

12

Trust shall inure to the benefit of and bind the parties hereto and their permitted assigns. The terms "Trustor" and "Beneficiary" shall include the legal representatives, heirs, executors, administrators, successors, and assigns of the parties hereto, and all those holding under either of them. The term "Beneficiary" shall include any payee of the Secured Indebtedness and any transferee or assignee thereof, whether by operation of law or otherwise.

Section 10.04  No Merger. In the event that Beneficiary's interest under this Deed of Trust and title to the Property or any estate therein shall become vested in the same person or entity, this Deed of Trust shall not merge in such title but shall continue as a valid lien on the Property for the amount secured hereby, unless expressly provided otherwise in writing executed by the person in whom such interests, title, and estate are vested.

Section 10.05  Relationship of Parties. The relationship of Beneficiary to Trustor is that of a creditor or lender to an obligor (inclusive of a person obligated on a supporting obligation) or debtor; and in furtherance thereof and in explanation thereof, Beneficiary has no fiduciary, trust, advisor, business consultant, guardian, representative, partnership, joint venture, or other similar relationship to or with Trustor and no such relationship shall be drawn or implied from this Deed of Trust or any of Beneficiary's actions or inactions hereunder or with respect hereto or from any prior relationship between the parties. Beneficiary has no obligation to Trustor or any other person relative to administration of the Secured Indebtedness or the Property, or any part or parts thereof.

Section 10.06  Joint and Several Liability. If more than one party executes this Deed of Trust as a trustor, the term "Trustor" means all parties signing, and each of them, and each agreement, obligation, and Secured Indebtedness of Trustor shall be and mean the several as well as joint undertaking of each of them.

Section 10.07  Headings. The headings of the various articles, sections, and subsections in this Deed of Trust are for reference only and shall not define, expand, or limit any of the terms or provisions hereof.

Section 10.08  Severability. If any term or provision of this Deed of Trust is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Deed of Trust or invalidate or render unenforceable such term or provision in any other jurisdiction.

Section 10.09  Governing Law. This Deed of Trust and any claim, controversy, dispute, or cause of action (whether in contract, equity, tort, or otherwise) based upon, arising out of, or relating to this Deed of Trust and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of law.

Section 10.10  Waiver of Venue. Trustor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Deed of Trust or the Secured Indebtedness in any court referred to in Section 10.11 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

Section 10.11  Judicial Reference. Trustor hereby agrees that any controversy, dispute or claim between the parties arising out of or relating to this Deed of Trust shall be resolved by a reference proceeding in California in accordance with the provisions of California Code of Civil Procedure § 638. The referee shall be a retired California state court judge selected by mutual written agreement of the parties. If the parties are unable to agree upon a referee within ten (10) calendar days after one party serves a written notice of its intent to commence a judicial reference proceeding on the other party, then the referee will be selected by the court in accordance with California Code of Civil Procedure § 640(b). The referee shall be appointed to sit as a temporary judge, with all of the powers of a temporary judge, as authorized by law, and upon selection should take and subscribe to the oath of office as provided for in Rule 244 of the California Rules of Court (or any subsequently enacted Rule). The referee shall determine the manner in which the reference proceeding is conducted including the time and place of all hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. The referee shall render a written statement of decision and shall conduct the proceedings in accordance with the California Code of Civil Procedure, the California Rules of Court and the California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee. The referee's statement of decision shall set forth findings of fact and conclusions of law. The referee's decision shall be entered as a judgment in the court in accordance with the provisions of California Code of Civil Procedure §§ 644 and 645, and shall be appealable in accordance with California law. If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by the reference procedure herein described will be resolved and determined by arbitration. The arbitration will be conducted by a retired California state court judge, in accordance with the California Arbitration Act, California Code of Civil Procedure § 1280 through § 1294.2 as amended from time to time. This Section

13

10.11 shall not be deemed to limit or impair any of Beneficiary's rights to seek any such provisional or ancillary remedies, to interplead funds in the event of a dispute, to exercise any security interest or lien Beneficiary may hold in the Property, or to comply with the legal process involving Trustor's accounts or other property.

Section 10.12  No Waiver; No Course of Dealing; No Invalidity. No failure to exercise and no delay in exercising on the part of Beneficiary of any right, remedy, or power hereunder or rights, remedies, and powers otherwise provided by law or available in equity shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any Event of Default or if any subsequent Event of Default occurs, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. No act or inaction of Beneficiary under this Deed of Trust shall be deemed to constitute or establish a "course of performance or dealing" that would require Beneficiary to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid to the maximum extent allowed under applicable law.

Section 10.13  After-Acquired Property. This Deed of Trust shall encumber, encompass, cover, and apply to and include any and all "after-acquired property" of Trustor located at, adjacent, or adjoining to or in any way associated with the use or operation of Property, and such after-acquired property shall be a part of the Property. In furtherance of the foregoing, Trustor has given, granted, bargained, sold, and conveyed, and by these presents does give, grant, bargain, sell, and convey unto Beneficiary all of Trustor's right, title, and interest in and to said after-acquired property. The after-acquired property identified by Beneficiary from time to time may also be identified in a notice of extension filed in the real property records in which this Deed of Trust is recorded or in any other county in which the after-acquired property is located. Trustor agrees that Beneficiary has the absolute, irrevocable right and power, which right and power is coupled with an interest, to file one or more notices of extension, and that all after-acquired property of Trustor identified by Beneficiary, whether through a notice of extension or otherwise, shall secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, with interest (including Post-Petition Interest) thereon, and all renewals, extensions, rearrangements, modifications, replacements, amendments, amendments and restatements, or supplements thereof. This Section 10.13 is intended to be and is an "after-acquired property clause" and shall be construed in accordance with the provisions of applicable law of the state in which the Land and Improvements are located that authorizes or governs after-acquired property clauses in deed of trust.

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be executed on the date set forth in the acknowledgment below and to be effective as of the date first set forth above.

New Holland LLC,
a California limited liability company

By: Patrick Kealy
Its: Manager

8th Street MB LLC,
a Delaware limited liability company

By: Kealy Construction, LLC,
a California limited liability company
Sole Member of 8th Street MB, LLC

By: Patrick Kealy
Its: Sole Member

```
ROSA A. RODRIGUEZ
Commission # 2113252
Notary Public - California
Los Angeles County
My Comm. Expires Jun 24, 2019
```

14

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

*16*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of *Los Angeles*

On *March 2, 2018* before me, *Rosa A. Rodriguez, Notary Public*

     Date                    *Here Insert Name and Title of the Officer*

personally appeared *Patrick Kealy*

                           *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

> ROSA A. RODRIGUEZ
> Commission # 2113252
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jan 24, 2019

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature *Rosa A. Rodriguez*

         *Signature of Notary Public*

     *Place Notary Seal Above*

——————————— OPTIONAL ———————————

*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: *Deed of Trust*

Document Date: *March 1, 2018*          Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited  ☐ General
- ☐ Individual      ☐ Attorney in Fact
- ☐ Trustee        ☐ Guardian or Conservator
- ☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited  ☐ General
- ☐ Individual      ☐ Attorney in Fact
- ☐ Trustee        ☐ Guardian or Conservator
- ☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

Order No.: 00519931-996-LAT

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel 1:  APN 2386-002-005 / 13511 Mulholland Drive, Los Angeles, CA

Lot 22, Tract No. 5571, in the City of Los Angeles, County Of Los Angeles, State Of California, as per Map recorded in Book 107, Pages 72 to 80, inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 2:  APN 2386-003-004 / Vacant Land, Los Angeles, CA

That portion of Lot 23 of Tract No. 5571, in the City of Los Angeles, County of Los Angeles, State of California as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly along a direct line, a distance of 196.61 feet,  more or less to a point in the Easterly line of said lot distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet.

Parcel 3:

An easement for ingress and egress and driveway purposes, for use in common with others, over that portion of Lot 23, Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107, Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at a point in the Westerly line of said lot, distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly a distance of 25 feet along a direct line which if prolonged would pass through a Point M the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet, thence Westerly along a direct line to a point in the said Westerly line, distant North thereon 15 feet from the said point of beginning thence Southerly along the said Westerly line, a distance of 15 feet to the said point of beginning, together with all of seller's rights and appurtenances to the real property, including, without limitation, any right, title, and interest of seller in and to any and all easements, streets, roads, alleys, or rights-of-way.

Parcel 4:  APN 2386-003-003 / Vacant Land, Los Angeles

That portion of Lot 23 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at the Southerly extremity of that certain curve in the Westerly line of said Lot 23, concave Easterly and designated as having a radius of 300.00 feet and an arc length of 74.70 feet, thence North 72 degrees 10' 00"

Policy No.:    File No.: 00519931-996-LAT
EXHIBIT A
(Continued)

East 78.66 feet, more or less, through a point in the Easterly line of said Lot 23, said point being Southeasterly an arc distance of 74.27 feet from the Northerly extremity of that certain curve in said Easterly line of said Lot 23, designated as having a radius of 140.00 feet, an arc length of 175.12 feet, a radial line to said point bears South 60 degrees 11' 14" West.

Except that portion that portion lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet; thence Northeasterly along a direct line a distance of 198.51 feet more or less to a point in the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and d a length of 243.55 feet.

Parcel 5.  APN 2386-011-002 / Vacant Land, Los Angeles

Lot 14 of Tract No. 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of said land described as follows:

Beginning at a point in the Northwesterly line of said Lot, distant South 27° 26' 36" West, along said line, 161.81 feet from the most Northerly corner of said lot, thence South 73° 00' 00" East 100.00 feet, thence South 14° 00' 00" East 60.00 feet, thence South 86° 04' 25" West 161.81 feet, thence North 72° 00' 00" West to said Northwesterly line, thence along said Northwesterly line, North 27° 26' 36" East to the point of beginning

Also except therefrom any portion of said land inclusive within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 6:  APN 2386-010-008 & 2386-010-009 / Vacant Land, Los Angeles

That portion of Lot 13 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southerly of the following described line:

Beginning at the Northerly terminus of that certain curve in the Westerly line of said map, as being concave Southwesterly, having a radius of 50.00 feet and an arc length of 41.07 feet, thence Southeasterly along said curve through a central angle of 22° 55' 06" an arc distance of 20.00 feet to the true point of beginning, thence North 84° 35' 29" East 227.07 feet to a point on that certain curve in the Easterly line of said lot, shown on said map as being concave Easterly, having a radius of 160.00 feet and an arc length of 170.81 feet, a radial of said last mentioned curve to said point bears South 68° 21' 42" West.

Parcel 7:  APN 2386-006-002 / Vacant Land, Los Angeles

Lot 16 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Policy No.:          File No.:  00519931-996-LAT
EXHIBIT A
(Continued)

19

Except that portion of said Lot 16 included within the lines of Tract No. 24980, as shown on Map recorded in Book 673 Page 1 of Maps, in the Office of the County Recorder of said County.

Also except that portion of Lot 16, included within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 all of Official Records.

Parcel 8:  APN 2386-006-001 / Vacant Land,  Los Angeles

Lot 17 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 Official Records.

APN:  2386-002-005, 2386-003-004, 2386-003-003, 2386-011-002, 2386-010-008, 2386-010-009, 2386-006-002, 2386-006-001

PROMISSORY NOTE
SECURED BY DEED OF TRUST

DO NOT DESTROY THIS NOTE: WHEN PAID, THIS NOTE AND THE DEED OF TRUST SECURING IT MUST BE SURRENDERED TO THE TRUSTEE FOR CANCELLATION BEFORE RECONVEYANCE WILL BE MADE.

U.S. $5,000,000.00                    March 1, 2018                    Los Angeles, California

FOR VALUE RECEIVED, the undersigned, **New Holland LLC**, a California limited liability company and **8th Street MB LLC**, a Delaware limited liability company (collectively, **Borrower**), hereby jointly and severally promise to pay to **Grimm Investments, LLC**, a California limited liability company (**Lender**), or order, the principal sum of **FIVE MILLION DOLLARS ($5,000,000.00) (Loan Amount)**, together with all accrued interest thereon as provided in this Promissory Note Secured by Deed of Trust (**Note**), and all other amounts due and payable under this Note, the Deed of Trust (as defined below) and the other Loan Documents (as defined below), as they may be amended, restated, supplemented or otherwise modified from time to time in accordance with their terms.

This Note is secured by, among other things, a deed of trust of even date herewith in favor of Lender, as beneficiary (**Deed of Trust**) and encumbering the real property commonly known as 13511 Mullholland Drive, Beverly Hills, CA 90210 (APNs: 2386-002-005; 2386-003-004; 2386-003-003; 2386-010-009; 2386-010-008; 2386-011-002; 2386-006-002; 2386-006-001) and more specifically described in the Deed of Trust (**Property**). Lender will be entitled to the benefits of the security provided by the Deed of Trust and will have the right to enforce the covenants and agreements therein. The covenants, conditions and agreements contained in the Deed of Trust are made part of this instrument. The term **"Loan Documents"** as used herein shall have the meaning set forth in that certain Loan Agreement of even date herewith between Borrower and Lender (**Loan Agreement**), and all other documents to or of which Lender is a party or beneficiary now or hereafter evidencing, securing, guarantying, modifying or otherwise relating to the Secured Indebtedness evidenced hereby.

This Note shall be subject to the following additional provisions:

## SECTION 1. Interest.

a. _Interest Rate_. Borrower understands and agrees that the interest rate on this Note (**Interest Rate**) shall be **TEN PERCENT (10%)** per annum on the principal balance due under this Note, accruing from the date on which funds are advanced until the Loan Amount, all accrued and unpaid interest thereon, and all other amounts and indebtedness payable under this Note, the Deed of Trust, and the other Loan Documents (collectively, the "Secured Indebtedness") are paid in full, whether at maturity, upon acceleration, by prepayment or otherwise.

b. _Lender Fees_: Borrower understands and agrees Lender is charging $100,000.00 in Fees.

c. _Legal Fees_. Borrower understands and agrees Lender is also charging a $6,500 Legal Fee.

d. _Method of Calculating Interest_. Interest shall be computed on the basis of a 360-day year and the actual number of days elapsed.

e. _Default Interest_. Following any Event of Default (as defined below), the outstanding Loan Amount of this Note shall bear interest at Fifteen Percent (15%) from the date payment was due until such delinquent payment is paid in full (**Default Rate**). The Default Rate shall be in addition to any Late Charges as described in Section 3 below. This provision shall not imply that Borrower may cure any default or Event of Default or reinstate the Loan after an Event of Default other than as expressly permitted under the terms of this Note and the Loan Documents, nor shall this provision imply that Borrower has a right to delay or extend the dates upon which payments are due under this Note or any Loan Document. Borrower acknowledges that it would be extremely difficult or impracticable to determine Lender's actual damages resulting from any late payment or default, and such interest at the Default Rate is a reasonable estimate of those damages and does not constitute a penalty. The remedies of Lender in this Note or in the Loan Documents, or at law or in equity, shall be cumulative and concurrent, and may be pursued singly, successively, or together in Lender's discretion.

f.    Limitations on Interest.  All agreements between Borrower and Lender are expressly limited so that in no event will the amount paid or agreed to be paid to Lender for the use or forbearance under this Note exceed the highest rate permissible under applicable law. If, from any circumstance, fulfillment of any provisions of this Note or the Deed of Trust (as defined herein), at the time performance or the provision is due, is prohibited by law, then the obligation to be fulfilled will be reduced to the maximum rate not so prohibited, and if from any circumstance Lender should ever receive as interest under this Note an amount that would exceed the highest lawful rate, the amount that would be excessive interest will be applied to the reduction of the principal of this Note and not to the payment of interest.

g.    Interest Reserve.  Interest in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (Prepaid Interest) shall be prepaid by Borrower on the Note Date and shall derive from the Loan Proceeds. The Prepaid Interest shall be held by Lender in an account (Prepaid Interest Account) under the sole dominion and control of Lender. Lender shall apply amounts in the Prepaid Interest Account to pay monthly payments of interest accrued on the outstanding Principal balance of this Note, and any other amounts that may be due and owing hereunder.  In the event that the funds in the Prepaid Interest Account are insufficient to pay in full all amounts due and owing, Borrower shall not be relieved of its obligations under this Note to make payments and failure to do so shall result in an Event of Default hereunder.  During the continuance of an Event of Default, Lender shall be under no obligation to apply amounts in the Prepaid Interest Account to the payment of accrued interest or any other amounts due and owing hereunder, but may use sums therein in such order or priority as Lender so elects.  In the event of prepayment of this Note by Borrower in full prior to the Maturity Date and upon payment in full at the Maturity Date, so long as no Event of Default has occurred and is continuing, Lender shall refund to Borrower any amounts on deposit in the Prepaid Interest Account in excess of accrued interest and other sums due and payable under this Note.  The Prepaid Interest Account shall not constitute a trust fund and, subject to the foregoing, may be commingled with other monies held by Lender. Borrower hereby grants to Lender a security interest in the Prepaid Interest Account, and all money or cash from time to time on deposit therein, and all Borrower's right, title and interest therein and thereto; all proceeds and all rights to payment therefrom; all interest accruing thereon; any certificates, instruments and securities or other "investment property" (as defined in the California Commercial Code), if any, representing the funds deposited therein; and all claims, demands, general intangibles, choses in action and other rights or interests of Borrower in respect of the Prepaid Interest.

## SECTION 2.  Payments

a.    Payment of Principal.  Upon the sale of the property located at 1757 8th Street, Manhattan Beach, CA 90266, Borrower shall pay to Lender a lump sum of $750,000 (8th Street Payment). The 8th Street Payment shall be shall be applied against the outstanding principal balance hereof, or as otherwise determined in Lender's sole discretion, and paid within thirty (30) days of the close of escrow on such property.  Further, upon each successful sale included in the borrower's development at 8th St, an additional FIFTY THOUSAND DOALLARS ($50,000) shall be directed to lender for the benefit of the interest reserve account, not to exceed ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00).

b.    Maturity Date. The duration of this Note, shall be twenty-four (24) months from the date of this Note which is March 1, 2018 (Maturity Date), on which date all payment in the aggregate amount of the then outstanding and unpaid Loan Amount, together with all accrued and unpaid interest thereon and all other unpaid Secured Indebtedness, shall become immediately due and payable in full; provided that any amount of principal or interest that is not paid when due, in addition to any interest accruing on overdue amounts, shall be payable on demand.  If Borrower makes prepayments that reduce the principal balance owing on the Note, the amount of monthly payments shall thereafter be reduced accordingly. Unless or until Lender provides alternative instructions, all of Borrower's payments shall be delivered by Borrower's bank directly to Lender's bank, by Automatic Clearing House (ACH) using the following account information for Lender:

> Wells Fargo Bank N.A.
> ABA (Routing): 121000248
> Account Name: Grimm Investments LLC.
> Account Number: 3853535449
> Beneficiary Address: 1377 East Valley Rd., Santa Barbara, CA 93108

All payments shall be paid timely by Borrower without counterclaim, setoff, recoupment or deduction. All payments hereunder shall be applied first against all Late Charges, then against all accrued interest on the outstanding principal balance hereof, and the remainder, if any, shall thereafter be applied against the outstanding principal balance hereof. However, after an Event of Default, all payments made hereunder may be applied by Lender in such order, priority and in such proportion as Lender shall elect in its sole discretion. No amount repaid hereunder may be re-borrowed.

**SECTION 3.  Late Charges**. Borrower acknowledges that default in the payment of any amount under this Note when due may result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling delinquent payments, and meeting Lender's own financial obligations. Borrower further acknowledges that the extent of such loss and additional expense is extremely difficult and impractical to ascertain. Borrower therefore agrees that, if any payment due under this Note, whether at stated maturity, by acceleration or otherwise, is not received by Lender's bank by the fifth (5th) day after the due date, Borrower shall pay a late charge equal to the greater of five percent (5%) of the amount of the installment due or Fifty Dollars ($50) (**Late Charge**), which the parties agree is a reasonable estimate of expenses so incurred. Acceptance of any Late Charge will not constitute a waiver of default with respect to the overdue payment and will not prevent Lender from exercising any other rights available under this Note.

**SECTION 4.  Prepayment**. Subject to the restrictions in the Loan Agreement, Borrower may prepay the principal amount of the indebtedness evidenced by this Note, either in whole or in part, without penalty.

**SECTION 5.  Deed of Trust Provisions Regarding Transfers; Successors.**  The Deed of Trust securing this Note contains provisions for the acceleration of the indebtedness evidenced hereby upon any transfer of the Property without the prior written consent of the Beneficiary (**Transfer**). Subject to the limitations on Transfer specified in the Deed of Trust, the provisions hereof shall be binding on the heirs, legal representatives, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender. The Deed of Trust includes, without limitation, the following language:

"If Trustor sells, conveys, assigns, transfers, or further pledges, mortgages or otherwise encumbers (hereinafter collectively referred to as a "Transfer") all or any part of the Property or any interest in the Property, whether any such Transfer occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Secured Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to Trustor. For purposes of this Deed of Trust, a transfer of the interests in Trustor, whether direct or indirect or in one or more transactions, shall be deemed a Transfer."

**SECTION 6.  Default.**

a.    Lender's Right to Accelerate Payment upon an Event of Default. On the occurrence of any of the following events (each an **Event of Default**), Lender may, at its sole option and in its sole discretion to be exercised at any time thereafter on written notice to Borrower, declare the entire unpaid principal balance of this Note, accrued but unpaid interest, including interest at the Default Rate, and any Late Charges immediately due and payable regardless of the Maturity Date, or exercise any or all of its rights, powers or remedies under the Loan Documents or applicable law or available in equity:

(i)     Borrower's failure to pay any installment or other sum due under this Note within five (5) days of the due date;

(ii)    Borrower's failure to pay the 8th Street Payment under this Note when due;

(iii)   Borrower has until September 15th 2018 to completely satisfy all currently delinquent property taxes. Failure to satisfy property tax liabilities on or before September 15th 2018 will be considered a default. Further, after the application for reassessment for property tax has been resolved, Borrower is required to resume making regularly scheduled tax payments. Specifically, Borrower's failure to pay any property taxes or assessments on

3

the Property at least thirty (30) days before delinquency or to maintain insurance on the Property, as required by section 11(a) of this Note;

(iv)    The commencement by Borrower of a voluntary case under applicable bankruptcy, insolvency or other similar law now or later in effect, or the consent by Borrower to the entry of an order for relief in an involuntary case under any such law, or the consent by Borrower to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, or similar official of any of the assets of Borrower or the making of a general assignment for the benefit of creditors by Borrower, or the admission in writing by Borrower of an inability to pay debts generally as they become due;

(v)    Any change in ownership of twenty-five percent (25%) or more of the membership interests of either Borrower;

(vi)    A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment' or performance of the Loan is impaired;

(vii)    Any Event of Default, as defined in the Deed of Trust, Loan Agreement, or any other Loan Document shall occur, or Borrower fails to perform any other obligation set forth in this Note, the Deed of Trust, the Loan Agreement, or any other Loan Document beyond the expiration of all applicable notice and grace periods;

(viii)    This Agreement or any of the Loan Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

(ix)    Any of the preceding events occurs with respect to any guarantor of any of the Indebtedness or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Secured Indebtedness;

(x)    Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay the Loan Amount or perform their respective obligations under this Agreement or any of the Loan Documents;

(xi)    If any warranty or representation made by Borrower, or any Loan Documents or other information furnished by Borrower, in connection with this Note was false or incorrect in any material respect when made; or

(xii)    Borrower's further encumbrance, conveyance, alienation or other transfer of the Property, or any part thereof, or any interest therein.

The remedies of Lender, as provided in this Note, the Deed of Trust and the other Loan Documents, shall be cumulative and concurrent and may be pursued singly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

SECTION 7.  **Conditions Precedent.**  The agreement of the Lender to advance amounts under this Note is subject to the satisfaction, immediately prior to or concurrently with the making of such loan, of the condition precedent that Borrower shall have: executed this Note and the Deed of Trust in favor of Lender; delivered to Lender any other document required to be delivered in connection with the foregoing; and fulfilled, to Lender's satisfaction, any conditions precedent in the Loan Documents.

SECTION 8.  **Indemnity**  Borrower shall indemnify, protect, defend, and hold Lender harmless from all

4

losses, claims, damages, liabilities, costs, or expenses of any nature (including attorney fees and costs) that Lender incurs, arising from or relating to Borrower's redevelopment activities pertaining to the Property or because of any alleged obligation, undertaking, or inaction on Lender's part to perform or discharge any covenants or agreements of Borrower with respect to such redevelopment activities and/or the Work Product and Entitlements, except to the extent arising from Lender's gross negligence or willful misconduct arising after the date, if ever, that Lender takes title to the Property through foreclosure of the Deed of Trust or a deed in lieu of foreclosure. Without limitation, Borrower shall indemnify, protect, defend, and hold Lender harmless from any actions, suits, arbitrations, claims, attachments, or proceedings related to the Property, or Borrower's redevelopment activities thereon, commenced pursuant to the California Environmental Quality Act, the California Government Code and/or any other regulatory regime that may form the basis for a legal challenge to challenge to the issuance and/or validity of any permits, approvals or entitlements for the Property. This provision shall survive any termination of this Note. Any amount incurred by Lender and covered by this indemnity clause shall be payable by Borrower on demand and shall bear interest at the Default Rate from the date of demand until it is fully paid.

SECTION 9.  Assignment.

a.    Assignment by Borrower.  Borrower may not assign or delegate any of Borrower's obligations under this Note without Lender's prior written consent in each instance. In the event that Lender elects to approve any assignment by Borrower, Borrower shall be obligated to pay all reasonable costs and expenses, including legal fees, incurred by Lender in connection with the preparation and/or review of any and all documentation necessary to evaluate and document such transaction.

b.    Assignment by Lender.  Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of the Note, all without the consent of Borrower. However, Lender shall provide Borrower with prior written notice of any sale or assignment of all or any part of the Note.

SECTION 10.  Covenants.  Borrower hereby covenants and agrees as follows:

a.    Insurance.  Borrower shall obtain property insurance in an amount reasonably acceptable to Lender, but in no event less than the value of all loans secured by the Property, which insurance may include earthquake coverage and shall name Lender as an additional insured. Earthquake insurance not required at time of funding but Lender reserves the right to require a policy be purchased and bound by borrower at any time.

b.    Lender's Right to Inquire.  To the extent Lender has any questions pertaining to Borrower's payment of taxes on the Property and/or Borrower's maintenance of insurance on the Property, as required herein, Borrower hereby grants Lender the right to contact Borrower's insurance provider(s) and/or the Los Angeles County Assessor's office to make inquiries regarding the Property, and Borrower agrees to cooperate with Lender as needed to facilitate such inquiry.

c.    Representation as to Enforceability.  Borrower represents and warrants that the terms and conditions of this Note and of the Deed of Trust are fully enforceable.

d.    Use of Funds.  Borrower hereby warrants, represents and covenants that all funds disbursed hereunder shall be used for business or commercial purposes and that no funds disbursed hereunder shall be used for personal, family or household purposes.

SECTION 11.  Notices.  All notices required or permitted in connection with this Note shall be in writing and given at the place and in the manner provided in the Deed of Trust for the giving of notices.

SECTION 12.  Attorneys' Fees.  In the event of breach of this Note, Borrower agrees to pay the following costs, expenses and attorneys' fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses and attorneys' fees paid or incurred in connection with the enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorneys' fees incurred to protect the lien represented by the Deed of Trust; and (c) costs of suit and such sum as the court may adjudge as attorneys' fees in an action to enforce payment of this Note or any part of it.

5

## SECTION 13.   General Provisions.

a.   Successors and Assigns.   This Note shall be binding on and inure to the benefit of Borrow and Lender and their respective heirs, legal representatives, successors, and assigns.

b.   Joint and Several Liability. If any Borrower fails to pay fully, when due, any amount payable to Lender under this Note, then Lender may elect, in its discretion, to treat that amount as being due and owing by all the Borrowers on a joint and several basis; to enforce its rights and remedies against and collect such amounts from Borrowers on a joint and several basis; and to recover such amounts from the value of each of the Properties, on a pro rata basis or otherwise, as determined by Lender in its discretion. All actions or inactions of the officers, managers, members and/or agents of any Borrower with regard to the transactions contemplated under this Note and Deeds of Trust shall be deemed with full authority and binding upon all Borrowers hereunder. Each Borrower hereby appoints each other Borrower as its true and lawful attorney-in-fact, with full right and power, for purposes of exercising all rights of such person hereunder and under applicable law with regard to the transactions contemplated under the Note and Deeds of Trust. The foregoing is a material inducement to the agreement of Lender to fund the Loan and to consummate the transactions contemplated hereby. Borrower represents that for purposes of this transaction, they are operated as part of one consolidated business entity and are directly dependent upon each other for and in connection with their respective business activities financial resources. Each Borrower will receive a direct economic and financial benefit from the Loan and obligations incurred pursuant to this Note and the incurrence of such obligations is in the best interests of each Borrower.

c.   Waiver of Presentment.   Borrower and all persons liable or to become liable on this Note waive presentment, protest, and demand; notice of protest, demand, offset and dishonor; and any and all other notices or matters of a like nature.

d.   Amendment.   No provision of this Note may be amended except by an agreement in writing signed by Lender and Borrower, or their respective successors-in-interest, and by no other means.   Borrower hereby waives the right to claim, contest or assert that this Note was modified, cancelled, superseded, or changed by oral agreement, course of conduct, waiver or estoppel.

e.   Waiver.   Any persons now or at any time liable, whether primarily or secondarily, for payment of the indebtedness evidenced by this Note, for themselves, their heirs, legatees, devisees, legal representatives, executives, administrators, conservators, successors and assigns, respectively and expressly waive presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses, or losses and interest; notice of interest on interest and Late Charges; all other notices or matters of a like nature to any of the foregoing; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interest to properties securing payment of this Note; and consent that the time of said payment or any part thereof may be extended by Lender, and further consent that any security, or any part thereof, may be released by Lender without in any way modifying, altering, releasing, affecting or limiting their respective liability.

f.   Integration. This Note and the documents described herein constitute the entire understanding of Borrower and Lender with respect to the matters discussed herein, and supersede all prior and contemporaneous discussions, agreements and representations, whether oral or written. This Note may only be modified in a writing signed by Lender, or its loan servicing agent, and Borrower.

g.   Time is of the Essence.   Time is of the essence with respect to each and every obligation of Borrower set forth in this Note.

h.   Forbearance Not a Waiver.   No delay or omission on the part of Lender under this Note shall operate as a waiver of such right or of any other rights under this Note.   To be enforceable, any waiver must be expressly stated in a writing signed by Lender, and any such waiver shall apply only to the specific instance for which the waiver was granted.

i.   Governing Law.   This Note shall be governed by and construed in accordance with the laws of the

6

State of California.

j.    Venue; Consent to Service of Process.  The parties agree that any action or dispute arising out of this Note or the Second Deed of Trust shall be heard in the courts located in the County of Los Angeles, State of California.  The parties hereby consent to service of process by any means authorized by the State of California.

k.    Consultation with Legal Counsel; Interpretation.  Borrower acknowledges and represents that Borrower has read all provisions of this Note in full, has reviewed those provisions with legal counsel, understands such provisions and voluntarily agrees to be bound thereby.  Consequently, the normal rule of construction providing that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Note.

l.    Severability.  If any provision of this Note, or the application of it to any party or circumstance, is held void, invalid, or unenforceable by a court of competent jurisdiction, the remainder of this Note, and the application of such provision to other parties or circumstances, shall not be affected thereby, the provisions of this Note being severable in any such instance.

IN WITNESS WHEREOF, Borrower has executed this Note as of the date set forth on the first page hereof.

New Holland LLC,
a California limited liability company

By: Patrick Kealy
Its: Manager


8th Street MB LLC,
a Delaware limited liability company

By: Kealy Construction, LLC,
a California limited liability company
Sole Member of 8th Street MB, LLC

By: Patrick Kealy
Its: Sole Member

7

RECORDING REQUESTED BY:

Law Office of Courtney E. Taylor

WHEN RECORDED, MAIL DEED TO:

Law Office of Courtney E. Taylor
6465 Nursery Way
San Luis Obispo, CA 93405

MAIL TAX STATEMENTS TO:

Grimm Investments, LLC
1377 East Valley Road
Santa Barbara, CA 93108

Assessor's Parcel Nos:
2386-002-005
2386-003-003
2386-003-004
2386-006-001
2386-006-002
2386-010-008
2386-010-009
2386-011-002

(Above Space for Recorder's Use Only)

### DEED IN LIEU OF FORECLOSURE

The undersigned Grantor hereby declares:

Grantee is the Foreclosing Beneficiary

CONSIDERATION: $6,364,166.66   AMOUNT OF UNPAID DEBT: $6,364,166.66

NON-EXEMPT AMOUNT: $0

DOCUMENTARY TRANSFER TAX: None   CITY TRANSFER TAX: None

[ ]   computed on the consideration or full value of the property conveyed, or

[X]   computed on consideration or full value less the value of liens or encumbrances remaining at time of sale.

The property conveyed is located in the City of Los Angeles, California.

This DEED IN LIEU OF FORECLOSURE ("**Deed**"), dated as of March 22, 2021, between New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd., Hermosa Beach, CA 90254 ("**Grantor**"), and Grimm Investments, LLC, a California limited liability company having an office at 1377 East Valley Rd., Santa Barbara, CA 93108 ("**Grantee**").

**Grantor**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, grants to Grantee,

**ALL** that certain plot, piece, or parcel of land situated, lying, and being in the County of Los Angeles, State of California, and more particularly described in Exhibit A attached hereto (the "**Land**"),

**TOGETHER** with all buildings, foundations, structures, and other improvements and fixtures, erected, installed, or located in, on, or at the Land (collectively, the "**Improvements**"),

**TOGETHER** with all of Grantor's right, title, and interest, if any, in and to all easements, rights of way, and other rights appurtenant to the Land,

**TOGETHER** with all of Grantor's right, title, and interest, if any, to any streets and roads abutting, in front of, or adjoining the Land to the center lines thereof,

**TOGETHER** with the appurtenances and all of the estate and rights of the Grantor in and to the Land and the Improvements (collectively, the "**Property**").

1

Exhibit C - Page 44

This Deed is an absolute, present, unconditional, and irrevocable conveyance of title, in effect as well as form, and is not intended as a mortgage, deed of trust, trust conveyance, or security of any kind. There is no agreement for Grantee or anyone else to reconvey the Property to Grantor under any circumstances whatsoever. This Deed is delivered pursuant to that certain Deed in Lieu of Foreclosure Agreement dated December 22, 2020, entered into between Grantor and Gratee, which is incorporated by reference in this Deed.

Grantor has sold the Property to Grantee for a fair and adequate consideration, such consideration being reasonably equivalent and, in addition to the consideration recited above, being full satisfaction of all obligations secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated March 1, 2018 and recorded on March 13, 2018 as Instrument No.: 20180241310 in the Official Records of Los Angeles County, California (the "**Deed of Trust**").

Grantor understands the effect of the delivery of this Deed to Grantee and is acting freely and voluntarily, and is not under any coercion or duress. Grantor acknowledges, represents, and confirms that by the delivery of this Deed Grantor is not rendered insolvent and this Deed is not being delivered for the purpose of defrauding creditors or avoiding any payment of any of its debts.

It is the purpose and intent of Grantor and Grantee that the beneficial interest of Grantee in the Property under the Deed of Trust shall not merge into the fee interest conveyed hereby, and such interests shall be and remain at all times separate and distinct.

Grantor's acknowledgments and assurances in this Deed are made to induce any title company to issue an owner's policy of title insurance in favor of the Grantee affecting the Property and are further made to protect and benefit Grantee and its successors and assigns, and all other persons who may hereafter acquire an interest in the Property.

Grantor agrees to execute any additional documents that Grantee may reasonably deem necessary or desirable to carry out the purposes hereof.

The words "Grantor" and "Grantee" shall be construed as if they read "Grantors" or "Grantees," respectively, whenever the sense of this Deed requires.

IN WITNESS WHEREOF, Grantor has duly executed this Deed the day and year first above written.

New Holland LLC,
a California limited liability company


By: Patrick Kealy
Its: Manager

8th Street MB LLC,
a Delaware limited liability company

**By: Kealy Construction, LLC,**
a California limited liability company
Sole Member of 8th Street MB, LLC


By: Patrick Kealy
Its: Sole Member

2

Exhibit C - Page 45

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS Angeles_

On _1/4/2021_, before me, _Sandra Ferrer Notary Public_, personally appeared Patrick Kealy, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

[SEAL]

SANDRA FERRER
Notary Public - California
Los Angeles County
Commission # 2311067
My Comm. Expires Dec 18, 2023

3

Exhibit C - Page 46

# EXHIBIT A
## Property Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel 1: APN 2386-002-005 / 13511 Mulholland Drive, Los Angeles, CA

Lot 22, Tract No. 5571, in the City of Los Angeles, County Of Los Angeles, State Of California, as per Map recorded in Book 107, Pages 72 to 80, inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 2: APN 2386-003-004 / Vacant Land, Los Angeles, CA

That portion of Lot 23 of Tract No. 5571, in the City of Los Angeles, County of Los Angeles, State of California as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly along a direct line, a distance of 196.61 feet, more or less to a point in the Easterly line of said lot distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet.

Parcel 3:

An easement for ingress and egress and driveway purposes, for use in common with others, over that portion of Lot 23, Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107, Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at a point in the Westerly line of said lot, distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly a distance of 25 feet along a direct line which if prolonged would pass through a Point M the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet, thence Westerly along a direct line to a point in the said Westerly line, distant North thereon 15 feet from the said point of beginning thence Southerly along the said Westerly line, a distance of 15 feet to the said point of beginning, together with all of seller's rights and appurtenances to the real property, including, without limitation, any right, title, and interest of seller in and to any and all easements, streets, roads, alleys, or rights-of-way.

Parcel 4: APN 2386-003-003 / Vacant Land, Los Angeles

That portion of Lot 23 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at the Southerly extremity of that certain curve in the Westerly line of said Lot 23, concave Easterly and designated as having a radius of 300.00 feet and an arc length of 74.70 feet, thence North 72 degrees 10' 00" East 78.66 feet, more or less, through a point in the Easterly line of said Lot 23, said point being Southeasterly an arc distance of 74.27 feet from the Northerly extremity of that certain curve in said Easterly line of said Lot 23, designated as having a radius of 140.00 feet, an arc length of 175.12 feet, a radial line to said point bears South 60 degrees 11' 14" West.

Except that portion that portion lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet; thence Northeasterly along a direct line a distance of 198.51 feet more or less to a point in the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet an d a length of 243.55 feet.

4

Exhibit C - Page 47

Parcel 5: APN 2386-011-002 / Vacant Land, Los Angeles

Lot 14 of Tract No. 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of said land described as follows:

Beginning at a point in the Northwesterly line of said Lot, distant South 27° 26' 36" West, along said line, 161.81 feet from the most Northerly corner of said lot, thence South 73° 00' 00" East 100.00 feet, thence South 14° 00' 00" East 60.00 feet, thence South 86° 04' 25" West 161.81 feet, thence North 72° 00' 00" West to said Northwesterly line, thence along said Northwesterly line, North 27° 26' 36" East to the point of beginning.

Also except therefrom any portion of said land inclusive within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 6: APN 2386-010-008 & 2386-010-009 / Vacant Land, Los Angeles

That portion of Lot 13 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southerly of the following described line:

Beginning at the Northerly terminus of that certain curve in the Westerly line of said map, as being concave Southwesterly, having a radius of 50.00 feet and an arc length of 41.07 feet, thence Southeasterly along said curve through a central angle of 22° 55' 06" an arc distance of 20.00 feet to the true point of beginning, thence North 84° 35' 29" East 227.07 feet to a point on that certain curve in the Easterly line of said lot, shown on said map as being concave Easterly, having a radius of 160.00 feet and an arc length of 170.81 feet, a radial of said last mentioned curve to said point bears South 68° 21' 42" West.

Parcel 7: APN 2386-006-002 / Vacant Land, Los Angeles

Lot 16 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except that portion of said Lot 16 included within the lines of Tract No. 24980, as shown on Map recorded in Book 673 Page 1 of Maps, in the Office of the County Recorder of said County.

Also except that portion of Lot 16, included within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 all of Official Records.

Parcel 8: APN 2386-006-001 / Vacant Land, Los Angeles

Lot 17 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 Official Records.

APNs:

| | | |
|---|---|---|
| 2386-002-005 | 2386-006-001 | 2386-010-009 |
| 2386-003-003 | 2386-006-002 | 2386-011-002 |
| 2386-003-004 | 2386-010-008 | |

5

Exhibit C - Page 48

## DEED IN LIEU OF FORECLOSURE AGREEMENT

This DEED IN LIEU OF FORECLOSURE AGREEMENT (**"Agreement"**) is made as of December 22, 2020 (the **"Effective Date"**), by and among New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd., Hermosa Beach, CA 90254 (**"Borrower"**), Patrick Kealy, an individual (**"Guarantor"**), and Grimm Investments, LLC, a California limited liability company having an office at 1377 East Valley Rd., Santa Barbara, CA 93108 (**"Lender"**).

### RECITALS

A.    Borrower owns fee simple title to the real property located at 13511 Mullholland Drive, Beverly Hills, CA 90210, and more particularly described on the attached <u>Exhibit A</u> (the **"Land"**), and the buildings, fixtures, and other improvements located on the Land (collectively, the **"Improvements"**).

B.    Lender made a loan (the **"Loan"**) to Borrower in the original principal amount of Five Million Dollars ($5,000,000), which Loan was made pursuant to a certain Loan Agreement dated March 1, 2018 between Borrower and Lender (the **"Loan Agreement"**). The Loan is evidenced by a certain Promissory Note dated March 1, 2018 made by Borrower, as maker, in favor of Lender, as payee (the **"Note"**) and secured by, among other things, a certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated March 1, 2018 made by Borrower, as trustor, in favor of Fidelity National Title Company, a California corporation, as trustee and Lender, as beneficiary (the **"Security Instrument"**). The Borrower's obligation under the Note are guaranteed by Guarantor pursuant to the terms of that certain Guaranty dated March 1, 2018 made by Guarantor, as guarantor, to Lender, as lender (the **"Guaranty"**). The Loan is evidenced and secured by the Loan Agreement, the Note, the Security Instrument, and the Guaranty (collectively, the **"Loan Documents"**).

C.    As of the Effective Date, Borrower acknowledges and agrees that it is indebted to Lender in the amount of $6,176,666.65.

D.    Borrower acknowledges and agrees that it is in default under the Loan Documents. Such defaults (collectively, the **"Existing Defaults"**) are material and entitle Lender to pursue all remedies under the Loan Documents, at law or in equity, including foreclosure of the Security Instrument.

E.    Lender has delivered a notice of the Existing Defaults (the **"Default Notice"**) to Borrower and Guarantor on April 22, 2019. Borrower and Guarantor acknowledge the Default Notice was timely received and correct in all material respects. The Default Notice is incorporated herein by specific reference as if more fully stated herein.

F.    Borrower and Guarantor each acknowledge that the Existing Defaults remain uncured and that all grace and cure periods afforded under the Loan Documents have expired and, as a result, Lender has accelerated the Loan and the total Secured Indebtedness is now due and owing.

G.    To avoid financial hardship and the damage to its reputation that would result from Lender exercising its rights and remedies under the Loan Documents, Borrower desires, subject to the terms, covenants, and condition set forth in this Agreement, to convey the Property (hereinafter defined) to Lender or Lender's nominee (the **"Purchaser"**), in consideration for Lender not foreclosing its security interest in the Property or exercising any of its other rights and remedies against Borrower and Guarantor.

H.    The fair market value of the Property does not exceed the Secured Indebtedness.

I.    To avoid the necessity of litigation, foreclosure, and the delays associated therewith, Lender has agreed to accept, , or cause the Purchaser to accept, the transfer of the Property, subject to and in accordance with the terms, covenants, conditions, and limitations set forth in this Agreement.

1

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### AFFIRMATION OF RECITALS; DEFINED TERMS

**Section 1.01    Affirmation of Recitals; Defined Terms.** The recitals set forth above are true and correct and incorporated herein by specific reference. All capitalized terms not otherwise defined in this Agreement shall have the meanings given to them in the Loan Documents.

## ARTICLE II
### TRANSFER OF THE PROPERTY

**Section 2.01    The Property.** On the Closing Date (as hereinafter defined), Borrower shall transfer, assign, and convey the Property (as defined in the Loan Documents and as more particularly described on Exhibit A to Lender (or, at Lender's option, Purchaser), and Lender shall aquire (or cause Purchaser to acquire) the Property from Borrower, free and clear of all rights, interests, and liens of Borrower or anyone claiming by, through, or under Borrower, including any statutory rights of redemption.

**Section 2.02    Closing.** The closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place on March 22, 2021 (the "**Closing Date**"), time being of the essence with respect to Borrower's obligation to close. The Closing shall take place by the exchange of the documents listed in Section 2.03. Notwithstanding the foregoing, Lender shall have the right to adjourn the Closing for any reason to such other date and at such other place as it may determine in its sole discretion and shall provide Borrower ten (10) days' prior written notice of such change. Except only as provided in Section 11.03, Borrower shall not have a right to adjourn the Closing.

**Section 2.03    Closing Conditions.** As a condition precedent to Closing, Borrower shall satisfy to Lender's satisfaction on or before the Closing Date, all of the following conditions (collectively, the "**Closing Conditions**"):

(a)    Title Documents. The following title, transfer, original documentation, and other matters shall be duly authorized, properly executed, acknowledged (if applicable), and delivered:

(i)    the Title Policy (as defined in Section 4.01), or a marked-up commitment to issue a Title Policy, shall be issued to Lender (or Purchaser);

(ii)    if required by Lender, the Loan Policy Endorsements (as defined in Section 4.02), or a marked-up commitment to issue the Loan Policy Endorsements, shall be issued to Lender;

(iii)    an owner's title affidavit, in form and content acceptable to Lender and Title Company (the "**Title Affidavit**"), shall be delivered by Borrower to Lender and Title Company;

(iv)    A gap undertaking and affidavit satisfactory to Title Company (the "**GAP Undertaking**") so as to permit issuance of the Title Policy and the Loan Policy Endorsements shall be delivered to Title Company;

(b)    Transfer Documents. The following Property transfer documents shall be duly authorized, properly executed, acknowledged (if applicable), and delivered to Lender:

(i)    Borrower's duly executed and acknowledged deed in lieu, in the form of Exhibit B attached hereto (the "**Deed**");

2

(ii)      Borrower's duly executed assignment of the Assigned Contracts (as hereinafter defined), warranties, permits, and licenses in the form of Exhibit C attached hereto (the "**Assignment of Contracts, Warranties, Permits, and Licenses**"); and

(iii)      A duly executed non-foreign status certification in the form of Exhibit D attached hereto (the "**FIRPTA Certificate**") that Borrower is not a "foreign person" as such term is defined in Section 1445 of the Internal Revenue Code, as amended and the regulations thereunder, which certification shall be under penalty of perjury.

(c)      Original Documents. Borrower shall deliver the following documents to Lender:

(i)      if available, the original Plans and Specifications to Lender;

(ii)      the original Warranties to Lender;

(iii)      the original Licenses and Permits to Lender; and

(iv)      copies of all books, records, bills, invoices, lease files, credit reports, and other documents related to the ownership, operation, management, use, maintenance, or leasing of the Property (collectively, the "**Property Documents**") to Lender (or, at Lender's option, Purchaser). For any items not physically delivered to Lender (or, at Lender's option, Purchaser) on the Closing Date and provided Lender agrees in writing to Borrower, Borrower may deliver on the Closing Date:

(A)      a letter to Lender stating where such item(s) of the Property Documents is located; and

(B)      a letter from Borrower to its managing agent directing such managing agent (or other keeper of the item(s)) to release all such Property Documents to Lender or to Lender's designee.

(d)      Entity Documents. Borrower shall deliver the following documents to Lender and Title Company:

(i)      a certificate of good standing from the Secretary of State dated not earlier than three (3) months from the Effective Date.

(ii)      consents of the member and manager of each Borrower each authorizing the transaction contemplated hereby and the execution and delivery of the documents required to be executed and delivered hereunder.

(e)      Other Deliveries. The following deliveries shall be made:

(i)      Borrower shall deliver possession of the Property to Lender (or Purchaser);

(ii)      Borrower shall deliver to Lender evidence of termination (at no cost to Lender or Purchaser and free of all liens or claims for liens by reason of such terminated agreements) of all agreements that are not Assigned Contracts (each, an "**Excluded Contract**");

(iii)      Borrower shall deliver to Lender (or Purchaser) lien waivers and lien releases from each person listed on the attached Exhibit E (the "**Lien Waivers**") and any other person who, pursuant to applicable law or agreement, may have a right to a lien on the Property as a result of work or services performed or materials provided to, or for the benefit of, the Property;

(iv)      Borrower and Guarantor shall deliver to Lender a release of claims in the form attached hereto as Exhibit F (the "**Release**"); and

3

(v)        Borrower shall deliver to Lender such other consents from such other persons as may be required to consummate the transaction.

(f)        Physical Condition.  Prior to the Closing Date, but without limitation on the representations and warranties herein contained, Lender shall not have objected in writing to any matter revealed by Lender's investigation of the physical condition of the Property. Provided there has been no material adverse change to the condition of the applicable Property since the date of the Lender's most recent inspections, Lender shall not have the right to object to the physical condition of any Property.

**Section 2.04**    Failure of Conditions Precedent.  If any of the conditions set forth in Section 2.03 hereof have not been satisfied by the date set forth therein for the satisfaction of such condition, and the condition has not been waived by Lender in writing, then Lender shall have the right, by written notice to Borrower and Guarantor, to terminate this Agreement and the obligations of the parties hereunder.  The termination shall not release any party from liability for any obligation that expressly survives such termination. No such termination of this Agreement shall affect or diminish in any way the rights and obligations of the parties under any Loan Document and each party shall be free to pursue its rights, remedies and defenses in accordance therewith.

**Section 2.05    Closing Costs.** Each party hereto shall pay its own legal fees and expenses and other costs and expenses incurred by it in connection with the transaction contemplated hereunder, except that Lender shall pay the following costs related to the transactions contemplated herein:

(a)        all recording and filing fees for the Deed and any release or assignment of the Loan Documents;

(b)        any transfer or other similar taxes and surtaxes due with respect to the transfer of title that may be imposed by the State of California, County of Los Angeles (it being understood that the parties believe that no such taxes or surtaxes are applicable to the transaction contemplated under this Agreement); and

(c)        the cost for title insurance, endorsements, the survey, and any other related costs as may be specifically required by Lender.

**ARTICLE III**
**CONSIDERATION**

**Section 3.01    Lender's Consideration.** In consideration for the transfer of the Property and the delivery of the Deed from Borrower to Lender (or Purchaser), and subject to the terms, provisions, and conditions contained in this Agreement, Lender agrees as follows:

(a)        If and only if the Closing occurs, then, upon the Closing Date, Lender shall be deemed to have covenanted and agreed, except as expressly set forth herein, not to bring, file or commence any action, suit, claim or cause of action against Borrower and/or Guarantor with respect to any obligation under the Loan Documents including any deficiency (with the exception of mandatory counter or cross-claims); provided, however, that the foregoing covenant and agreement shall in no event extend to the continuing liabilities and obligations of Borrower and Guarantor relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement or any of the documents or instruments delivered at Closing or to any indemnities in favor of Lender.

**Section 3.02**    The covenant and agreement in Section 3.01 shall be void from its inception, if:

(a)        Borrower and/or Guarantor shall take any act or make any claim of rescission of this Agreement or any of the Closing Documents; or

(b)        a court of competent jurisdiction determines that (or any claim is made by Borrower, Guarantor or any third party, other than by Lender or Buyer in bankruptcy, that) the transfer of the

4

Property to Buyer or the receipt of any funds by any party hereunder constitutes a preference or a fraudulent conveyance, or otherwise sets aside or holds ineffective such transfer of the Property or such funds.

**Section 3.03**    The covenant and agreement in Section 3.01 notwithstanding, if Borrower and/or Guarantor files for protection under the U.S. Bankruptcy Code within twelve (12) months after Closing, and as a result thereof Lender or Buyer incurs any material liability or cost to respond or defend Lender, Buyer or the Property in connection with any such bankruptcy filing, Borrower and/or Guarantor shall indemnify Lender and Buyer for such liability or cost, and Lender and/or Buyer shall have the right to bring an action against Borrower and/or Guarantor to recover the same.

**Section 3.04**    The foregoing covenants and agreements shall not defeat, limit or otherwise affect any right of Lender to commence or complete foreclosure proceedings under any Deed of Trust or any of the other Loan Documents. Borrower and Guarantor acknowledge and agree that the obligations under each Note and the other Loan Documents remain in full force and effect, to enable Lender to foreclose each Deed of Trust if Lender elects to do so in Lender's sole and absolute discretion. The provisions of this Article III shall survive Closing.

**ARTICLE IV**
**TITLE**

**Section 4.01    Owner's Title Policy.** As a condition to Lender's obligation to close, Lender (or Purchaser) shall receive from a title insurance company selected by Lender (or Purchaser) ("**Title Company**") an CLTA Owner's Policy of Title Insurance (the "**Title Policy**") dated as of the Closing Date, naming Lender (or Purchaser) as the insured, showing fee simple title to the Property vested in Lender (or Purchaser) and subject only to the Loan Documents of record.

**Section 4.02    Loan Title Policy.** Lender shall receive from Title Company the following endorsements to its Loan Policy (which endorsements shall be dated as of the Closing Date):

        (a)    a date-down endorsement showing fee simple title to the Property vested in Lender (or Purchaser) and insuring the Security Instrument as a first priority encumbrance on the Property; and

        (b)    at Lender's option, a nonmerger endorsement acceptable to Lender (collectively, the "**Loan Policy Endorsements**").

**ARTICLE V**
**COVENANTS**

**Section 5.01    Affirmative Covenants of Borrower.** From the Effective Date until the Closing, Borrower shall:

        (a)    Keep the collateral for the Loan free of all liens, claims, title exceptions, and encumbrances, other than the liens and interests arising under the Loan Documents.

        (b)    Execute and deliver or otherwise provide any documents or instruments relating to the Agreement or the Loan as Lender may request, including, without limitation:

            (i)    any assignments or other documents of conveyance, releases, or discharges necessary for the transfer of title to Lender (or Purchaser) under this Agreement or the Loan Documents; and

            (ii)    any affidavits or certifications requested by Lender updating and confirming any of the representatives, warranties, or statements made or the performance of any of the obligations undertaken by Borrower.

5

(c)      Provide such certifications or assurances as the Title Company may require in connection with the issuance of any title insurance coverage required by Lender (or Purchaser).

(d)      Cooperate with Lender and Purchaser and, upon Lender's request, any third-parties designated by Lender to facilitate the orderly transfer of the ownership and management of the Property pursuant to this Agreement, including, without limitation, title companies, surveyors, attorneys, financial advisors, inspectors, appraisers, and property management companies.

(e)      Permit Lender and/or Lender's designated representatives to inspect the Property and audit and review Borrower's books and records related to the Property.

(f)      Operate the Property in the ordinary course of business consistent with Borrower's past custom and practice for the Property.

(g)      Promptly deliver (and shall cause Guarantor to promptly deliver) to Lender copies of any notices or communications received by Borrower or Guarantor regarding any claims, liens, encumbrances, assessments, or levies claimed against the Property.

(h)      On or before the Closing Date, at its sole cost and expense, terminate:

(i)      all contracts related to the Property ("**Service Contracts**"), except for any Service Contracts which Lender elects (in its sole discretion) in writing to assume (all such Service Contracts which Lender elects to assume, collectively, the "**Assigned Contracts**"); and

(ii)      any agreements with respect to the provision of any type of management services and leasing services for the Property.

(i)      Use its best efforts to arrange to have all utility and public service meters read as of the Closing Date.

(j)      Arrange for the removal, on the Closing Date, of its name from the Property on the records of the appropriate utility and public service companies and shall cooperate in arranging for the commencement of service to Lender (or Purchaser) on such date.

(k)      Use, and shall cause Guarantor to use, its best efforts to assist in the transfer to Lender (or Purchaser) of each of the Licenses and Permits, which assistance shall include, without limitation, providing any information or documents necessary to obtain the proper consents and approvals from applicable governmental authorities.

(l)      Refrain from taking any action to oppose, hinder, impede, obstruct, delay, or interfere with the exercise of Lender or its agents of Lender's judicial or non-judicial foreclosure rights at law, in equity, or under and pursuant to the Loan Documents; and Borrower shall not challenge at any time:

(i)      the validity of any nonjudicial foreclosure sale conducted by Lender or its agents with respect to the Property;

(ii)      the validity of any judicial foreclosure action brought by Lender or its agents; or

(iii)      the enforceability of any transfer of title to the Property resulting from any such nonjudicial foreclosure sale or judgment in any judicial foreclosure action.

**Section 5.02    Negative Covenants of Borrower.** From the Effective Date until the Closing, Borrower shall not:

6

(a)    Enter into any leases, contracts, or agreements with respect to the Property, without obtaining Lender's prior written consent.

(b)    Convey or remove from the Improvements any Personal Property.

(c)    Transfer or withdraw any moneys from any Reserve Account, escrow, or other similar account relating to the Property, without obtaining Lender's prior written consent.

**Section 5.03    Affirmative Covenants of Guarantor.** From the Effective Date until the Closing, Guarantor shall:

(a)    Execute and deliver or otherwise provide any documents or instruments relating to the Agreement or the Loan as Lender may request, including, without limitation:

(i)    any assignments or other documents of conveyance, releases, or discharges necessary for the transfer of title to Lender (or Purchaser) under this Agreement or the Loan Documents; and

(ii)    any affidavits or certifications requested by Lender updating and confirming any of the representatives, warranties, or statements made or the performance of any of the obligations undertaken by Guarantor.

(b)    Provide such certifications or assurances as the Title Company may require in connection with the issuance of any title insurance coverage required by Lender (or Purchaser).

(c)    Promptly deliver to Lender copies of any notices or communications received by Borrower or Guarantor regarding any claims, liens, encumbrances, assessments, or levies claimed against the Property.

(d)    Use its best efforts to assist in the transfer to Lender (or Purchaser) of each of the Licenses and Permits, which assistance shall include, without limitation, providing any information or documents necessary to obtain the proper consents and approvals from applicable governmental authorities.

(e)    Refrain from taking any action to oppose, hinder, impede, obstruct, delay, or interfere with the exercise of Lender or its agents of Lender's judicial or non-judicial foreclosure rights at law, in equity, or under and pursuant to the Loan Documents; and Guarantor shall not challenge at any time:

(i)    the validity of any nonjudicial foreclosure sale conducted by Lender or its agents with respect to the Property;

(ii)    the validity of any judicial foreclosure action brought by Lender or its agents; or

(iii)    the enforceability of any transfer of title to the Property resulting from any such nonjudicial foreclosure sale or judgment in any judicial foreclosure action.

**Section 5.04    Covenant Not to Sue.**

(a)    If and only if the Closing occurs, then, upon the Closing Date, Lender, for itself and for Purchaser and their respective successors and assigns, shall be deemed to have covenanted and agreed, except as expressly set forth herein, not to bring, file or commence any action, suit, claim or cause of action against Borrower and/or Guarantor with respect to any obligation under the Loan Documents including any deficiency (with the exception of mandatory counter or cross-claims); provided, however, that the foregoing covenant and agreement shall in no event extend to the continuing liabilities and obligations of Borrower and Guarantor relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement or any of the documents or instruments

7

delivered at Closing or to any indemnities in favor of Lender. The foregoing covenant and agreement shall be void from its inception, if:

(i)    Borrower and/or Guarantor shall take any act or make any claim of rescission of this Agreement or any of the Closing Documents; or

(ii)    a court of competent jurisdiction determines that (or any claim is made by Borrower, Guarantor or any third party, other than by Lender or Buyer in bankruptcy, that) the transfer of the Property to Buyer or the receipt of any funds by any party hereunder constitutes a preference or a fraudulent conveyance, or otherwise sets aside or holds ineffective such transfer of the Property or such funds.

(b)    If Borrower and/or Guarantor files for protection under the U.S. Bankruptcy Code within twelve (12) months after the Closing Date, and as a result thereof Lender or Buyer incurs any material liability or cost to respond or defend Lender, Buyer or the Property in connection with any such bankruptcy filing, Borrower and/or Guarantor shall indemnify Lender and Buyer for such liability or cost, and Lender and/or Buyer shall have the right to bring an action against Borrower and/or Guarantor to recover the same.

(c)    The foregoing covenants and agreements shall not defeat, limit or otherwise affect any right of Lender to commence or complete foreclosure proceedings under any Deed of Trust or any of the other Loan Documents.

(d)    Borrower and Guarantor acknowledge and agree that the obligations under each Note and the other Loan Documents remain in full force and effect, to enable Lender to foreclose each Deed of Trust if Lender elects to do so in Lender's sole and absolute discretion.

(e)    The provisions of this Section 5.04 shall survive Closing.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES

**Section 6.01    Representations and Warranties of Borrower.** Borrower represents and warrants to Lender as follows:

(a)    Each Borrower is duly organized, validly existing, and in good standing under the laws of the State of Delaware and California, as applicable. Borrower has the right, power, and authority to execute this Agreement and to perform its obligations under this Agreement. The execution and delivery of this Agreement by Borrower has been authorized by all necessary limited liability company action of Borrower. The execution, delivery, and performance of this Agreement by Borrower does not breach, conflict with, or contravene:

(i)    Borrower's operating agreements or certificates;

(ii)    any agreement, instrument, document, or indenture to which Borrower is a party or by which it and the Property is bound;

(iii)    any applicable law; or

(iv)    any judgment, writ, or order directed to Borrower or by which Borrower may be bound.

(b)    Borrower owns good, valid, and marketable fee simple title to the Property, free and clear of all liens, title exceptions, claims, or encumbrances.

8

(c)     There exists no land contract, deed, or other executory agreement to sell or otherwise transfer all or any portion of the Property or any direct or indirect interest in or to the Borrower.

(d)     No representation or warranty by Borrower or Guarantor contained in this Agreement, the Borrower Documents, or any other instrument delivered on behalf of Borrower or Guarantor, contains any materially untrue statement of fact or materially omits any fact or statement necessary to make the facts or statement contained herein or therein material false or materially misleading.

(e)     Borrower has not filed a petition in any case, action, or proceeding under Title XI of the United States Code (the "**Bankruptcy Code**") or any similar state law. No petition in any case, action, or proceeding has been filed against Borrower that has not been dismissed or vacated. Borrower is not insolvent and has not filed an answer or otherwise admitted in writing insolvency or inability to pay its debts or made an assignment for the benefit of creditors or consented to an appointment of a receiver or trustee of all or a material part of its property. The transaction contemplated herein will not render Borrower insolvent and is not a preference, voidable transfer, fraudulent conveyance, or otherwise in violation of the Bankruptcy Code or other similar law.

(f)     Borrower has not received any written notice of any, nor is there any pending, or to the best of Borrower's knowledge any threatened, litigation, or administrative proceeding involving in any manner the Property or the ownership, leasing, operation, use, management, or maintenance thereof or this transaction.

(g)     Borrower has requested conveyance of title to the Property in lieu of the exercise of Lender's remedies pursuant to the Loan Documents. Throughout the negotiation, preparation, and execution of this Agreement, Borrower has been, and will through Closing, be represented by competent legal counsel of its own choosing.

(h)     The value of the Property does not exceed the Secured Indebtedness owing to Lender under the Loan Documents and Borrower has no equity in the Property.

(i)     Borrower is not consummating the transaction contemplated by this Agreement with any intent to hinder, delay, or defraud any party to whom Borrower is now indebted or may hereafter become indebted.

(j)     There are no tenants or other occupants of the Property and there are no other leases or occupancy agreements in effect, other than the Leases, that would be binding upon Lender. True and correct copies of the Leases have been provided to Lender.

(k)     There are no defects in:

(i)     the structural components of the Property, including but not limited to, the roofs and foundations; or

(ii)     the mechanical, electrical, air-conditioning, ventilation, sewer, water, and plumbing systems serving the Property, and such systems are in good working order.

(l)     There are no unpaid brokerage fees or leasing commissions (or which with the passage of time or the occurrence of an event, or both, will be payable) related to the Property.

(m)     Borrower has never received notice of any violations of any governmental regulation governing the use, storage, treatment, transportation, manufacture, refinement, handling, production, or disposal of Hazardous Materials at or from the Property.

(n)     There are no pending or contemplated, or threatened condemnation or eminent domain proceedings against the Borrower, the Property, or any part thereof.

9

(o)     Borrower has not received any notice or, and has no notice of, any pending or threatened rezoning, special zoning exceptions, "floor area ratio" changes, variances, conditions, or agreements affecting, or potentially affecting, the Property or any portion thereof.

(p)     The Property is in compliance with all applicable federal, state, local, or other governmental zoning, health, safety, platting, subdivision, laws, ordinances, and regulations and Borrower has not received notice and does not have notice that the Property does not comply therewith.

(q)     There are no unpaid bills or invoices for labor, service, or work performed upon the Property, or for materials or supplies furnished or delivered to, or in connection with, the Property, that could result in the filing of mechanic's, materialmen's, or laborer's liens on the Property.

(r)     there is not any contract or agreement, written or oral, or any amendment or supplement to any such contract or agreement, to which Borrower is a party or that affects the Property.

(s)     There are no rights of first refusal or options relating to the Property granted to any Tenants under the Leases or to third parties by Borrower or to which Borrower is a party.

(t)     There are no labor disputes, organizational campaigns, or union contracts existing or under negotiation as of the date hereof with respect to the use or operation of the Property and there are no employees engaged in the operation or maintenance of the Property for whom Lender will be responsible after the Closing.

(u)     Borrower has filed all tax returns that are required by federal, state, or other law to be filed prior to the Closing Date and has paid all income, franchise, sales, use, and employment taxes.

(v)     The Borrower Closing Documents transfer all the real and personal property used or necessary in connection with the ownership and operation of the Property.

(w)     The conveyance of the Property pursuant hereto will not violate any private restriction or agreement applicable to the Property.

(x)     Borrower is not in default or breach in any respect under any applicable law or order of any court, administrative agency, or other governmental entity, or any agreement or document (except for the Loan Documents), to which Borrower is a party, or by which Borrower may be bound or to which the Property or any portions of its properties or assets may be subject.

(y)     No authorization or approval of any governmental authority is required to be obtained by Borrower in connection with the execution, delivery, and performance of this Agreement or the Borrower Closing Documents.

(z)     Borrower is a single asset entity and does not own anything other than the Property.

(aa)     Borrower is not a Foreign Person within the meaning of Section 1445 and 7701 of the Internal Revenue Code of 1986, as amended, and any applicable regulations thereunder.

(bb)     Borrower is currently in compliance with, and shall at all times during the term of this Agreement (including any extensions thereof) remain in compliance with, the regulations of the Office of Foreign Assets Control ("**OFAC**") of the Department of Treasury (including those named on OFAC's Specially Designated Nationals and Blocked Persons List) and any statute, executive order, or other governmental action relating thereto.

Each of the representations and warranties set forth in this Section 6.01 will be deemed to have been remade by the Borrower as of the Closing Date, with the same force and effect as if first made on and as of such date and will survive the Closing and the filing of the Deed of record.

10

## ARTICLE VII
### INDEMNIFICATION; SURVIVING LIABILITIES

**Section 7.01    Indemnification.** Borrower and Guarantor, jointly and severally, shall indemnify, defend, and hold Lender and/or Purchaser and their respective affiliates, agents, attorneys, directors, employees, members, officers, parents, partners, representatives, stockholders, subsidiaries, and successors and assigns (collectively, the "**Lender Parties**") harmless from and against any agreements, breach, controversy, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, damage, penalty, debt, default, demand, dispute, act, claim, liability, suit, or cause of action arising, directly or indirectly, from any:

(a)    Breach by Borrower or Guarantor of any warranty or representation contained in this Agreement or in the additional documents executed and delivered by Borrower and Guarantor pursuant to this Agreement (collectively, the "**Borrower Documents**").

(b)    Breach, violation, or default by Borrower or Guarantor of any covenant, agreement, or provision of the Borrower Documents.

(c)    Physical waste to the Property committed by Borrower prior to the Closing Date.

(d)    Fraud or misappropriation or misapplication of funds committed by on or behalf of Borrower in contravention of the Loan Documents.

(e)    Assignment for the benefit of creditors, bankruptcy, insolvency, or other debtor relief proceeding of any kind affecting Borrower, whether under federal or state law, commenced voluntarily by Borrower or with any direct or indirect collusion or consent by Borrower or Guarantor.

(f)    Misrepresentation of Borrower or Guarantor contained in any of the Loan Documents or Borrower Documents.

(g)    Any accident, injury, death, or damage whatsoever caused to any person or entity or loss of property occurring in or about the property or any part thereof.

(h)    Claims or liabilities pertaining to the Property arising prior to the Closing Date, including, but not limited to, any discharge, existence, use, deposit, spill, or other release of Hazardous Materials in, at, on, or from the Property that occurred at any time before the Closing Date.

**Section 7.02    Survival of Indemnification.** The provisions of this Article VII shall survive the Closing.

## ARTICLE VIII
### NO OBLIGATION OF LENDER TO THIRD PARTIES

**Section 8.01    No Third-Party Beneficiary.** Borrower acknowledges and agrees that it does not intend that the transfer to Lender (or Purchaser) of title to the Property under the terms of this Agreement shall create any obligations or liabilities on the part of Lender (or Purchaser) to third parties that have claims against Borrower or Guarantor with respect to the Property that accrued before the Closing. Neither Lender nor Purchaser assumes, or agrees to discharge, any such obligations or liabilities.

## ARTICLE IX
### ABSOLUTE CONVEYANCE

**Section 9.01    Conveyance.** The conveyance of the Property to Lender (or Purchaser) according to the terms of this Agreement is a voluntary and absolute conveyance of all its right, title, and interest in and to the Property in fact as well as form and was not and is not intended as a mortgage, trust conveyance, deed of trust, or security interest of any kind, and the consideration for such conveyance is exactly as recited herein. Borrower has

11

no further interest (including rights of redemption, rights of reinstatement, or rights under homestead laws) or claims on and to the Property or to the rents, proceeds, and profits that may be derived thereof, of any kind whatsoever.

**ARTICLE X**
**NO MERGER**

**Section 10.01  No Merger.** It is expressly understood and agreed by Lender, Purchaser, Borrower, and Guarantor that all the liens and security interests in the Property created and evidenced by the Loan Documents, and all Lender's rights and remedies with respect thereto, including, but not limited to, the remedy of judicial or non-judicial foreclosure, and the equitable state of Lender or Purchaser in the Property shall not merge with the legal estate and title in the Property to be conveyed by Borrower and Guarantor to Lender pursuant to this Agreement. Notwithstanding the acquisition of the Property by Lender (or Purchaser), the indebtedness evidenced by the Loan Documents shall not be cancelled, shall survive the Closing, and all the Loan Documents shall remain in full force and effect after the transaction contemplated by this Agreement has been consummated. he parties agree that the interest of Lender in the Property after acquisition of the Property shall not merge with the interest of Purchaser in the event Lender and Purchaser are the same. It is the express intention of each of the parties hereto that such interests of Lender (and Purchaser) in the Property shall not merge but shall be and remain at all times separate and distinct. The lien of the Security Instrument in the Property shall be and remains at all times a valid and continuous lien on the Property until and unless released of record by Lender, or its successors and assigns.

**ARTICLE XI**
**DEFAULT; TERMINATION RIGHTS**

**Section 11.01  Default by Borrower.** Borrower shall be in default under this Agreement immediately upon the occurrence of any of the following events (each, an **"Event of Default"**):

(a)    Any failure by Borrower or Guarantor to perform, on the day such performance is due, any obligation under this Agreement.

(b)    If any material inaccuracy is made in respect of the information, representations, and warranties made or provided by, or on behalf of, Borrower or Guarantor under this Agreement.

(c)    A further default occurs under the Loan Documents (in addition to the Existing Defaults) and such default is not cured after the giving of any required notices and the expiration of any applicable cure periods.

**Section 11.02  Remedies for Default.** Upon the occurrence of an Event of Default, Lender, in addition to and without waiving any other right or remedy available at law or in equity, shall have the right, in its sole discretion and without additional notice, to exercise any one or more of the following remedies:

(a)    Terminate this Agreement upon written notice to Borrower (the **"Termination Notice"**).

(b)    Proceed to exercise any and all its rights and remedies under the Loan Documents, this Agreement, and at law and in equity.

**Section 11.03  Termination by Borrower.** Notwithstanding anything to the contrary here, Borrower may elect to terminate this Agreement upon written notice to Lender if on or before the Effective Date, the Secured Indebtedness is paid in full to Lender, upon confirmation of the same by Lender in writing. In connection therewith, if necessary, Lender agrees to cooperate fully with all reasonable requests in writing from Borrower, or from an agent, representative or advisor to the Borrower (including a refinance lender), in connection with the refinance of Borrower's loan to facilitate payoff the Secured Indebtedness in full. The fulfillment of any reasonable requirement of the refinance lender that may constitute a violation of this Agreement shall not be deemed a default hereunder, provided: (a) the refinance lender has otherwise agreed, to Lender's reasonable satisfaction, that the funds will payoff the Secured Indebtedness in full, and (b) that the fulfillment of any refinance lender requirement does not

12

impact the enforceability of this Agreement in the event the Secured Indebtedness is not paid in full prior to the Effective Date.

## ARTICLE XII
### MISCELLANEOUS PROVISIONS

**Section 12.01 Notices.** Unless specifically stated otherwise in this Agreement, all notices, waivers, and demands required under this Agreement shall be in writing and delivered to all other parties hereto, at the addresses below, by one of the following methods:

(a)    Hand delivery, whereby delivery is deemed to have occurred at the time of delivery;

(b)    A nationally recognized overnight courier company, whereby delivery is deemed to have occurred the business day following deposit with the courier;

(c)    Registered U.S. Mail, signature required and postage-prepaid, whereby delivery is deemed to have occurred on the third business day following deposit with the U.S. Postal Service; or

(d)    Electronic transmission (facsimile or email) provided that the transmission is completed no later than 4:00 p.m. on a business day and the original also is sent via overnight courier or U.S. Mail, whereby delivery is deemed to have occurred at the end of the business day on which electronic transmission is completed.

To Borrower:    Name: Patrick Kealy
Address: 936 Monterey Blvd, Hermosa Beach, CA 90254
Email: patrick@kealyconstruction.com

To Lender:    Name: Grimm Investments, LLC
Address: 1377 East Valley Rd., Santa Barbara, CA 93108
Email: colin@bluepacificbio.com

Any party shall change its address for purposes of this Section 12.01 by giving written notice as provided in this Section 12.01.

All notices and demands delivered by a party's attorney on a party's behalf shall be deemed to have been delivered by said party. Notices shall be valid only if served in the manner provided in this Section 12.01.

**Section 12.02 Voluntary Transaction.** Borrower and Guarantor each acknowledge and agree that this Agreement was entered into out of the free will of Borrower and Guarantor and, pursuant to the arm's-length negotiations of Borrower and Guarantor, each believes the Agreement is fair. Lender has not taken advantage of Borrower or Guarantor by threats, intimidations, overreaching, unconscionable conduct, or otherwise, and each is proceeding in this transaction voluntarily in what it perceives to be its own best interest.

**Section 12.03 Validity of Loan Documents.** Notwithstanding anything to the contrary contained in this Agreement, the parties hereto agree that the Loan Documents:

(a)    are in full force and effect in accordance with their respective terms;

(b)    remain valid and binding obligations of Borrower and Guarantor, as provided therein;

(c)    have not been modified or amended; and

(d)    are hereby reaffirmed and ratified by the parties.

13

The liens, security interests and assignments created by the Loan Documents are and continue to be valid, effective, properly perfected, enforceable and, except as otherwise expressly agreed to by Lender in writing, are hereby ratified and confirmed in all respects by Borrower and Guarantor.

**Section 12.04  No Contest.** Neither Borrower nor Guarantor shall:

(a)    oppose, hinder, impede, obstruct, delay, or in any manner interfere with the exercise of by Lender or its agents of Lender's judicial or non-judicial rights at law, in equity, or under and pursuant to the Loan Documents;

(b)    challenge at any time:

(i)    the validity of any nonjudicial foreclosure sale conducted by Lender or its agent with respect to the Property, or any part thereof;

(ii)    the validity of any judicial foreclosure action brought by Lender or its agents; or

(iii)    the enforceability of any transfer of title to the Property, or any part thereof, resulting from any such nonjudicial foreclosure sale or judgment in a judicial foreclosure action.

**Section 12.05  Time of the Essence.** The Borrower and Guarantor acknowledge and agree that, unless provided otherwise, time is of the essence for the performance of all actions of Borrower and Guarantor required or permitted to be taken under this Agreement.

**Section 12.06  Governing Law.** This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California.

**Section 12.07  Merger; No Representations.** This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. This Agreement is entered into after full investigation, no party relying upon any statement or representation, not set forth in this Agreement, made by any other party.

**Section 12.08  Survival.** The representations, warranties, and indemnities made under this Agreement shall survive the Closing and the delivery of the Deed and the other Borrower Documents to be delivered to Lender (or Purchaser) pursuant to this Agreement.

**Section 12.09  Modifications and Amendments.** This Agreement cannot under any circumstance be modified or amended orally and no agreement shall be effective to waive, change, modify, terminate, or discharge this Agreement, in whole or in part, unless such agreement is in writing and is signed by Borrower, Guarantor, and Lender.

**Section 12.10  Lender Liability.** Neither Borrower nor Guarantor is entitled to assert any lender liability claims against Lender. Lender has not violated any express or implied obligation of good faith or fair dealing relating to Borrower, the Loan, or the relationship between Borrower and Lender. Lender has no obligation or liability to Borrower or Guarantor except as expressly provided in this Agreement. Lender has taken no action or done anything to impair any rights or remedies under the Loan Documents.

**Section 12.11  Assignment.** This Agreement may not be assigned by Borrower or Guarantor without the prior written consent of Lender, which may be withheld for any or no reason. Any attempt by Borrower or Guarantor to assign this Agreement without obtaining Lender's prior written consent shall be void and without force or effect. Lender may assign or otherwise transfer this Agreement, in whole or in part, to any assignee, including Purchaser.

**Section 12.12  Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect, invalidate, or render unenforceable

14

any other term or provision of this Agreement. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated by this Agreement be consummated as originally contemplated to the greatest extent possible.

**Section 12.13  Further Assurances.** Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be required to carry out the provisions of this Agreement and give effect to the transactions contemplated hereby, provided such documents do not impose any material obligations upon any party hereunder except as set forth in this Agreement.

**Section 12.14  Counterparts.** This Agreement may be executed by the parties in separate counterparts, each of which when so executed and delivered shall be an original for all purposes, but all such counterparts shall together constitute but one and the same instrument.

**Section 12.15  Headings.** The captions or paragraph titles contained in this Agreement are for convenience and reference only and shall not be deemed a part of the text of this Agreement.

**Section 12.16  No Waivers.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party providing the waiver. No waiver by either party of any failure or refusal to comply with any obligations under this Agreement shall be deemed a waiver of any other or subsequent failure or refusal to so comply.

**Section 12.17  Not an "Action".** Borrower acknowledges that neither this Agreement, nor any remedy or other action taken pursuant to this Agreement, shall constitute an "action", violate the "one-form of action rule," the "security-first rule", or otherwise give rise to any application of California one-action or anti-deficiency rules which apply to notes secured by real property, and Borrower waives its rights under Sections 580a, 580b, 580c, 580d, 725a, 726, 728, 729.010, 729.060 and 729.070 of the California Code of Civil Procedure in connection with this Agreement and all payments to be made by Borrower hereunder.

**Section 12.18  Waiver of Jury Trial.** THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER ARISING IN TORT OR CONTRACT) BROUGHT BY SUCH PARTY AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

15

LENDER:

Grimm Investments, LLC,
a California limited liability company

_____
By: Rick Grimm
Its: Manager

GUARANTOR:

_____
Patrick Kealy

BORROWER:

New Holland LLC,
a California limited liability company

_____
By: Patrick Kealy
Its: Manager

8th Street MB LLC,
a Delaware limited liability company

By: Kealy Construction, LLC,
a California limited liability company
Sole Member of 8th Street MB, LLC

_____
By: Patrick Kealy
Its: Sole Member

16

EXHIBIT A
Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel 1: APN 2386-002-005 / 13511 Mulholland Drive, Los Angeles, CA

Lot 22, Tract No. 5571, in the City of Los Angeles, County Of Los Angeles, State Of California, as per Map recorded in Book 107, Pages 72 to 80, inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 2: APN 2386-003-004 / Vacant Land, Los Angeles, CA

That portion of Lot 23 of Tract No. 5571, in the city of Los Angeles, County of Los Angeles, State of California as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly along a direct line, a distance of 196.61 feet, more or less to a point in the Easterly line of said lot distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet.

Parcel 3:

An easement for ingress and egress and driveway purposes, for use in common with others, over that portion of Lot 23, Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107, Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at a point in the Westerly line of said lot, distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet, thence Northeasterly a distance of 25 feet along a direct line which if prolonged would pass through a Point M the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet and a length of 243.55 feet, thence Westerly along a direct line to a point in the said Westerly line, distant North thereon 15 feet from the said point of beginning thence Southerly along the said Westerly line, a distance of 15 feet to the said point of beginning, together with all of seller's rights and appurtenances to the real property, including, without limitation, any right, title, and interest of seller in and to any and all easements, streets, roads, alleys, or rights-of-way.

Parcel 4: APN 2386-003-003 / Vacant Land, Los Angeles

That portion of Lot 23 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southeasterly of the following described line:

Beginning at the Southerly extremity of that certain curve in the Westerly line of said Lot 23, concave Easterly and designated as having a radius of 300.00 feet and an arc length of 74.70 feet, thence North 72 degrees 10' 00" East 78.66 feet, more or less, through a point in the Easterly line of said Lot 23, said point being Southeasterly an arc distance of 74.27 feet from the Northerly extremity of that certain curve in said Easterly line of said Lot 23, designated as having a radius of 140.00 feet, an arc length of 175.12 feet, a radial line to said point bears South 60 degrees 11' 14" West.

Except that portion that portion lying Southeasterly of the following described line:

Beginning at a point in the Westerly line of said lot distant thereon North 25 feet from the Southerly extremity of that certain course therein having a length of 250 feet; thence Northeasterly along a direct line a distance of 198.51 feet more or less to a point in the Easterly line of said lot, distant Northerly thereon 81.50 feet from the Southerly terminus of that certain curve therein concave Northeasterly having a radius of 170 feet an d a length of 243.55 feet.

17

Parcel 5: APN 2386-011-002 / Vacant Land, Los Angeles

Lot 14 of Tract No. 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of said land described as follows:

Beginning at a point in the Northwesterly line of said Lot, distant South 27° 26' 36" West, along said line, 161.81 feet from the most Northerly corner of said lot, thence South 73° 00' 00" East 100.00 feet, thence South 14° 00' 00" East 60.00 feet, thence South 86° 04' 25" West 161.81 feet, thence North 72° 00' 00" West to said Northwesterly line, thence along said Northwesterly line, North 27° 26' 36" East to the point of beginning.

Also except therefrom any portion of said land inclusive within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Parcel 6: APN 2386-010-008 & 2386-010-009 / Vacant Land, Los Angeles

That portion of Lot 13 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County, lying Southerly of the following described line:

Beginning at the Northerly terminus of that certain curve in the Westerly line of said map, as being concave Southwesterly, having a radius of 50.00 feet and an arc length of 41.07 feet, thence Southeasterly along said curve through a central angle of 22° 55' 06" an arc distance of 20.00 feet to the true point of beginning, thence North 84° 35' 29" East 227.07 feet to a point on that certain curve in the Easterly line of said lot, shown on said map as being concave Easterly, having a radius of 160.00 feet and an arc length of 170.81 feet, a radial of said last mentioned curve to said point bears South 68° 21' 42" West.

Parcel 7: APN 2386-006-002 / Vacant Land, Los Angeles

Lot 16 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except that portion of said Lot 16 included within the lines of Tract No. 24980, as shown on Map recorded in Book 673 Page 1 of Maps, in the Office of the County Recorder of said County.

Also except that portion of Lot 16, included within the lines of Tract No. 25844, as shown on Map recorded in Book 691 Pages 71 to 74 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 all of Official Records.

Parcel 8: APN 2386-006-001 / Vacant Land, Los Angeles

Lot 17 of Tract 5571, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 107 Pages 72 to 80 inclusive of Maps, in the Office of the County Recorder of said County.

Except all crude oil, petroleum, gas, brea, asphaltum and all kindred substances and other minerals situated 500 feet or more below the surface of said land without right of surface entry to said land, by Edward Stone and Anne Stone, husband and wife and Leo Stone and Gloria Stone, husband and wife, by Deed recorded February 11, 1972 as Instrument No. 117 and as provided in Deed recorded March 30, 1972 as Instrument No. 2770 Official Records.

APNs:

| | | |
|---|---|---|
| 2386-002-005 | 2386-006-001 | 2386-010-009 |
| 2386-003-003 | 2386-006-002 | 2386-011-002 |
| 2386-003-004 | 2386-010-008 | |

18

EXHIBIT B
Form of Deed In Lieu of Foreclosure

RECORDING REQUESTED BY:

Law Office of Courtney E. Taylor

WHEN RECORDED MAIL DEED AND TAX
STATEMENTS TO:

Law Office of Courtney E. Taylor
6465 Nursery Way
San Luis Obispo, CA 93405

Assessor's Parcel Nos:                          (Above Space for Recorder's Use Only)
2386-002-005
2386-003-003
2386-003-004
2386-006-001
2386-006-002
2386-010-008
2386-010-009
2386-011-002

## DEED IN LIEU OF FORECLOSURE

The undersigned Grantor hereby declares:

Grantee is the Foreclosing Beneficiary

CONSIDERATION: $6,364,166.66   AMOUNT OF UNPAID DEBT: $6,364,166.66

NON-EXEMPT AMOUNT: $0

DOCUMENTARY TRANSFER TAX: None   CITY TRANSFER TAX: None

[ ]  computed on the consideration or full value of the property conveyed, or

[X]  computed on consideration or full value less the value of liens or encumbrances remaining at time of sale.

The property conveyed is located in the City of Los Angeles, California.

This DEED IN LIEU OF FORECLOSURE ("**Deed**"), dated as of March 22, 2021, between New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd., Hermosa Beach, CA 90254 ("**Grantor**"), and Grimm Investments, LLC, a California limited liabilty company having an office at 1377 East Valley Rd., Santa Barbara, CA 93108 ("**Grantee**").

**Grantor**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, grants to Grantee,

**ALL** that certain plot, piece, or parcel of land situated, lying, and being in the County of Los Angeles, State of California, and more particularly described in Exhibit A attached hereto (the "**Land**"),

**TOGETHER** with all buildings, foundations, structures, and other improvements and fixtures, erected, installed, or located in, on, or at the Land (collectively, the "**Improvements**"),

**TOGETHER** with all of Grantor's right, title, and interest, if any, in and to all easements, rights of way, and other rights appurtenant to the Land,

**TOGETHER** with all of Grantor's right, title, and interest, if any, to any streets and roads abutting, in front of, or adjoining the Land to the center lines thereof,

**TOGETHER** with the appurtenances and all of the estate and rights of the Grantor in and to the Land and the Improvements (collectively, the "**Property**").

19

This Deed is an absolute, present, unconditional, and irrevocable conveyance of title, in effect as well as form, and is not intended as a mortgage, deed of trust, trust conveyance, or security of any kind. There is no agreement for Grantee or anyone else to reconvey the Property to Grantor under any circumstances whatsoever. This Deed is delivered pursuant to that certain Deed in Lieu of Foreclosure Agreement dated December 22, 2020, entered into between Grantor and Gratee, which is incorporated by reference in this Deed.

Grantor has sold the Property to Grantee for a fair and adequate consideration, such consideration being reasonably equivalent and, in addition to the consideration recited above, being full satisfaction of all obligations secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated March 1, 2018 and recorded on March 13, 2018 as Instrument No.: 20180241310 in the Official Records of Los Angeles County, California (the "**Deed of Trust**").

Grantor understands the effect of the delivery of this Deed to Grantee and is acting freely and voluntarily, and is not under any coercion or duress. Grantor acknowledges, represents, and confirms that by the delivery of this Deed Grantor is not rendered insolvent and this Deed is not being delivered for the purpose of defrauding creditors or avoiding any payment of any of its debts.

It is the purpose and intent of Grantor and Grantee that the beneficial interest of Grantee in the Property under the Deed of Trust shall not merge into the fee interest conveyed hereby, and such interests shall be and remain at all times separate and distinct.

Grantor's acknowledgments and assurances in this Deed are made to induce any title company to issue an owner's policy of title insurance in favor of the Grantee affecting the Property and are further made to protect and benefit Grantee and its successors and assigns, and all other persons who may hereafter acquire an interest in the Property.

Grantor agrees to execute any additional documents that Grantee may reasonably deem necessary or desirable to carry out the purposes hereof.

The words "Grantor" and "Grantee" shall be construed as if they read "Grantors" or "Grantees," respectively, whenever the sense of this Deed requires.

IN WITNESS WHEREOF, Grantor has duly executed this Deed the day and year first above written.

**New Holland LLC,**
a California limited liability company

Exhibit -- Do Not Sign
_____
By: Patrick Kealy
Its: Manager

**8th Street MB LLC,**
a Delaware limited liability company

**By: Kealy Construction, LLC,**
a California limited liability company
Sole Member of 8th Street MB, LLC

Exhibit -- Do Not Sign
_____
By: Patrick Kealy
Its: Sole Member

20

EXHIBIT C
Form of Assignment and Assumption of Contracts, Warranties, Guaranties, Permits and Licenses

This Assignment and Assumption of Contracts, Warranties, Guaranties, Permits and Licenses, (this "**Assignment**"), dated as of March 22, 2021 (the "**Effective Date**"), is entered into by and among New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd., Hermosa Beach, CA 90254 ("**Borrower**"), and ("**Assignor**"), and Grimm Investments, LLC, a California limited liabilty company having an office at 1377 East Valley Rd., Santa Barbara, CA 93108 ("**Assignee**").

A.  Assignor, as seller, and Assignee, as purchaser, have entered into that certain Deed In Lieu of Foreclosure Agreement (the "**Purchase Agreement**") dated as of December 22, 2020 for the purchase and sale of that certain property having an address of 13511 Mullholland Drive, Beverly Hills, CA 90210 and as more particularly described in the Purchase Agreement (the "**Property**"); and

B.  **In** connection with the purchase and sale of the Property, the Purchase Agreement obligates Assignor to assign to Assignee, and Assignee to assume from Assignor, the contracts, warranties, guaranties, permits and licenses each as further defined herein, subject to the terms and conditions set forth in this Assignment.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth in this Assignment, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     **Assignment.** As of the Effective Date of this Assignment, Assignor HEREBY ASSIGNS AND TRANSFERS unto Assignee, all of Assignor's rights in, under and to all benefits and privileges accruing to Assignor thereunder to each of the following (collectively, the "**Assumed Agreements**"):

(a)     <u>Contracts</u>. Each written contract or agreement from any service provider, contractor, building management service and all other contracts affecting the Property or operation thereof to the extent transferable with the sale of the Property as identified on <u>Schedule A</u> attached hereto and made a part hereof (the "**Assumed Contracts**").

(b)     <u>Warranties and Guaranties</u>. Each written warranty, guaranty or other obligation from any contractor, manufacturer or vendor to any improvements, furnishings, fixture or equipment located at the Property, to the extent assignable in connection with the sale of the Property as identified on <u>Schedule B</u> attached hereto and made a part hereof (the "**Assumed Warranties and Guaranties**").

(c)     <u>Permits and Licenses</u>. Each permit, license or other form of authorization or approval issued by a government agency or authority and legally required for the operation and use of the Property to the extent transferable with the sale of the Property as identified on <u>Schedule C</u> attached hereto and made a part hereof (the "**Assumed Permits and Licenses**").

2.     **Assumption.** Assignee hereby assumes and agrees to perform any and all of the obligations and liabilities of Assignor under each of the Assumed Agreements accruing from and after the Effective Date.

3.     **Indemnification.**

(a)     Assignor hereby agrees to indemnify, defend and hold harmless Assignee, its successors and assigns, from and against any and all claims, liabilities, losses, costs, damages and expenses (including reasonable attorneys' fees, charges and expenses in the enforcement of this indemnity) for breach or default on the part of the service provider, contractor, manufacturer or vendor under any Assumed Agreement based on an event occurring (or alleged to have occurred) or a condition arising (or alleged to have arisen) before the Effective Date.

(b)     Assignee hereby agrees to indemnify, defend and hold harmless Assignor, its successors and assigns, from and against any and all claims, liabilities, losses, costs, damages and expenses

21

(including reasonable attorneys' fees, charges and expenses in the enforcement of this indemnity) for breach or default on the part of the service provider, contractor, manufacturer or vendor under any Assumed Agreement based on an event occurring (or alleged to have occurred) or a condition arising (or alleged to have arisen) on or after the Effective Date.

4.    **Miscellaneous.**

(a)    All notices and other communications required or permitted under this Assignment shall be given in the same manner as in the Purchase Agreement.

(b)    This Assignment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original for all purposes, and all such counterparts shall together constitute but one and the same instrument. A signed copy of this Assignment delivered by either facsimile or e-mail shall be deemed to have the same legal effect as delivery of an original signed copy of this Assignment.

(c)    This Assignment shall be governed by and construed in accordance with the laws of the State of California without regard to conflict of law rules.

(d)    This Assignment may not be modified or amended in any manner other than by a written agreement signed by the party to be charged.

(e)    Assignor shall promptly execute and deliver to Assignee any additional instrument or other document which Assignee reasonably requests to evidence or better effect the assignment contained herein.

(f)    This Assignment and the obligations of the parties hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the Effective Date.

**LENDER:**                                              **BORROWER:**

**Grimm Investments, LLC,**                  **New Holland LLC,**
a California limited liability company       a California limited liability company

Exhibit – Do Not Sign _____      Exhibit – Do Not Sign _____
By: Rick Grimm                                        By: Patrick Kealy
Its: Manager                                            Its: Manager

                                                            **8th Street MB LLC,**
                                                            a Delaware limited liability company

                                                            **By: Kealy Construction, LLC,**
                                                            a California limited liability company
                                                            Sole Member of 8th Street MB, LLC

                                                            Exhibit – Do Not Sign _____
                                                            By: Patrick Kealy
                                                            Its: Sole Member

22

## EXHIBIT D
### Form of FIRPTA Certificate

Section 1445 of the Internal Revenue Code provides that a transferee (purchaser) of a US real property interest must withhold tax if the transferor (seller) is a foreign person. To inform the transferee (purchaser) that withholding of tax is not required upon the disposition of a US real property interest by New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company (collectively, "**Sellers**"), Sellers hereby certify the following:

(g)      Sellers each are not a foreign corporation, foreign partnership, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulation);

(h)      Sellers are not a disregarded entity as defined in Treasury Regulation Section 1.1445-2(b)(2)(iii);

(i)      Sellers' US employer identification numbers are _____; and

(j)      Sellers' office address is: 936 Monterey Blvd., Hermosa Beach, CA 90254.

Sellers understand that this certification may be disclosed to the Internal Revenue Service by the transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury, Sellers declare that it has examined this certification and to the best of Sellers' knowledge and belief it is true, correct and complete, and the undersigned further declares that it has authority to sign this document as the Manager and sole Member of the Sellers, respectively.

Dated: March 22, 2021

**New Holland LLC,**
a California limited liability company

Exhibit – Do Not Sign
_____
By: Patrick Kealy
Its: Manager

**8th Street MB LLC,**
a Delaware limited liability company

**By: Kealy Construction, LLC,**
a California limited liability company
Sole Member of 8th Street MB, LLC

Exhibit – Do Not Sign
_____
By: Patrick Kealy
Its: Sole Member

23

**EXHIBIT E**
**Required Lien Waivers**

24

EXHIBIT F
Form of Mutual Release

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, New Holland LLC, a California limited liability company and 8th Street MB LLC, a Delaware limited liability company having an address at 936 Monterey Blvd., Hermosa Beach, CA 90254 (individually and collectively referred and jointly and severally obligated as "**Borrower**"), Patrick Kealy, an individual ("**Guarantor**"), and Grimm Investments, LLC, a California limited liability company ("**Lender**", together with Borrower and Guarantor, the "**Parties**" and each a "**Party**"), hereby agree as follows:

1.  In consideration of the covenants, agreements, and undertakings of the Parties under Deed in Lieu of Foreclosure Agreement dated as of December 22, 2020 executed by Borrower, Guarantor and Lender ("**Agreement**"), each Party, on behalf of itself and its respective past and present affiliates, and the respective past and present members, managers, officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and each and all of their respective predecessors, successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (collectively, "**Releasing Parties**", and each such reference shall refer jointly and severally to a Party and such other persons and entities) hereby releases, waives, and forever discharges the other Party and its respective past and present affiliates, and the respective past and present members, managers, officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and each and all of their respective predecessors, successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (collectively, "**Released Parties**", and each such reference shall refer jointly and severally to a Party and such other persons and entities) of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length (collectively a "**Claim**" or the "**Claims**") which any of such Releasors ever had, now have, or hereafter can, shall, or may have against any of such Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of this Release arising out of or relating to the Agreement, except for any surviving obligations under the Agreement.

2.  The Parties each irrevocably covenant and agree that they shall forever refrain from initiating, filing, instituting, maintaining, or proceeding upon, or encouraging, advising or voluntarily assisting any other person or entity to initiate, institute, maintain or proceed upon any Claim of any nature whatsoever released in Section 1 above.

3.  The Parties each represent and warrant that they are the owners of and have not assigned, sold, transferred, or otherwise disposed of any of the Claims released in Section 1 above.

4.  The Parties each represent and warrant that they have the authority and capacity to execute this Release.

5.  As further consideration for this Release, each Party, for itself, its successors and its assigns, hereby agrees, represents, and warrants that the matters released herein are not limited to matters that are known or disclosed, and each Party hereby waives any and all rights and benefits that it now has, or in the future may have, conferred upon it by virtue of any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Section 1542 of the Civil Code of the State of California, which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

25

EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH RELEASED PARTY.

EACH PARTY ASSUMES THE RISK OF ANY AND ALL UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES AND OBLIGATIONS WHICH ARE RELEASED BY THIS RELEASE IN FAVOR OF THE RELEASED PARTIES, AND RELEASING PARTIES EACH HEREBY EXPRESSLY, UNCONDITIONALLY AND IRREVOCABLY WAIVE AND RELEASE ALL RIGHTS AND BENEFITS WHICH IT, HE OR SHE MIGHT OTHERWISE HAVE WITH REGARD TO THE RELEASE OF THE RELEASED PARTIES SUCH UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES AND OBLIGATIONS. TO THE EXTENT (IF ANY) SUCH LAWS MAY BE APPLICABLE, RELEASING PARTIES EXPRESSLY, UNCONDITIONALLY AND IRREVOCABLY WAIVE AND RELEASE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT OR DEFENSE WHICH IT, HE OR SHE MIGHT OTHERWISE HAVE UNDER ANY OTHER LAW OR ANY APPLICABLE JURISDICTION, WHICH MIGHT LIMIT OR RESTRICT THE EFFECTIVENESS OR SCOPE OF ANY WAIVERS OR RELEASES UNDER THIS RELEASE.

6.   It is understood and agreed that the acceptance of delivery of this Release by the Released Parties shall not be deemed or construed as an admission of liability by any Released Parties, and each such party hereby expressly denies liability of any nature whatsoever arising from or related to the subject of this Release.

7.   Each Party hereby agrees, represents, and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Release, that it has read this Release or has had the same read to them by its counsel, that it has had this Release fully explained by such counsel, and that it is fully aware of its content and legal effect. This Release may be pleaded as a full and complete defense to or be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Release. Borrower expressly agrees that the customary rule of contract interpretation to the effect that ambiguities are to be construed or resolved against the drafting party shall not be employed in the interpretation or construction of this Release.

8.   In the event an action is brought arising out of an alleged breach of this Release, the prevailing party in said action will be entitled to recover from the breaching party, in addition to any other relief provided by the law, such costs and expenses as may be incurred by the prevailing party, including court costs and reasonable attorneys' fees and disbursements and other reasonable costs and expenses.

9.   This Release will be binding upon and for the benefit of the parties hereto and their respective successors, heirs, devisees, executors, affiliates, representatives, assigns, officers, agents, and employees wherever the context requires or admits (but shall in no event extend to any owner of the Property of any part thereof).

10.  This Release is governed by and shall be construed under the laws of the State of California.

11.  This Release may be executed by facsimile or other electronic means, and in any number of counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

12.  Initially capitalized terms not defined herein shall have the meaning ascribed to such terms in that certain Deed in Lieu of Foreclosure Agreement dated as of December 22, 2020 executed by Borrower, Guarantor and Lender.

*[Signatures follow on next page]*

26

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1114 State Street, Suite 200, Santa Barbara, CA 93101

A true and correct copy of the foregoing document entitled (*specify*):

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11
U.S.C. § 362 (with supporting declarations)
(REAL PROPERTY)**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
10/27/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
- **William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com**
- **Michael Jay Berger    michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/28/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
will be completed no later than 24 hours after the document is filed.
Honorable Barry Russell
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

Spiegel & Utrera, P.A.
9 East Loockerman St. Ste 202
Dover, DE 19901
(8th Street MB, LLC agent for service of process)

And see attached list

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____ , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/28/2021 | William C. Beall | *William C. Beall* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case Number:  2:21-bk-16454-BR

New Holland, LLC
936 Monterey Blvd
Hermosa Beach, CA 90254-4207

8th Street MB LLC
936 Monterey Blvd.
Hermosa Beach, CA 90254-4207

Franchise Tax Board
Bankruptcy Section, MS: A-340
P O Box 2952
Sacramento, CA 95812-2952

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

LADWP
PO Box 30808
Los Angeles, CA 90030-0808

LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
ATTN BANKRUPTCY UNIT|PO BOX 54110
LOS ANGELES CA 90054-0110

So Cal Gas
PO Box C
Monterey Park, CA 91754-0932

Spectrum
PO Box 60074
City of Industry, CA 91716-0074

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Michael Jay Berger
9454 Wilshire Blvd
6th Floor
Beverly Hills, CA 90212-2937