1  MICHAEL JAY BERGER (SBN 100291)
   Law Offices of Michael Jay Berger
2  9454 Wilshire Blvd., 6th Floor
   Beverly Hills, CA 90212
3  Telephone: (310) 271-6223
   Fax: (310) 271-9805
4  Email: Michael.Berger@bankruptcypower.com

5  *Attorneys for Debtor*
   New Holland, LLC

6

7                    UNITED STATES BANKRUPTCY COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                        LOS ANGELES DIVISION

10

11  In re:                              )  Case No.:  2:21-bk-16454-BR
                                        )
12                                      )  Chapter 11
                New Holland, LLC,       )
13                                      )  **DEBTOR'S MOTION FOR ORDER**
                                        )  **APPROVING THE ADEQUACY OF THE**
14                                      )  **DISCLOSURE STATEMENT;**
                                        )  **MEMORANDUM OF POINTS AND**
15                                      )  **AUTHORITIES; DECLARATIONS OF**
         Debtors and Debtors-in-Possession. )  **PATRICK KEALY AND MICHAEL JAY**
16                                      )  **BERGER IN SUPPORT THEREOF**
                                        )
17                                      )  *Hearing on Motion to Approve the Adequacy*
                                        )  *of the Disclosure Statement*
18                                      )  Date:     January 11, 2022
                                        )  Time:     10:00 a.m.
19                                      )  Ctrm:     1668
                                        )  United States Bankruptcy Court
20                                      )  255 East Temple Street, 16th Floor
                                        )  Los Angeles, CA 90012
21                                      )
                                        )
22  _____)

23      **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

24  **JUDGE, TO THE UNITED STATES TRUSTEE AND ITS COUNSEL OF RECORD,**

25  **AND TO ALL INTERESTED PARTIES:**

26

27

28                                      1

   DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

PLEASE TAKE NOTICE that on January 11, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1668 of the above-entitled Bankruptcy Court located at 255 East Temple Street, Los Angeles, CA 90012, New Holland, LLC, the Debtor in the above-captioned Chapter 11 case (the "Debtor"), shall, and does hereby, move the Court for an order approving the adequacy of its Disclosure Statement ("Motion To Approve DS").  The Motion to Approve DS is being served on the United States Trustee as required by FRBP 9034(h).

At the hearing on the Motion to Approve DS, the Court will consider and act upon the following:

1. The adequacy of the information contained in the Disclosure Statement and any objections or modifications thereto;

2. The fixing of a date for the mailing of the Plan and the Disclosure Statement to all creditors holding allowed claims and to interest holders;

3. The fixing of a date for the hearing on confirmation of the Plan;

4. The fixing of a time within which the holders of allowed claims or interests may vote to accept or reject the Plan; and

5. The fixing of a time within which the holders of claims or interests may file objections to confirmation of the Plan.

The Debtor's Disclosure Statement and Plan of Reorganization were filed on October 13, 2021 as docket entry #s 34 (as amended by docket entry no.: 36 on October 14, 2021) and 35 respectively and are attached hereto as **Exhibits "A" and "B."**

PLEASE TAKE FURTHER NOTICE that the Motion to Approve DS is being heard on 42 days notice pursuant to LBR 3017-1. All claimants and parties in interest may file a response to the Motion to Approve DS. If you wish to oppose the Motion to Approve DS, you must file and serve a written response no later than 14 days before the hearing and appear at the hearing. When serving a response, serve it on the Debtor's attorneys at the address set forth in the upper left-hand corner of the first page of this document. If you fail to file a written response or fail to

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion to Approve DS and may grant the Motion to Approve DS.

Any opposition must set forth the name of the party, the nature and amount of any claim or interest held or asserted against the bankruptcy estate or its property, the basis for the opposition and the specific grounds therefore, and in the event any opposition relates to the content of the Disclosure Statement, such opposition must include, where appropriate, suggested language to amend the Disclosure Statement in a manner that would resolve such opposition. Oppositions not filed and served as set forth above may be deemed waived.

For further information concerning the Disclosure Statement, you may contact the attorneys for Debtor.

WHEREFORE, the Debtor respectfully requests that the Court enter an order finding that the Debtor's Disclosure Statement contains adequate information, setting a hearing for confirmation of the Debtor's Plan of Reorganization, and granting such other relief as the Court deems appropriate.

Dated: November 30, 2021          LAW OFFICES OF MICHAEL JAY BERGER

By:          /s/ Michael Jay Berger
          Michael Jay Berger
          Attorney for Debtor
          New Holland, LLC

3

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

1

## I.  <u>INTRODUCTION</u>

2

Debtor, New Holland, LLC (the "<u>Debtor</u>") filed its voluntary Chapter 11 Bankruptcy

3

4
Petition on August 13, 2021.  Debtor is operating and managing its financial affairs as Debtor-in-

Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5

6
## II.  <u>FACTS AND PROCEDURAL HISTORY</u>

7
### A.  The Chapter 11 Filing and Assets and Liabilities of the Case

8

This is the Debtor's first bankruptcy filing.  The Debtor is not a small business case as

9

10
defined in 11 U.S.C. Section 101(51D). Debtor is a single asset real estate case as defined in 11

U.S.C. Section 101(51B).

11

12
Debtor, jointly with 8th Street MB LLC, holds an interest in real property located at

13
13511 Mulholland Drive, Beverly Hills, CA 90210 with a present fair market value of

14
$8,700,000 ("<u>Mulholland Property</u>") and 7 vacant lots with an estimated fair market value of

15
$26,000,000 ("<u>Vacant Lots</u>").  The Mulholland Property was purchased in March 2018 and

16
includes 5 bedrooms and 4 bathrooms. The Vacant Lots are approximately 26 acres. The

17
Mulholland Property and the Vacant Lots are secured by a first position deed of trust in favor of

18
Grimm Investments for an estimated claim amount of $6,364,166.66.[1]  There is also a second

19
position deed of trust on the Mulholland Property and the Vacant Lots in favor of Grimm

20
Investments for an estimated claim amount of $2,000,000, which is cross-collateralized by real

21
property owned by Rosamond 5 Properties LLC, which is owned by Debtor's principal, Patrick

22

23
R. Kealy.  The Mulholland Property and the Vacant Lots are also encumbered by unpaid

24
property taxes for an estimated claim amount of $1,207,454.96 [POC #1].

25

26
---
[1] Grimm Investments LLC has not filed any claims yet in the case.  Debtor will obtain the payoffs from
Grimm Investments LLC through the escrow.

27

28

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

Debtor does not have any priority unsecured claims, and the general unsecured claim

have an aggregate total claim balance of $6,797.38.

The loans in favor of Grimm Investments have already matured. The event precipitating

the filing of the present bankruptcy case was the pending foreclosure sale initiated by Grimm

Investments. Debtor has no other assets besides the Mulholland Property and the Vacant Lots.

The Debtor has no avoidance actions in this case.

A true and correct list of the property of the estate and the valuation as of the Plan

Confirmation Date is attached to Debtor's Disclosure Statement as Exhibit A.

A true and correct projected Income and Expense Statement along with the October 11

Letter from Venture Capital Partners LLC and October 12, 2021 Letter from Capital2Market are

attached to Debtor's Disclosure Statement as Exhibit B.

Debtor's administrative expense claims include the fees and costs incurred by Debtor's

bankruptcy counsel (subject to Court's approval) and the United States Trustee's quarterly fees.

A true and correct list of administrative expenses claims is attached to Debtor's Disclosure

Statement as Exhibit C.

Debtor has three secured creditors: Los Angeles County Tax Collector and Grimm

Investments, LLC holding a first and second position deeds of trust. A true and correct list of the

secured creditors is attached to Debtor's Disclosure Statement as Exhibit G.

Debtor does not have any priority unsecured creditors.

Debtor's general unsecured creditors hold claims with an estimated aggregate amount of

$6,797.38. A true and correct list of the unsecured nonpriority general creditors is attached to

Debtor's Disclosure Statement as Exhibit D.

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

Patrick R. Kealy is the only member and 100% equity interest holder of the Debtor. A true and correct list of the equity interest holders is attached to Debtor's Disclosure Statement as <u>Exhibit-E.</u>

A true and correct list of the unexpired leases and executory contracts is attached to Debtor's Disclosure Statement as <u>Exhibit-F.</u>

The liquidation analysis for Debtor's assets to show what the general unsecured creditors would receive in a chapter 7 liquidation scenario is attached to Debtor's Disclosure Statement as <u>Exhibit-H.</u>

The Mulholland Property and Vacant Lots are the Debtor's primary assets. These assets are well managed and have substantial equity to pay off all obligations in full, both secured and unsecured.   True and correct copies of the appraisal reports for the Vacant Lots are attached to Debtor's Disclosure Statement as <u>Exhibit-I.</u>

**B.  Summary of the Plan**

The following is a detailed description and treatment of all of the expenses, claims and interests in Debtor's proposed Plan of Reorganization:

(a).    <u>Administrative Expenses</u>

<u>Administrative Expense #1.</u>

Claimant: <u>Law Offices of Michael Jay Berger (court approved counsel)</u>

$ <u>30,000.00    </u>, subject to court approval. To be paid on the Effective Date, unless agreed otherwise between the Debtor and its counsel.

<u>Administrative Expense #2.</u>

Claimant: Office of the U. S. Trustee

<u>$250.00</u> (estimated quarterly fee)

TOTAL $ <u>30,250.00</u>.

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

(b).   **CLASSIFIED CLAIMS**

**1.**   **Classes of Secured Claims (Class 1)**

**CLASS 1(A)**

Claim/Collateral:  Los Angeles County Treasurer and Tax Collector ("LACT") with a

$1,207,454.96 claim secured by the Mulholland Property and Vacant Lots [POC #1].

Impaired/Not Impaired: Impaired.

Treatment: The claim of LACT will be paid in full through the plan at the applicable 18%

interest rate through either the refinancing or the sale of the Mulholland Property and/or Vacant

Lots.

**CLASS 1(B)**

Claim/Collateral**:** Grimm Investments, LLC has a claim secured by a first position deed of trust

in the amount of approximately $6,364,166.66 ("Grimm Loan #1") as of the Petition date.

Impaired/Not Impaired: Impaired.

Treatment:  Debtor intends to pay off Grimm Loan #1 through the refinancing or sale of the

Mulholland Property and/or Vacant Lots.

**CLASS 1(C)**

Claim/Collateral: Grimm Investments, LLC ("Grimm Loan #2") has a claim secured by a second

position deed of trust with an estimated claim amount of $2,000,000.00 as of the Petition date.

Grimm Loan #2 is cross-collateralized by another real property owned by Rosamond 5

Properties LLC, which is an entity owned and controlled by Debtor's principal, Patrick R. Kealy.

**Impaired/Not Impaired:** Impaired.

**Treatment:**  Debtor intends to pay off Grimm Loan #2 through the refinancing or sale of the

Mulholland Property and/or Vacant Lots.  A true and correct list of Debtor's secured creditors is

attached to the Disclosure Statement as Exhibit-G.

**2.**   **Classes of Priority Unsecured Claims**

Debtor does not have any classes of priority unsecured claims.

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

**3.     Classes of General Unsecured Claims (Class 2)**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a).  In the present case, the Debtor estimates that there are approximately $6,797.38 in general unsecured debts.

**Treatment**:  Holders of General Unsecured Claims will receive 100% of their claims upon the Debtor obtaining the funds through either the refinancing or sale of the Mulholland Property and/or Vacant Lots.  A true and correct list of Debtor's general unsecured creditors is attached to the Disclosure Statement as Exhibit-D.

**4.     Interest Holders (Class 3)**

Debtor's interest holder is Patrick R. Kealy who is the Debtor's Managing Member and 100% shareholder.  Mr. Kealy is not a creditor of the Debtor and will retain his equity interest in the Debtor.  A true and correct list of the equity interests is attached to Debtor's Disclosure Statement as Exhibit-E.

**III.     THE PROPOSED DISCLOSURE STATEMENT CONTAINS SUFFICIENT INFORMATION TO PERMIT CREDITORS OF THE ESTATE TO MAKE AN INFORMED VOTE ON THE PLAN OF REORGANIZATION**

Pursuant to 11 U.S.C. 1125, no proponent of a Plan of Reorganization may seek its approval until there has been transmitted to the creditors a Disclosure Statement approved by the Court as containing sufficient information to permit the creditors to make an informed decision regarding whether to vote for or against the Plan.

The Disclosure Statement and Plan of Reorganization attached hereto as **Exhibits "A" and "B"** contain all of the information required to permit creditors to determine how to vote.[2]  It divides creditors into classes and provides for the treatment of each.

---

[2] **Secured Creditor Grimm Investments, LLC filed Comments Re Disclosure Statement on October 28, 2021 [docket no.: 47].  As of November 30, 2021, Debtor's Counsel has not received the responses and supporting documents from Debtor's principal in order to address Grimm's comments. Debtor's Counsel is expecting to receive updates and supporting documents from Debtor's principal on or before December 10, 2021, and will then file supplemental pleading in support of Debtor's Disclosure Statement and in response to Grimm's comments.**

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

1

2

### III.  <u>CONCLUSION</u>

3       The Debtor respectfully requests that the Court enter an order approving the Disclosure

4  Statement as containing adequate information, and granting such other relief as is appropriate.

5

6       Dated: November 30, 2021       LAW OFFICES OF MICHAEL JAY BERGER

7

                     By:            /s/ Michael Jay Berger
8                                   Michael Jay Berger
                                    Attorneys for Debtor
9                                   New Holland, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                        9
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF PATRICK KEALY

I, Patrick Kealy, declare as follows:

1.       I am the owner and Managing Member of the Debtor and Debtor-In-Possession, New Holland, LLC.  I am over the age of eighteen.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.       Debtor, New Holland, LLC (the "Debtor") filed its voluntary Chapter 11 Bankruptcy Petition on August 13, 2021.

3.       Debtor, jointly with 8th Street MB LLC, holds an interest in real property located at 13511 Mulholland Drive, Beverly Hills, CA 90210 with a present fair market value of $8,700,000 ("Mulholland Property") and 7 vacant lots with an estimated fair market value of $26,000,000 ("Vacant Lots").  The Mulholland Property was purchased in March 2018 and includes 5 bedrooms and 4 bathrooms. The Vacant Lots are approximately 26 acres. The Mulholland Property and the Vacant Lots are secured by a first position deed of trust in favor of Grimm Investments for an estimated claim amount of $6,364,166.66.[3]  There is also a second position deed of trust on the Mulholland Property and the Vacant Lots in favor of Grimm Investments for an estimated claim amount of $2,000,000, which is cross-collateralized by real property owned by Rosamond 5 Properties LLC, which is owned by Debtor's principal, Patrick R. Kealy.  The Mulholland Property and the Vacant Lots are also encumbered by unpaid property taxes for an estimated claim amount of $1,207,454.96 [POC #1].

4.       Debtor does not have any priority unsecured claims, and the general unsecured claim have an aggregate total claim balance of $6,797.38.

5.       The loans in favor of Grimm Investments have already matured. The event precipitating the filing of the present bankruptcy case was the pending foreclosure sale initiated

---

[3] Grimm Investments LLC has not filed any claims yet in the case.  Debtor will obtain the payoffs from Grimm Investments LLC through the escrow.

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

by Grimm Investments. Debtor has no other assets besides the Mulholland Property and the Vacant Lots.

6.      The Debtor has no avoidance actions in this case.

7.      A true and correct list of the property of the estate and the valuation as of the Plan Confirmation Date is attached to Debtor's Disclosure Statement as <u>Exhibit A</u>.

8.      A true and correct projected Income and Expense Statement along with the October 11 Letter from Venture Capital Partners LLC and October 12, 2021 Letter from Capital2Market are attached to Debtor's Disclosure Statement as <u>Exhibit B</u>.

9.      Debtor's administrative expense claims include the fees and costs incurred by Debtor's bankruptcy counsel (subject to Court's approval) and the United States Trustee's quarterly fees. A true and correct list of administrative expenses claims is attached to Debtor's Disclosure Statement as <u>Exhibit C</u>.

10.     Debtor has three secured creditors: Los Angeles County Tax Collector and Grimm Investments, LLC holding a first and second position deeds of trust. A true and correct list of the secured creditors is attached to Debtor's Disclosure Statement as <u>Exhibit G</u>.

11.     Debtor does not have any priority unsecured creditors.

12.     Debtor's general unsecured creditors hold claims with an estimated aggregate amount of $6,797.38. A true and correct list of the unsecured nonpriority general creditors is attached to Debtor's Disclosure Statement as <u>Exhibit D</u>.

13.     I am the only member and 100% equity interest holder of the Debtor. A true and correct list of the equity interest holders is attached to Debtor's Disclosure Statement as <u>Exhibit-E.</u>

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

14.     A true and correct list of the unexpired leases and executory contracts is attached

to Debtor's Disclosure Statement as Exhibit-F.

15.     The liquidation analysis for Debtor's assets to show what the general unsecured

creditors would receive in a chapter 7 liquidation scenario is attached to Debtor's Disclosure

Statement as Exhibit-H.

16.     The Mulholland Property and Vacant Lots are the Debtor's primary assets. These

assets are well managed and have substantial equity to pay off all obligations in full, both

secured and unsecured.   True and correct copies of the appraisal reports for the Vacant Lots are

attached to Debtor's Disclosure Statement as Exhibit-I.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this November 30, 2021 at Hermosa Beach, California.

Patrick Kealy

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

1

# DECLARATION OF MICHAEL JAY BERGER

2      I, Michael Jay Berger, hereby declare and state as follows:

3      1.      I am an attorney at law licensed in the State of California and authorized to

4  practice before the Federal Courts in the Central District of California, and before this Court.  I

5  am over the age of eighteen (18).  I have personal knowledge of the facts set forth herein, and, if

6  called as a witness, I could and would testify competently with respect thereto. Where facts are

7  alleged upon information and belief, I believe them to be true.  I am counsel for the Debtors,

8  John Michael Wilcox and Gwenn Ellen Wilcox.

9      2.      True and correct copies of the Debtor's Disclosure Statement and Plan of

10  Reorganization are attached hereto as Exhibits "A" and "B."

11      3.      Secured Creditor Grimm Investments, LLC filed Comments Re Disclosure

12  Statement on October 28, 2021 [docket no.: 47].

13      4.      On November 9, 2021, I appeared at the preliminary hearing on the adequacy of

14  Debtor's Disclosure Statement.  The Court instructed Debtor to file a Motion to Approve the

15  Adequacy of Debtor's Disclosure Statement and respond to Grimm Investment, LLC's

16  comments.

17      5.      As of November 30, 2021, I have not received the responses and supporting

18  documents from Debtor's principal in order to address Grimm's comments. I am expecting to

19  receive updates and supporting documents from Debtor's principal, Patrick Kealy, on or before

20  December 10, 2021, and will then file supplemental pleading in support of Debtor's Disclosure

21  Statement and in response to Grimm's comments.

22      I declare under penalty of perjury under the laws of the United States of America that the

23  foregoing is true and correct.

24      Executed on this November 30, 2021 at Beverly Hills, California.

25

26                          /s/ Michael Jay Berger
                          Michael Jay Berger

27

28                          13

DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

# EXHIBIT A

MICHAEL JAY BERGER (State Bar # 100291)
**LAW OFFICES OF MICHAEL JAY BERGER**
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:    (310) 271-9805
Email: Michael.Berger@bankruptcypower.com

Attorney for Debtor and Plan Proponent
New Holland, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br><br><br><br>New Holland, LLC<br><br><br><br>Debtor. | CASE NO.: 2:21-bk-16454-BR<br><br>Chapter 11<br><br>**DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF PATRICK R. KEALY IN SUPPORT THEREOF**<br><br>Hearing on Adequacy of Disclosure Statement<br><br>Date:    November 9, 2021<br>Time:    10:00 a.m.<br>Ctrm:    1668<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

///

///

///

///

///

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## Table of Contents

I.    INTRODUCTION .......................................................................................... 5

  A.    PURPOSE OF THIS DOCUMENT ..................................................................... 5

  B.    DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN
  CONFIRMATION HEARING .................................................................................. 6

    1.    TIME AND PLACE OF THE CONFIRMATION HEARING .............................. 7

    2.    DEADLINE FOR VOTING FOR OR AGAINST THE PLAN ............................. 7

    3.    DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN ........ 7

    4.    IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION
    REGARDING THE PLAN ..................................................................................... 7

  C.    DISCLAIMER ............................................................................................. 7

  D.    SOURCE OF THE INFORMATION CONTAINED IN THE DISCLOSURE
  STATEMENT ........................................................................................................ 8

  E.    THE ACCOUNTING METHOD USED TO PRODUCE FINANCIAL
  INFORMATION AND THE IDENTITY OF THE ACCOUNTANT(S) OR OTHERS
  RESPONSIBLE FOR SUCH INFORMATION ............................................................ 8

II.    BACKGROUND ........................................................................................... 8

  A.    DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS ..................... 8

  B.    PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS ................................. 10

  C.    MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE
  BANKRUPTCY .................................................................................................. 10

  D.    RELATIONSHIP OF THE DEBTOR WITH AFFILIATES, SUBSIDIARIES,
  MERGER OR ACQUISITION INTERESTS, PLAN PROPONENTS ......................... 10

  E.    EVENTS LEADING TO THE CHAPTER 11 FILING ..................................... 11

  F.    SIGNIFICANT EVENTS .............................................................................. 11

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

1.    *Bankruptcy Proceedings* ............................................................. 11

5.    *Collectability of Accounts Receivable, Counter Claims, Etc.* ...................... 12

6.    *Procedures Implemented to Resolve Financial Problems* ..................... 13

7.    *Current and Historical Financial Conditions* ......................... 14

8.    *Anticipated Future of the Company* ........................ 14

**III.  SUMMARY OF THE** ......................... 15

**PLAN OF REORGANIZATION** ......................... 15

**A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan** ..... 15

**B.  UNCLASSIFIED CLAIMS** ......................... 15

*1.  ADMINISTRATIVE EXPENSES* ......................... 15

*2.  PRIORITY TAX CLAIMS* ......................... 16

**C.  CLASSIFIED CLAIMS** ......................... 17

**1.  Classes of Secured Claims (Class 1)** ......................... 17

**2.  Classes of Priority Unsecured Claims** ......................... 18

**D.  MEANS OF EFFECTUATING THE PLAN** ......................... 18

1.  *Funding for the Plan* ......................... 18

2.  *Post-Confirmation Management* ......................... 20

3.  *Disbursing Agent* ......................... 20

**E.  RISK FACTORS** ......................... 20

**F.  OTHER PROVISIONS OF THE PLAN** ......................... 21

1.  EXECUTORY CONTACTS AND UNEXPIRED LEASES ......................... 21

a.  *Assumptions* ......................... 21

b.  *Rejections* ......................... 21

3

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

G.  TAX CONSEQUENCES OF THE PLAN ........................................................... 21

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES ............................ 22

  A.  WHO MAY VOTE OR OBJECT ........................................................ 22

    1.  *Who May Object to Confirmation of the Plan* ........................................ 22

    2.  *Who May Vote to Accept or Reject the Plan* ......................................... 22

    a.  *What is an Allowed Claim/Interest* .................................................... 22

    b.  *What is an Impaired Claim/Interest* .................................................. 23

    3.  *Who is Not Entitled to Vote* ............................................................ 23

    4.  *Who Can Vote in More Than One Class* ............................................... 24

    5.  *Votes Necessary to Confirm the Plan* .................................................. 24

    6.  *Votes Necessary for a Class to Accept the Plan* ..................................... 24

    7.  *Treatment of Non-Accepting Classes* .................................................. 24

    8.  *Request for Confirmation Despite Non-Acceptance by Impaired Classes* ............... 25

  B.  LIQUIDATION ANALYSIS ............................................................. 26

  C.  FEASIBILITY ............................................................................. 27

V.  EFFECT OF CONFIRMATION OF PLAN .......................................... 28

  A.  DISCHARGE ............................................................................... 28

  B.  REVESTING OF PROPERTY IN THE DEBTOR .................................. 28

  C.  MODIFICATION OF THE PLAN ...................................................... 28

  D.  POST-CONFIRMATION STATUS REPORT ...................................... 28

  E.  QUARTERLY FEES ...................................................................... 29

  F.  POST-CONFIRMATION CONVERSION/DISMISSAL ......................... 29

  G.  FINAL DECREE ........................................................................... 29

4

## I.   INTRODUCTION

Debtor, New Holland, LLC, is a California Limited Liability Company (the "Debtor"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on August 13, 2021.  It is hereinafter referred to as the "Debtor." This document is the Disclosure Statement in Support of Chapter 11 Plan of Reorganization (the "Disclosure Statement"). Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a Chapter 11 Plan of Reorganization. The Plan may provide for the Debtor to reorganize by continuing to operate.  Debtor is the proponent (the "Proponent") of the Chapter 11 Plan of Reorganization (the "Plan") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this is a reorganizing plan that provides for payment to holders of allowed claims over time. The timing of plan payments to particular creditor groups will depend upon their classification under the Plan. *The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.*

### A.  PURPOSE OF THIS DOCUMENT

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

## READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

### (1) WHO CAN VOTE OR OBJECT;

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

(4) **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

(5) **WHAT IS THE EFFECT OF CONFIRMATION;**

(6) **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own legal counsel to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires the Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

B. **DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

6

1. **<u>TIME AND PLACE OF THE CONFIRMATION HEARING</u>**

The hearing where the Court will determine whether or not to confirm the Plan will take place on **TBD** in Courtroom 1668 of the United States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, CA 90012.

2. **<u>DEADLINE FOR VOTING FOR OR AGAINST THE PLAN</u>**

The Court has not yet set the deadline for voting for or against the plan.

3. **<u>DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN</u>**

Objections to the confirmation of the Plan must be filed with the Court and served so that any objections are actually received by counsel for the Debtor by **TBD.**

4. **<u>IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION REGARDING THE PLAN</u>**

Any interested party desiring further information about the Plan should contact counsel for the Debtor: Michael Jay Berger or Sofya Davtyan, with the Law Offices of Michael Jay Berger, 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212, Telephone: (310) 271-6223, or by electronic mail at Michael.Berger@bankruptcypower.com or Sofya.Davtyan@bankruptcypower.com.

C. **<u>DISCLAIMER</u>**

The information relied upon by the Debtor in formulating the Plan is based on the Debtor's plan to refinance and/or sell some or all of its properties to pay off the creditors in full. The Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge. The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

***No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.*** Nothing contained in such documents constitutes an admission of any fact or

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

**D.  SOURCE OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT**

The source of the information contained in the disclosure statement is provided by the Debtor's principal, Patrick R. Kealy.

**E.  THE ACCOUNTING METHOD USED TO PRODUCE FINANCIAL INFORMATION AND THE IDENTITY OF THE ACCOUNTANT(S) OR OTHERS RESPONSIBLE FOR SUCH INFORMATION**

The Debtor's Plan is dependent on the sale or the refinance/redevelopment of some or all of the properties.  As such, the Debtor is not relying on any accounting method in support of its Plan.

## II.    BACKGROUND

**A.  DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS**

On August 13, 2021, New Holland, LLC ("Debtor"), debtor and debtor-in-possession herein, filed the instant voluntary Chapter 11 Bankruptcy ("Instant Bankruptcy"). Debtor, jointly with 8th Street MB LLC, holds an interest in real property located at 13511 Mulholland Drive, Beverly Hills, CA 90210 with a present fair market value of $8,700,000 ("Mulholland Property") and 7 vacant lots with an estimated fair market value of $26,000,000 ("Vacant Lots").  The Mulholland Property was purchased in March 2018 and includes 5 bedrooms and 4 bathrooms. The Vacant Lots are approximately 26 acres. The Mulholland Property and the Vacant Lots are secured by a first position deed of trust in favor of Grimm Investments for an estimated claim amount of $6,364,166.66.[1]  There is also a second position deed of trust on the Mulholland Property and the Vacant Lots in favor of Grimm Investments for an estimated claim amount of $2,000,000, which is cross-collateralized by real property owned by Rosamond 5 Properties LLC, which is owned by Debtor's principal, Patrick R. Kealy.  The Mulholland Property and the

---

[1] Grimm Investments LLC has not filed any claims yet in the case.  Debtor will obtain the payoffs from Grimm Investments LLC through the escrow.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

1   Vacant Lots are also encumbered by unpaid property taxes for an estimated claim amount of
2   $1,207,454.96 [POC #1].

3       Debtor does not have any priority unsecured claims, and the general unsecured claim
4   have an aggregate total claim balance of $6,797.38.

5       The loans in favor of Grimm Investments have already matured. The event precipitating
6   the filing of the present bankruptcy case was the pending foreclosure sale initiated by Grimm
7   Investments. Debtor has no other assets besides the Mulholland Property and the Vacant Lots.

8       The Debtor has no avoidance actions in this case.

9       A true and correct list of the property of the estate and the valuation as of the Plan
10  Confirmation Date is attached to Patrick R. Kealy ("Kealy's Declaration") as **Exhibit A.**

11      A true and correct projected Income and Expense Statement along with the October 11
12  Letter from Venture Capital Partners LLC and October 12, 2021 Letter from Capital2Market are
13  attached to Kealy's Declaration as **Exhibit B**.

14      Debtor's administrative expense claims include the fees and costs incurred by Debtor's
15  bankruptcy counsel (subject to Court's approval) and the United States Trustee's quarterly fees.
16  A true and correct list of administrative expenses claims is attached to Kealy's Declaration as
17  **Exhibit C.**

18      Debtor has three secured creditors: Los Angeles County Tax Collector and Grimm
19  Investments, LLC holding a first and second position deeds of trust. A true and correct list of the
20  secured creditors is attached to Kealy's Declaration as **Exhibit G.**

21      Debtor does not have any priority unsecured creditors.

22      Debtor's general unsecured creditors hold claims with an estimated aggregate amount of
23  $6,797.38. A true and correct list of the unsecured nonpriority general creditors is attached to
24  Kealy's Declaration as **Exhibit D.**

25      Patrick R. Kealy is the only member and 100% equity interest holder of the Debtor. A
26  true and correct list of the equity interest holders is attached to Kealy's Declaration as **Exhibit-E.**

27      A true and correct list of the unexpired leases and executory contracts is attached to
28  Kealy's Declaration as **Exhibit-F.**

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The liquidation analysis for Debtor's assets to show what the general unsecured creditors would receive in a chapter 7 liquidation scenario is attached to Kealy's Declaration as **Exhibit-H.**

The Mulholland Property and Vacant Lots are the Debtor's primary assets. These assets are well managed and have substantial equity to pay off all obligations in full, both secured and unsecured.  True and correct copies of the appraisal reports for the Vacant Lots are attached to Kealy's Declaration as **Exhibit-I.**

## B.  PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS

The principal of the Debtor is Patrick R. Kealy, who is the President, the managing member and a 100% owner of the Debtor.  8th Street MB LLC is another entity owned and controlled by Mr. Kealy.  The ownership interest of the Vacant Lots and the Mulholland Property is held jointly by the Debtor and 8th Street MB LLC.  Mr. Kealy is also a 100% owner of Rosamond 5 Properties LLC, which is the entity that will be obtaining the financing from Capital2Market in order to satisfy the Debtor's obligations in full.  A true and correct copy of the Business Search Results from the California Secretary of State's website and the Articles of Organization for Rosamond 5 Properties LLC are attached to Kealy's Declaration as **Exhibit-J.**

## C.  MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE BANKRUPTCY

The management of the Debtor has remained the same before and after the bankruptcy filing. Patrick R. Kealy (Debtor's Managing Member) runs the Debtor's business and handles the operation of the business, including the marketing of the properties, the development projects for the properties, the refinancing and/or the sale. The proposed Disclosure Statement and Plan do not modify the rights and ownership interest of Mr. Kealy.

## D.  RELATIONSHIP OF THE DEBTOR WITH AFFILIATES, SUBSIDIARIES, MERGER OR ACQUISITION INTERESTS, PLAN PROPONENTS

Debtor's Principal, Patrick R. Kealy, owns a 100% interest in an entity called 8th Street MB, LLC. 8th Street MB, LLC, jointly with the Debtor, holds an interest in the Vacant Lots and the Mulholland Property. Mr. Kealy is also a 100% owner of Rosamond 5 Properties LLC, which

10

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

is the entity that will be obtaining the financing from Capital2Market in order to satisfy the

Debtor's obligations in full.

## E.  **EVENTS LEADING TO THE CHAPTER 11 FILING**

The event precipitating the filing of the present bankruptcy case was the pending

foreclosure sale initiated by Grimm Investments, LLC.

## F.  **SIGNIFICANT EVENTS**

1.   *Bankruptcy Proceedings*

On August 13, 2021, Debtor filed the instant Chapter 11 bankruptcy case as an

emergency petition to stop the foreclosure sale initiated by Grimm Investments, LLC [docket

no.: 1].

On August 17, 2021, Debtor's counsel served the Order Setting Deadlines For Filing

Chapter 11 Disclosure Statement and Plan of Reorganization, and on August 20, 2020, filed the

Declaration of Peter Garza Re Service of the Order [docket no.: 13].

On August 24, 2021, Debtor filed an Application to Employ Law Offices of Michael Jay

Berger as Debtor's General Bankruptcy Counsel [docket no.: 14; Notice of Opportunity to

Request a Hearing as docket no.: 15].  On September 13, 2021, Debtor filed a Declaration That

No Party Requested a Hearing on Motion [docket no.: 22] and uploaded the order.  On

September 22, 2021, the Court entered an order granting Application to Employ Law Offices as

Debtor's Bankruptcy Counsel [docket no.: 24].

On August 27, 2021, Debtor filed the schedules and the statement of financial affairs with

the court [docket no.: 16].

On September 7, 2021, Grimm Investments, LLC filed a Moton to Determine Case to Be

Single Asset Real Estate [docket no.: 18]. On September 28, 2021, Debtor filed an Opposition to

Motion to Determine Case to Be Single Asset Real Estate [docket no.: 27].  On October 4, 2021,

11

Grimm Investments, LLC filed a Reply [docket no.: 28]. The hearing on the Motion took place on October 12, 2021 at 1:00 p.m. and the Court found the Debtor to be a "single asset real estate."

The initial debtor interview and the meeting of creditors both took place on September 20, 2021.

On September 24, 2021, Debtor filed the August 2021 Monthly Operating Report [docket no.: 25].

Pursuant to this Court's August 16, 2021 Scheduling Order [docket no.: 6], the deadline for Debtor to file its Disclosure Statement and Plan of Reorganization is October 12, 2021. A preliminary hearing to review the adequacy of the Disclosure Statement and Plan of Reorganization is set for November 9, 2021 at 10:00 a.m.

On September 17, 2021, Debtor filed a Motion to Set the Bar Date [docket no.: 23]. The court has not yet set a deadline for filing claims or objections to the claims.

2.    *Other Legal Proceedings*

There are no other legal proceedings pending in front of this or other courts.

3.    Description of the Available Assets and Their Value

Debtor owns seven vacant lots worth approximately $26,000,000.00 based on the prospective appraisal reports completed by general certified real estate appraiser, Charles H. Blaauw on or about May 29, 2021. The Mulholland Property has an estimated current fair market value of $8,700,000.00 (see Schedule A/B).

4.    *Actual and Projected Recovery of Preferential or Fraudulent Transfers*

The Debtor does not have any actual and/or projected recovery of preferential or fraudulent transfers.

5.    *Collectability of Accounts Receivable, Counter Claims, Etc.*

The Debtor does not have any accounts receivable or counter claims.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

6.     *Procedures Implemented to Resolve Financial Problems*

Debtor filed this case in order to save the Mulholland Property and Vacant Lots from foreclosure sale initiated by Grimm Investments, LLC with a plan to either refinance or sell the Mulholland Property and/or Vacant Lots to satisfy all obligation of Debtor's estate, both secured and unsecured, in full.

Option #1: Refinancing with Capital2Market

Debtor's principal, Mr. Kealy, has been working with Capital2Market to obtain financing to pay off the Debtor's obligations in full.  Mr. Kealy owns another entity called Rosamond 5 Properties LLC which owns a 16.4-acre lot in Rosamond, Kern County ("Rosamond Property").  The Rosamond Property will be used as a collateral for Capital2Market's funding.  Capital2Market will loan the funds to Rosamond 5 Properties LLC, and Rosamond 5 Properties LLC will pay off Grimm Loan #1 and Loan #2 in full, as well as the property taxes and Debtor's general unsecured creditors in full.  True and correct details of Capital2Market's proposal are attached to Kealy's Declaration as **Exhibit-B.** Debtor anticipates getting a commitment letter from Capital2Market on or before November 5, 2021 regarding the advance of the initial $8 Million to Rosamond 5 Properties LLC.  If, for some unanticipated reasons, the deal with Capital2Market does not memorialize, Debtor will consider Option #2.

Option #2: Development Project with Venture Capital Partners LLC

On October 11, 2021, Debtor received a Letter of Intent to refinance from Venture Capital Partners LLC ("VCP").  VCP has been reviewing a number of projects, including the development of a multi-lot property on Mulholland Drive, which property (the Mulholland Property and the seven lots) is owned by the Debtor jointly with 8th Street MB LLC.  VCP made the following proposal to the Debtor regarding a development project:

**Investor**: Venture Capital Partners LLC
**Amount and Use**: $34,000,000 to be used for the purchase of the Property for all lots and existing residence.
**Project Manager**: Ocean Grown Organics, Inc. ("OGO")
**Conditions**: Due diligence of the Property, to VCP's satisfaction, showing all easements, CC&Rs, appraisals, soil tests, and any other tests, city

permits, code compliance, engineering documents, architectural
permits, reports, approvals, instruments or records as may be required
to verify the owners' ability to develop the Property in accordance with
OGO's plans, which involve (a) the demolition and re-building of the
existing residence at 13511 Mulholland Dr., and (b) construction of up
to 20 new residencies on adjacent lots described in the definition of the Property.

If Debtor's efforts to obtain the funds through Option #1 fail, Debtor will consider VCP's proposal, and once an agreement is reached, the necessary motion to obtain this Court's approval will be filed.  If Debtor proceeds with Option #2, Debtor anticipates receiving the funds in or about March 2022 to pay off all obligations in full.  True and correct details of VCP's proposal are attached to Kealy's Declaration as **Exhibit-B.**

Option #3: Sale of Debtor's Properties

On or about September 27, 2021, Debtor's principal met with the owner of Yucca Valley Property LLC ("Potential Buyer") for the Vacant Lots and the Mulholland Property.  On September 28, 2021, the Potential Buyer made an offer to purchase the Vacant Lots and the Mulholland Property.  On or about October 8, 2021, Debtor submitted a counter offer to the Potential Buyer.  The negotiations are still ongoing, and if the Potential Buyer agrees to the Debtor's proposed counter offer, the terms will be memorialized in writing and a Sale Motion will be filed with this Court.  The proceeds from the sale will be sufficient to satisfy all of the Debtor's obligations in full.

7.    *Current and Historical Financial Conditions*

Debtor has not generated any income from the properties and does not currently generate any income. The Debtor's Plan is to refinance, develop, or sell all or some of the properties to pay off the obligations of its bankruptcy estate. See Option#1, #2, and #3 above for details.

8.    *Anticipated Future of the Company*

If Debtor proceeds with either Option #1 or Option #2, Debtor intends to demolish and re-build the Mulholland Property and develop multiple new residencies on the Vacant Lots. If Debtor proceeds with Option #3, the Mulholland Property and the Vacant Lots will be sold and

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Debtor may choose to invest the revenue in obtaining new properties for either reselling or development.

### III.    SUMMARY OF THE
### PLAN OF REORGANIZATION

**A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired. The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed.

**B.  UNCLASSIFIED CLAIMS**

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims are not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan:

*1.  ADMINISTRATIVE EXPENSES*

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $30,000.00 (estimated); subject to court approval | To be paid on the Effective Date, subject to Bankruptcy Court's approval. If Debtor does not have sufficient funds in its DIP accounts to pay the awarded fees and costs in full, Debtor's bankruptcy counsel agrees to enter into a payment plan with the Debtor. |
| Clerk's Office Fees | $0.00 (estimated) | Paid when due. |
| Office of the U.S. Trustee | $250.00 min fee; Amount to be determined per quarter | Estimated Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until an order is entered closing the case on interim or final basis, or until the case is dismissed or converted. |

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

### 2. *PRIORITY TAX CLAIMS*

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8). The Code requires that each holder of such a §507(a)(8) priority tax claim receive

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

the present value of such claim in deferred cash payments, over a period not exceeding five (5)

years from the petition date.

Debtor does not have any priority tax claims.

## C. CLASSIFIED CLAIMS

### 1. Classes of Secured Claims (Class 1)

## CLASS 1(A)

Claim/Collateral:  Los Angeles County Treasurer and Tax Collector ("LACT") with a

$1,207,454.96 claim secured by the Mulholland Property and Vacant Lots [POC #1].

Impaired/Not Impaired: Impaired.

Treatment: The claim of LACT will be paid in full through the plan at the applicable 18%

interest rate through either the refinancing or the sale of the Mulholland Property and/or Vacant

Lots.

## CLASS 1(B)

Claim/Collateral: Grimm Investments, LLC has a claim secured by a first position deed of trust

in the amount of approximately $6,364,166.66 ("Grimm Loan #1") as of the Petition date.

Impaired/Not Impaired: Impaired.

Treatment:  Debtor intends to pay off Grimm Loan #1 through the refinancing or sale of the

Mulholland Property and/or Vacant Lots.

## CLASS 1(C)

Claim/Collateral: Grimm Investments, LLC ("Grimm Loan #2") has a claim secured by a second

position deed of trust with an estimated claim amount of $2,000,000.00 as of the Petition date.

Grimm Loan #2 is cross-collateralized by another real property owned by Rosamond 5

Properties LLC, which is an entity owned and controlled by Debtor's principal, Patrick R. Kealy.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor intends to pay off Grimm Loan #2 through the refinancing or sale of the

Mulholland Property and/or Vacant Lots.  A true and correct list of Debtor's secured creditors is

attached to Kealy's Declaration as **Exhibit-G**.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

### 2. Classes of Priority Unsecured Claims

Debtor does not have any classes of priority unsecured claims.

### 3. Classes of General Unsecured Claims (Class 2)

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). In the present case, the Debtor estimates that there are approximately $6,797.38 in general unsecured debts.

**Treatment**: Holders of General Unsecured Claims will receive 100% of their claims upon the Debtor obtaining the funds through either the refinancing or sale of the Mulholland Property and/or Vacant Lots. A true and correct list of Debtor's general unsecured creditors is attached to Kealy's Declaration as **Exhibit-D**.

### 4. Interest Holders (Class 3)

Debtor's interest holder is Patrick R. Kealy who is the Debtor's Managing Member and 100% shareholder. Mr. Kealy is not a creditor of the Debtor and will retain his equity interest in the Debtor. A true and correct list of the equity interests is attached to Kealy's Declaration as **Exhibit-E**.

### D. **MEANS OF EFFECTUATING THE PLAN**

1. *Funding for the Plan*

The Debtor will fund the Plan from the refinancing or sale of some or all of its properties, which includes the seven vacant lots and the Mulholland Property.

Option #1: Refinancing with Capital2Market

Debtor's principal, Mr. Kealy, has been working with Capital2Market to obtain financing to pay off the Debtor's obligations in full. Mr. Kealy owns another entity called Rosamond 5 Properties LLC which owns a 16.4-acre lot in Rosamond, Kern County ("Rosamond Property"). The Rosamond Property will be used as a collateral for Capital2Market's funding. Capital2Market will loan the funds to Rosamond 5 Properties LLC, and Rosamond 5 Properties LLC will pay off Grimm Loan #1 and Loan #2 in full, as well as the property taxes and Debtor's general unsecured creditors in full. The details of Capital2Market's proposal are attached to

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Kealy's Declaration as **Exhibit-B.** Debtor anticipates getting a commitment letter from

Capital2Market on or before November 5, 2021 regarding the advance of the initial $8 Million to

Rosamond 5 Properties LLC.  If, for some unanticipated reasons, the deal with Capital2Market

does not memorialize, Debtor will consider Option #2.

Option #2: Development Project with Venture Capital Partners LLC

On October 11, 2021, Debtor received a Letter of Intent to refinance from Venture

Capital Partners LLC ("VCP"). VCP has been reviewing a number of projects, including the

development of a multi-lot property on Mulholland Drive, which property (the Mulholland

Property and the seven lots) is owned by the Debtor jointly with 8th Street MB LLC.  VCP made

the following proposal to the Debtor regarding a development project:

**Investor**: Venture Capital Partners LLC
**Amount and Use**: $34,000,000 to be used for the purchase of the Property for all lots and
existing residence.
**Project Manager**: Ocean Grown Organics, Inc. ("OGO")
**Conditions**: Due diligence of the Property, to VCP's satisfaction, showing all
easements, CC&Rs, appraisals, soil tests, and any other tests, city
permits, code compliance, engineering documents, architectural
permits, reports, approvals, instruments or records as may be required
to verify the owners' ability to develop the Property in accordance with
OGO's plans, which involve (a) the demolition and re-building of the
existing residence at 13511 Mulholland Dr., and (b) construction of up
to 20 new residencies on adjacent lots described in the definition of the Property.

If Debtor's efforts to obtain the funds through Option #1 fail, Debtor will consider VCP's

proposal, and once an agreement is reached, the necessary motion to obtain this Court's approval

will be filed.  If Debtor proceeds with Option #2, Debtor anticipates receiving the funds in or

about March 2022 to pay off all obligations in full.

Option #3: Sale of Debtor's Properties

On or about September 27, 2021, Debtor's principal met with the owner of Yucca Valley

Property LLC ("Potential Buyer") for the Vacant Lots and the Mulholland Property.  On

September 28, 2021, the Potential Buyer made an offer to purchase the Vacant Lots and the

Mulholland Property.  On or about October 8, 2021, Debtor submitted a counter offer to the

Potential Buyer.   The negotiations are still ongoing, and if the Potential Buyer agrees to the

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Debtor's proposed counter offer, the terms will be memorialized in writing and a Sale Motion will be filed with this Court. The proceeds from the sale will be sufficient to satisfy all of the Debtor's obligations in full.

A true and correct copy of the Debtor's projected income and expense statement with a copy of the October 11, 2021 Letter of Intent sent to Debtor by Venture Capital Partners LLC and October 12, 2021 Offer Letter from Capital2Market is attached to Kealy's Declaration as **Exhibit B.**

2. *Post-Confirmation Management*

Management of the Reorganized Debtor will remain with its Managing Member, Patrick R. Kealy.

Mr. Kealy, as the Principal and Managing Member of the Debtor, handles the business operation, including the marketing, refinancing, and/or the sale. He does not receive any compensation from the Debtor and does not intend to receive any salary from the Debtor post-confirmation.

3. *Disbursing Agent*

Debtor's principal, Patrick R. Kealy, shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. He shall not be compensated for performing these services.

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be re-vested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

**E.  RISK FACTORS**

Since the Plan contemplates payments to creditors either through the refinancing and/or the sale of Debtor's properties, it is possible that the refinancing might be delayed or the sale

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

might take longer than expected to close.  Nonetheless, the Debtor believes that it will be able to meet all of its financial obligations under the Plan, since it is actively working on all three options.

**F.  OTHER PROVISIONS OF THE PLAN**

1. <u>EXECUTORY CONTACTS AND UNEXPIRED LEASES</u>

   a.    *Assumptions*

   The Debtor does not have any executory contracts and/or unexpired leases to assume.

   b.    *Rejections*

   Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date.  The Debtor rejects the residential lease agreement it currently has with its tenant, Todd Graham for the 13511 Mulholland Drive, Beverly Hills, CA 90210 property.

   2.  <u>RETENTION OF JURISDICTION</u>

   The Court will retain jurisdiction over this bankruptcy case until a final decree is entered by the Court. It is estimated that the final decree will be entered approximately six (6) months after the Plan is confirmed by the Court. At that time the bankruptcy case will be closed.

**G.  TAX CONSEQUENCES OF THE PLAN**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability. The Debtor makes no representations regarding the potential tax consequences to creditors.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

### A.  WHO MAY VOTE OR OBJECT

1.    *Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

2.    *Who May Vote to Accept or Reject the Plan*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified as an impaired class.

a.    *What is an Allowed Claim/Interest*

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party

22

in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING PROOFS OF CLAIM IN THIS CASE WAS ON N/A.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult **Exhibit-D and Exhibit-G** to see how the Debtor has characterized your claim or interest.

b. *What is an Impaired Claim/Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Second Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that Class 1(A), 1(B), 1(C), and Class 2 are impaired and that holders of claims in these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

3. *Who is Not Entitled to Vote*

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to §

23

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to §507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

5.    *Votes Necessary to Confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as is discussed later.

6.    *Votes Necessary for a Class to Accept the Plan*

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

7.    *Treatment of Non-Accepting Classes*

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of

the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of §1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

8.      *Request for Confirmation Despite Non-Acceptance by Impaired Classes*

Proponent will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

11 U.S.C. section 1129(b) provides that if a class of creditors votes to reject a chapter 11 plan, it can be confirmed only if the plan satisfies the requirements that the plan be "fair and equitable" with respect to dissenting classes of creditors and shareholders.

Section 1129(b)(2) provides that a plan is "fair and equitable" with respect to a dissenting impaired class of unsecured creditors if the creditors in the class receive or retain property of a value equal to the allowed amount of their claims or, failing that, no creditor of lesser priority, or shareholder, receives any distribution under the plan. This requirement is the so-called Absolute Priority Rule.

The Absolute Priority Rule applies only if the unsecured class, as a group, votes against confirmation of the Plan. The Solicitation package has not been mailed out yet. As such, it is premature to say if the general unsecured creditor class, as a group, will vote for or against the confirmation of the Plan. However, given the fact that the general unsecured creditors will be receiving a 100% distribution under the Plan, it is fair to assume that the general unsecured class will vote in favor of the plan. Furthermore, the Absolute Priority rule is triggered only if the general unsecured class receives less than 100% distribution. Here, the general unsecured class will be receiving a 100% repayment of their claims.

The Debtor's Disclosure Statement and the Plan provide a 100% distribution to general unsecured creditor class, which is what these creditors would have received under a Chapter 7 liquidation analysis. As such, the requirement of the Best Interest of the Creditors is met.

25

## B. <u>LIQUIDATION ANALYSIS</u>

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here as indicated in **<u>Exhibit H.</u>**

As is illustrated in **<u>Exhibit H</u>** herein, the liquidation analysis demonstrates that in a Chapter 7 scenario, the general unsecured creditors would have received a 100% distribution (total of $6,797.38) which is what the Debtor is proposing to pay these general unsecured creditors through the Plan upon the sale and/or refinance of some or all of the Debtor's properties. Wherefore, the Debtor's Plan satisfies the Best Interest Test.

26

## C. **FEASIBILITY**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.

With the plan to refinance and/or sell all or some of the properties to satisfy the obligations in full, both secured and unsecured, Debtor anticipates that it will have sufficient funds available on the Effective Date. A true and correct copy of Debtor's income and expense projections and the October 11, 2021 Letter of Intent from Venture Capital Partners LLC and October 12, 2021 Offer Letter from Capital2Market are attached to Kealy's Declaration as **Exhibit B.**

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required plan payments. Debtor does not anticipate being in the confirmed plan for a long time as it plans to pay off the obligations in full as soon as the refinancing and/or the sale of all or some of the properties are finalized. As such, Debtor believes that it will have sufficient cash on hand in order to meet its obligations under the Plan.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## V.  EFFECT OF CONFIRMATION OF PLAN

The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.

### A.  DISCHARGE

Debtor is eligible for a discharge when the Plan is confirmed.

### B.  REVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan re-vests all of the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and is free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

### C.  MODIFICATION OF THE PLAN

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

### D.  POST-CONFIRMATION STATUS REPORT

Within one hundred and twenty (120) days following the entry of the Plan Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty (20) largest unsecured creditors, and those parties who have requested special notice after the Effective Date. Further status reports shall be filed every one hundred and twenty (120) days or as directed by the Court and served on the same entities.

### E.  <u>QUARTERLY FEES</u>

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

### F.  <u>POST-CONFIRMATION CONVERSION/DISMISSAL</u>

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within one hundred and eighty (180) days after the entry of the order of confirmation.

### G.  <u>FINAL DECREE</u>

The Debtor reserves the right to request an entry of the Final Decree once the Plan has been substantially consummated.

### VI.    <u>SUPPORTING DECLARATIONS</u>

The Supporting Declaration of Debtor's principal, Patrick R. Kealy is attached hereto.

### VII.    <u>SUPPORTING EXHIBITS</u>

        EXHIBIT A – LIST OF ALL ASSETS
        EXHIBIT B – PROJECTED INCOME AND EXPENSE STATEMENT WITH
        SUPPORTING LETTERS FROM  VENTURE CAPITAL PARTNERS LLC
        AND CAPITAL2MARKET
        EXHIBIT C – LIST OF ADMINISTRATIVE EXPENSE CLAIMS
        EXHIBIT D – LIST OF UNSECURED CREDITORS
        EXHIBIT E – LIST OF EQUITY INTERESTS
        EXHIBIT F – UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO
        BE ASSUMED
        EXHIBIT G – LIST OF SECURED CREDITORS

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

1   EXHIBIT H – LIQUIDATION ANALYSIS
2   EXHIBIT I – APPRAISAL REPORTS FOR THE VACANT LOTS AND THE
    MULHOLLAND PROPERTY
3   EXHIBIT J – BUSINESS SEARCH RESULTS FROM THE CA SECRETARY
    OF STATE FOR ROSAMOND 5 PROPERTIES LLC AND THE ARTICLES
4   OF ORGANIZATION

5

6   Dated: October 12, 2021            LAW OFFICES OF MICHAEL JAY BERGER

7

8                                      By:    /s/Michael Jay Berger
                                              MICHAEL JAY BERGER
9                                             Attorney for Debtor and Plan Proponent,
                                              New Holland, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## DECLARATION OF PATRICK R. KEALY

I, Patrick R. Kealy, declare as follows:

1.     I am the owner and Managing Member of the Debtor and Debtor-In-Possession, New Holland, LLC. I am over the age of eighteen. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.     I have reviewed the information within the Disclosure Statement, including all financial information.

3.     I believe that all information contained in the Disclosure Statement is true and correct and fairly presented, to the best of my knowledge.

4.     On August 13, 2021, New Holland, LLC ("Debtor"), debtor and debtor-in-possession herein, filed the instant voluntary Chapter 11 Bankruptcy ("Instant Bankruptcy"). Debtor, jointly with 8th Street MB LLC, holds an interest in real property located at 13511 Mulholland Drive, Beverly Hills, CA 90210 with a present fair market value of $8,700,000 ("Mulholland Property") and 7 vacant lots with an estimated fair market value of $26,000,000.00 ("Vacant Lots"). The Mulholland Property was purchased in March 2018 and includes 5 bedrooms and 4 bathrooms. The Vacant Lots are approximately 26 acres. The Mulholland Property and the Vacant Lots are secured by a first position deed of trust in favor of Grimm Investments for an estimated claim amount of $6,364,166.66. There is also a second position deed of trust on the Mulholland Property and the Vacant Lots in favor of Grimm Investments for an estimated claim amount of $2,000,000, which is cross-collateralized by Rosamond 5 Properties LLC, which is owned by me. The Mulholland Property and the Vacant Lots are also encumbered by unpaid property taxes for an estimated claim amount of $1,207,454.96 [POC #1].

5.     The loans in favor of Grimm Investments have already matured. The event precipitating the filing of the present bankruptcy case was the pending foreclosure sale initiated by Grimm Investments. Debtor has no other assets besides the Mulholland Property and the Vacant Lots.

6.     The Debtor has no avoidance actions in this case.

31

7.      A true and correct list of the property of the estate and the valuation as of the Plan Confirmation Date is attached hereto as **Exhibit A.**

8.      A true and correct projected Income and Expense Statement with the October 11, 2021 Letter of Intent from Venture Capital and October 12, 2021 Letter from Capital1Market is attached hereto as **Exhibit B**.

9.      Debtor's administrative expense claims include the fees and costs incurred by Debtor's bankruptcy counsel (subject to Court's approval) and the United States Trustee's quarterly fees. A true and correct list of administrative expenses claims is attached hereto as **Exhibit C.**

10.      Debtor has three secured creditors: Los Angeles County Tax Collector and Grimm Investments, LLC holding a first and second position deeds of trust. A true and correct list of the secured creditors is attached hereto as **Exhibit G.**

11.      Debtor does not have any priority unsecured creditors.

12.      Debtor's general unsecured creditors hold claims with an estimated aggregate amount of $6,797.38. A true and correct list of the unsecured nonpriority general creditors is attached hereto as **Exhibit D**.

13.      I am the only member and 100% equity interest holder of the Debtor. A true and correct list of the equity interest holders is attached hereto as **Exhibit-E.**

14.      A true and correct list of the unexpired leases and executory contracts is attached hereto as **Exhibit-F.**

15.      The liquidation analysis for Debtor's assets to show what the general unsecured creditors would receive in a chapter 7 liquidation scenario is attached hereto as **Exhibit-H.**

16.      The Mulholland Property and Vacant Lots are the Debtor's primary assets. These assets are well managed and have substantial equity to pay off all obligations in full, both secured and unsecured.   The value of the Vacant Lots is based on the prospective appraisal reports completed by general certified real estate appraiser, Charles H. Blaauw on or about May 29, 2021. The Mulholland Property has an estimated current fair market value of $8,700,000.00

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

(see Schedule A/B). True and correct copies of the appraisal reports for the Vacant Lots are attached hereto as **Exhibit-I.**

17.    8th Street MB LLC is another entity owned and controlled by me. The ownership interest of the Vacant Lots and the Mulholland Property is held jointly by the Debtor and 8th Street MB LLC. I am also a 100% owner of Rosamond 5 Properties LLC, which entity will be obtaining the financing from Capital2Market to satisfy Debtor's obligations in full. A true and correct copy of Business Search Results from California Secretary of State's website with the Articles of Organization are attached hereto as **Exhibit-J.**

18.    The management of the Debtor has remained the same before and after the bankruptcy filing. I, as Debtor's Managing Member, run the Debtor's business and handle the operation of the business, including the marketing, development projections for the properties, the negotiations for the refinancing and/or a possible sale. The proposed Disclosure Statement and Plan do not modify my rights and ownership interest.

19.    The event precipitating the filing of the present bankruptcy case was the pending foreclosure sale initiated by Grimm Investments, LLC.

20.    There are no other legal proceedings pending in front of this or other courts.

21.    The Debtor does not have any actual and/or projected recovery of preferential or fraudulent transfers.

22.    The Debtor does not have any accounts receivable or counter claims.

23.    Debtor filed this case in order to save the Mulholland Property and Vacant Lots from foreclosure sale initiated by Grimm Investments, LLC with a plan to either refinance or sell the Mulholland Property and/or Vacant Lots to satisfy all obligation of Debtor's estate, both secured and unsecured, in full.

24.    I have been working with Capital2Market to obtain financing to pay off the Debtor's obligations in full. I own another entity called Rosamond 5 Properties LLC which owns a 16.4-acre lot in Rosamond, Kern County ("Rosamond Property"). The Rosamond Property will be used as a collateral for Capital2Market's funding. Capital2Market will loan the

33

1   funds to Rosamond 5 Properties LLC, and Rosamond 5 Properties LLC will pay off Grimm Loan

2   #1 and Loan #2 in full, as well as the property taxes and Debtor's general unsecured creditors in

3   full.  True and correct details of Capital2Market's proposal are attached hereto as **Exhibit-B.**

4   Debtor anticipates getting a commitment letter from Capital2Market on or before November 5,

5   2021 regarding the advance of the initial $8 Million to Rosamond 5 Properties LLC.  If, for some

6   unanticipated reasons, the deal with Capital2Market does not memorialize, Debtor will consider

7   Option #2.

8        25.     On October 11, 2021, Debtor received a Letter of Intent to refinance from

9   Venture Capital Partners LLC ("VCP").  VCP has been reviewing a number of projects, including

10  the development of a multi-lot property on Mulholland Drive, which property (the Mulholland

11  Property and the seven lots) is owned by the Debtor jointly with 8th Street MB LLC.  VCP made

12  the following proposal to the Debtor regarding a development project:

13  **Investor**: Venture Capital Partners LLC
    **Amount and Use**: $34,000,000 to be used for the purchase of the Property for all lots and
14  existing residence.
    **Project Manager**: Ocean Grown Organics, Inc. ("OGO")
15  **Conditions**: Due diligence of the Property, to VCP's satisfaction, showing all
    easements, CC&Rs, appraisals, soil tests, and any other tests, city
16  permits, code compliance, engineering documents, architectural
    permits, reports, approvals, instruments or records as may be required
17  to verify the owners' ability to develop the Property in accordance with
    OGO's plans, which involve (a) the demolition and re-building of the
18  existing residence at 13511 Mulholland Dr., and (b) construction of up
    to 20 new residencies on adjacent lots described in the definition of the Property.
19

20

21       26.     On or about September 27, 2021, I met with the owner of Yucca Valley Property

22  LLC ("Potential Buyer") for the Vacant Lots and the Mulholland Property.  On September 28,

23  2021, the Potential Buyer made an offer to purchase the Vacant Lots and the Mulholland

24  Property.  On or about October 8, 2021, I submitted a counter offer on Debtor's behalf to the

25  Potential Buyer.   The negotiations are still ongoing, and if the Potential Buyer agrees to the

26  Debtor's proposed counter offer, the terms will be memorialized in writing and a Sale Motion

27  will be filed with this Court.  The proceeds from the sale will be sufficient to satisfy all of the

28  Debtor's obligations in full. A true and correct copy of the Debtor's projected income and

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

expense statement with a copy of the October 11, 2021 Letter of Intent sent to Debtor by Venture

Capital Partners LLC and October 12, 2021 Offer Letter from Capital2Market is attached hereto

as **Exhibit B.**

27.    Debtor has not generated any income from the properties and does not currently

generate any income. The Plan is for the Debtor to sell or refinance all or some of the properties

to pay off the obligations of its bankruptcy estate.

28.    If Debtor proceeds with either Option #1 or Option #2, Debtor intends to

demolish and re-build the Mulholland Property and develop multiple new residencies on the

Vacant Lots. If Debtor proceeds with Option #3, the Mulholland Property and the Vacant Lots

will be sold and Debtor may choose to invest the revenue in obtaining new properties for either

reselling or development.

29.    Management of the Reorganized Debtor will remain with myself as its managing

member.

30.    As the Principal and Managing Member of the Debtor, I handle the business

operation, including the marketing, refinancing, and/or the sale negotiations. I do not receive

any compensation from the Debtor and do not intend to receive any salary from the Debtor post-

confirmation.

31.    I will act as the disbursing agent for the purpose of making the distributions to all

classes provided for under the Plan. I will not be compensated for performing these services.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this October 12, 2021 at Hermosa Beach, California.

Patrick R. Kealy

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

# EXHIBIT-A

# EXHIBIT - A
# LIST OF ALL PROPERTY OF THE ESTATE AND VALUATIONS AS OF THE PLAN CONFIRMATION DATE

| Property Description | Valuation As of Plan Confirmation | Liquidation Value |
|---|---|---|
| Debtor, jointly with 8th Street MB LLC, holds an interest in a single family residence located at 13511 Mulholland Drive, Beverly Hills, CA 90210 and the adjacent seven (7) vacant lots. Parcel #s are: 2386-006- | $34,700,000.00 | $34,700,000.00 |
| | | $34,700,000.00 |
| *Total Value for the Assets* | $34,700,000.00 | |

# EXHIBIT-B

## PROJECTED INCOME AND EXPENSES TO SUPPORT THE PLAN

**Projected Income**

Option #1: Funding from Capital2Market

With this option, Debtor is expecting to receive the funds necessary to pay off the Grimm
Investments Loan #1 for an estimated amount of $6,364,166.66 and Grimm Investments Loan #2
for an estimated amount of $2,000,000.00. Debtor will obtain the payoffs for Grimm
Investments Loan #1 and Loan #2 through escrow to know the exact amount to satisfy Grimm's
obligations. Debtor will also have the funds to pay off $1,207,454.96 owed in property taxes per
POC #1 filed by LA County Treasurer and Tax Collector's office and Debtor's general
unsecured claim totaling $6,797.38 in full.   Finally, Debtor will have sufficient funds to also
satisfy the administrative claims of its general bankruptcy counsel, which are estimated at
$30,000 and the payment of the United States Trustee quarterly fees. Refer to the October 12,
2021 Offer Letter from Capital2Market to Kealy, which is also attached herein as Exhibit-B.

Option #2: Funding from Venture Capital Partners LLC

With this option, Debtor is expecting to receive the funds necessary to pay off the Grimm
Investments Loan #1 for an estimated amount of $6,364,166.66 and Grimm Investments Loan #2
for an estimated amount of $2,000,000.00. Debtor will obtain the payoffs for Grimm
Investments Loan #1 and Loan #2 through escrow to know the exact amount to satisfy Grimm's
obligations. Debtor will also have the funds to pay off $1,207,454.96 owed in property taxes per
POC #1 filed by LA County Treasurer and Tax Collector's office and Debtor's general
unsecured claim totaling $6,797.38 in full.   Finally, Debtor will have sufficient funds to also
satisfy the administrative claims of its general bankruptcy counsel, which are estimated at
$30,000 and the payment of the United States Trustee quarterly fees. Refer to the October 11,
2021 Offer Letter from Venture Capital Partners, LLC, which is also attached herein as Exhibit-
B.

Option #3: Sale of the Mulholland Property and the Vacant Lots

If Debtor proceeds with the sale of the Mulholland Property and the Vacant Lots, given the
substantial equity in these properties, Debtor will undoubtedly be able to satisfy the secured
obligations in full through the escrow and also pay off the general unsecured creditors' $6,797.38
claim total in full. Debtor will also have sufficient funds from the sale to satisfy its general
bankruptcy counsel's fees and costs which are estimated at $30,000 and the United States
Trustee's quarterly fees.

**Breakdown of Expenses**

Administration Claims:

1. Law Offices of Michael Jay Berger (Debtor's bankruptcy counsel:  payment of fees is subject
to court approval; estimated at $30,000

2. US Trustee Quarterly Fee Payment: payment of fees depends on the disbursement made during each quarter; TBD.

Debtor does not have any priority tax claims.

<u>Secured Obligations</u>

1. LA Property Taxes: $1,207,454.96

2. Grimm Investments LLC (Loan #1): appx. $6,364,166.66

3. Grimm Investments LLC (Loan #2): appx. $2,000,000.00

<u>General Unsecured Creditors: $6,797.38 in total claims (100% repayment from the funds derived either through the refinancing or the sale)</u>

This summary along with the attached October 11, 2021 Letter of Intent from Venture Capital and the October 12, 2021 Offer Letter from Capital2Market support the feasibility of the proposed plan and show that the Debtor will have sufficient income to meet its obligations under the proposed Plan.



**Venture** CAPITAL PARTNERS LLC

16633 Ventura BLVD Ste. 735. Encino CA 91436

October 11, 2021

Patrick Kealy
Kealy Construction
Via email: patrick@kealyconstruction.com

Re: 13511 Mulholland Drive

Dear Patrick:

As you are aware, Venture Capital Partners LLC ("**VCP**") has been negotiating and reviewing a number of projects with Ocean Grown Organics, Inc. ("**OGO**"), including the development of a multi-lot property on Mulholland Drive, which property is owned by you (or your affiliated entity) and includes one lot with the current residence at 13511 Mulholland Drive and seven additional lots at 3310 and 330 N Beverly Ranch Rd, 3391 and 3541 N Dixie Canyon Rd, 13400 and 13301 W Sydney Drive and L8 Ventura Canyon Rd (collectively, the "**Property**").

We believe the development of the Property can be done to the mutual benefit of VCP, OGO and Kealy Construction and we have authorized OGO to submit the following proposal to you regarding this development opportunity:

**Investor:**       Venture Capital Partners LLC

**Amount and Use:** $34,000,000 to be used for the purchase of the Property for all lots and existing residence.

**Project Manager:** OGO

**Conditions:**     Due diligence of the Property, to VCP's satisfaction, showing all easements, CC&Rs, appraisals, soil tests, and any other tests, city permits, code compliance, engineering documents, architectural permits, reports, approvals, instruments or records as may be required to verify the owners' ability to develop the Property in accordance with OGO's plans, which involve (a) the demolition and re-building of the existing residence at 13511 Mulholland Dr., and (b) construction of up to 20 new residencies on adjacent lots described in the definition of the Property.

This Letter of Intent is based on the appraisal and feasibility report attached hereto as
**Exhibit A**.

Please indicate your agreement to the foregoing key terms, under which terms VCP will
finance the purchase and development of the Property subject to additional terms to be
negotiated, finalized and documented in definitive documents among the parties.

Sincerely,
Venture Capital Partners LLC

Ray Bailey, Chairman

ACKNOLWDGED AND AGREED:

By: _____
       Patrick Kealy

**EXHIBIT A**

**Appraisal and Feasibility Report**



October 12, 2021

Kealy Construction Proposed Rosamond Build to Rent Offering Structure:


Pay off Mulholland:

$8M current note = Appraised value of $25M used as collateral

Rosamond:

Payoff current note of $2.3M = Appraised value of $8M used as collateral

Collateral of $33M combined value of Mulholland and Rosamond undeveloped

174 Rental Units produced at a cost of $28.5M

**Total raise amount $43M**


Proposed Term Option 1:

$43M raised

2 years until completion

10% cumulative deferred = $4.3M per year

60% sponsor/40% investor equity split

Estimated sale $65M

$43M principal investment to investors

$8.6M interest to investors = $4.3M per year @ 2 years

$13.4M post sale profit

$5.36M to investors = 40%

$8.04M to sponsor = 60%

15.09% IRR to investors = $8.6M + $5.36M = $13.96M/$43M

Equity Multiple 1.331

Capital2Market
7315 Three Chopt Rd.
Richmond VA 23226



Proposed Term Option 2:

$43M raised

2 years until completion

12% cumulative deferred = $5.16M per year

60% sponsor/40% investor equity split

Estimated sale $65M

$43M principal investment to investors

$10.32M interest to investors = $5.16M per year @ 2 years

$11.68M post sale profit

$4.672M to investors = 40%

$7.008M to sponsor = 60%

16.13% IRR to investors = $10.32M + $4.672M = $14.992M/$43M

Equity Multiple 1.363


**Mulholland 100% owned by sponsor after sale of Rosamond**

**Rosamond Estimated Rental Income:**

174 Units at $2200 per month rent = $382,800 per month

$4.593M annual gross rental income

Sale of $65M?  Comps to support?  14 years to break even at $4.6M per year gross income?

Due Diligence and Terms to be completed in 15-45 days:


Capital2Market                                                   Kealy Construction

Victor MacLaughlin CEO                                    Patrick Kealy Owner

*Victor MacLaughlin*

Capital2Market
7315 Three Chopt Rd.
Richmond VA 23226

# EXHIBIT-C

# EXHIBIT C

## LIST OF ADMINISTRATIVE EXPENSE CLAIMS

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $30,000.00 (estimated); subject to court approval | To be paid on the Effective Date, subject to Bankruptcy Court's approval. If Debtor does not have sufficient funds in its DIP accounts to pay the awarded fees and costs in full, Debtor's bankruptcy counsel agrees to enter into a payment plan with the Debtor. |
| Clerk's Office Fees | $0.00 (estimated) | Paid when due. |
| Office of the U.S. Trustee | $250.00 min fee; Amount to be determined per quarter | Estimated Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until an order is entered closing the case on interim or final basis, or until the case is dismissed or converted. |

# EXHIBIT-D

## EXHIBIT-D
## GENERAL UNSECURED CLAIMS
### NEW HOLLAND, LLC / CASE NO.: 2:21-BK-16454-BR

| General Unsecured Creditors | Class | Scheduled Amount on Schedule F | Proof of Claim Amount | Disputed Yes/No | Total Amount of Allowed Unsecured Claim | Amount Paid on the Effective Date (Estimated to be April 2022) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| LADWP PO Box 30808 Los Angeles, CA 90030 | 2 | $5,682.87 | Not filed | NO | $5,682.87 | $5,682.87 | $0.00 | |
| SoCal Gas POC Box C Monterey Park, CA 91756-5111 | 2 | $557.49 | Not filed | NO | $557.49 | $557.49 | $0.00 | |
| Spectrum PO Box 60074 City of Industry, CA 91716 | 2 | $557.02 | Not Filed | NO | $557.02 | $557.49 | $0.00 | |
| **Total Liabilities** | | $6,797.38 | N/A | | $6,797.38 | $6,797.38 | N/A | |

# EXHIBIT-E

# EXHIBIT-E
## INTEREST HOLDERS
### NEW HOLLAND, LLC / CASE NO: 2:21-BK-16454-BR

| INTEREST HOLDERS | Class | Scheduled Amount | Claimed Amount | Disputed Yes/No | Total Amount of Allowed Unsecured Claim | Amount Paid on the Effective Date (Estimated to be April 2022) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Patrick R. Kealy | 3 | N/A | N/A | NO | N/A | N/A | $0.00 | No obligation is owed. |
| Total Liabilities | | $0.00 | N/A | | N/A | N/A | $0.00 | |

**EXHIBIT-F**

EXHIBIT-F

UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO BE ASSUMED


EXECUTORY CONTACTS AND UNEXPIRED LEASES

*a.    Assumptions*

The Debtor does not have any executory contracts and/or unexpired leases to assume.

*b.    Rejections*

Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date.  The Debtor rejects the residential lease agreement it currently has with its tenant, Todd Graham for the 13511 Mulholland Drive, Beverly Hills, CA 90210 property.

# EXHIBIT-G

EXHIBIT-G
SECURED CLAIMS
NEW HOLLAND, LLC / CASE NO.: 2:21-BK-16454-BR

| Secured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Pre-Petition Arrearages | Disputed Yes/No | Total Allowed Secured Claim | Amount Paid on the Effective Date (Estimated to be April 2022) | Los Angeles County Tax Collector | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Los Angeles County Tax Collector PO Box 54110 Los Angeles, CA 90054 [POC #1] | 1(A) | $1,023,189.00 | $1,207,454.96 | N/A | NO | $1,207,454.96 | $1,207,454.96 | N/A | Debtor intends to pay off the LACTC's claim in full upon obtaining the funds from either the refinancing or the sale of some or all of the Debtor's properties |
| Grimm Investments, LLC c/o Charles R. Grimm, Manager 1377 East Valley Road, Santa Barbara, CA 93108 | 1(B) | $6,364,166.66 | Not Filed | note fully due | NO | $6,364,166.66 | $6,364,166.66 | N/A | Debtor intends to pay off the Grim's claim in full upon obtaining the funds from either the refinancing or the sale of some or all of the Debtor's properties |
| Grimm Investments, LLC c/o Charles R. Grimm, Manager 1377 East Valley Road, Santa Barbara, CA 93108 | 1(C) | $2,000,000.00 | Not filed | note fully due | NO | $2,000,000.00 | $2,000,000.00 | N/A | Debtor intends to pay off the Grimm's claim in full upon obtaining the funds from either the refinancing or the sale of some or all of the Debtor's properties |
| TOTAL SECURED | | $9,387,355.66 | Not filed | $0.00 | | $9,571,621.62 | $9,571,621.62 | | |

# EXHIBIT-H

# EXHIBIT – E

# LIQUIDATION ANALYSIS

| Liquidation Analysis | Total Amount | Real Property | Personal Property |
|---|---|---|---|
| Total Property Value | $34,700,000.00* | $34,700,000.00 | $0.00 |
| Less: | | | |
| Secured Claims (see Exhibit-G  ) | $9,571,621.62 | $9,571,621.62 | |
| | ---------------- | ---------------- | ---------------- |
| Interest in Nonexempt Property | $0.00 | 0.00 | $0.00 |
| Less: | | | |
| Estimated Ch 7 Admin Expenses | $0.00 | | |
| Estimated BK Counsel Fee and OUST Fees | $30,275.00 | | |
| Schedule E Priority Claims | $0.00 | | |
| | ---------------- | | |
| Available to General Unsecured | $25,128,378.38 | | |
| | | | |
| Total General Unsecured (see Exhibit-D) | $6,797.38 | | |
| Percent Distribution | 100% | | |

*NOTE: See **EXHIBIT A** for more details on Total Property Value

# EXHIBIT-I

File No. 21-05-005

# Prospective Appraisal

## of

## Los Angeles County

## APN 2386-003-003 and 004

## for

## Mr. Patrick Kealy

## New Holland, LLC and 8h Street Mb, LLC

## as

## of

## May 25, 2021

## Fair Market Value

## $4,000,000

| Client | Mr. Patrick Kealy | | File No. | 21-05-005 | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Beverly Hills PO | County  Los Angeles | State  CA | Zip Code  90210 | |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |

## TABLE OF CONTENTS

Services Invoice ................................................................................................................................................................. 1
Cover Letter ....................................................................................................................................................................... 2
Land ................................................................................................................................................................................... 3
Statement of Limiting Conditions ....................................................................................................................................... 4
Plat Map ............................................................................................................................................................................. 6
Addendum Slope Analysis .................................................................................................................................................. 7
Location Map ...................................................................................................................................................................... 8
Location Map ...................................................................................................................................................................... 9
Subject Photos ................................................................................................................................................................. 10
Subject Photos ................................................................................................................................................................. 11
Comparable Photos 1-3 .................................................................................................................................................... 12

## LAND APPRAISAL REPORT

File No.  21-05-005

### SUBJECT

| | |
|---|---|
| Borrower | Mr. Patrick Kealy |
| Property Address | Dixie Canyon Avenue |
| City | Beverly Hills PO |
| Legal Description | A portion Lot 23, Tract No. 5571, Book 107, Page 72-80. Obtain Title Report. APN 2386-003-003 and 004 |

Census Tract 1417.00     Map Reference 562-C7
County Los Angeles     State CA     Zip Code 90210

| | |
|---|---|
| Sale Price $ N/A | Date of Sale N/A | Loan Term N/A yrs. | Property Rights Appraised ☒ Fee ☐ Leasehold ☐ De Minimis PUD |
| Actual Real Estate Taxes $ 4,314 | (yr) | Loan charges to be paid by seller $ N/A | Other sales concessions |
| Lender/Client New Holland, LLC and 8h St | | Address New Holland, LLC and 8h Street Mb, LLC |
| Occupant Vacant | Appraiser Charles H. Blaauw | Instructions to Appraiser  Fair Market Value of Subject Lots |

### NEIGHBORHOOD

| | | | | | |
|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Good | Avg. | Fair | Poor |
| Built Up | ☐ Over 75% | ☒ 25% to 75% | ☐ Under 25% | Employment Stability | ☒ | ☐ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | Convenience to Employment | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☒ Increasing | ☐ Stable | ☐ Declining | Convenience to Shopping | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | Convenience to Schools | ☐ | ☒ | ☐ | ☐ |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ |
| Present 35 % One-Unit  5 % 2-4 Unit  10 % Apts.  ☐ Condo  10 % Commercial | | | | Recreational Facilities | ☒ | ☐ | ☐ | ☐ |
| Land Use  % Industrial  40 % Vacant  % | | | | Adequacy of Utilities | ☐ | ☒ | ☐ | ☐ |
| Change in Present | ☐ Not Likely | ☐ Likely (*) | ☒ Taking Place (*) | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Land Use  (*) From  Vacant  To  New Large Home | | | | Protection from Detrimental Conditions | ☐ | ☒ | ☐ | ☐ |
| Predominant Occupancy | ☐ Owner | ☐ Tenant | % Vacant | Police and Fire Protection | ☐ | ☒ | ☐ | ☐ |
| One-Unit Price Range $ 750 to $ 5,000 Predominant Value $ 1,500 | | | | General Appearance of Properties | ☒ | ☐ | ☐ | ☐ |
| One-Unit Age Range New yrs. to 60 yrs. Predominant Age 40 yrs. | | | | Appeal to Market | ☒ | ☐ | ☐ | ☐ |

Comments including those factors, favorable or unfavorable, affecting marketability (e.g. public parks, schools, view, noise)     The neighborhood is located within the city of Los Angeles in the Beverly Hills Post Office Area, along the Mulholland Drive corridor. The neighborhood shows good employment stability and appeal due to quality infrastructure and a homogeneous area. It is also close proximity to employment, schools, parks, the Pacific Ocean, and all other consumer services.

### SITE

Dimensions  Irregular     = '169,010 sf     ☐ Corner Lot
Zoning Classification  LARE40     Present Improvements ☒ Do ☐ Do Not  Conform to Zoning Regulations
Highest and Best Use  ☐ Present Use  ☒ Other (specify)  Due to area trends & demand for new homes in this market area, the highest & be use*

| | Public | Other (Describe) | OFF SITE IMPROVEMENTS | Topo Slope with some level pads. |
|---|---|---|---|---|
| Elec. | ☒ | In Area | Street Access ☒ Public ☐ Private | Size Larger Than Typical for the area. |
| Gas | ☒ | In Area | Surface Asphalt | Shape Rectangular |
| Water | ☒ | In Area | Maintenance ☒ Public ☐ Private | View City Lights |
| San. Sewer | ☒ | Down Hill | ☐ Storm Sewer ☒ Curb/Gutter | Drainage Appears Adequate |
| | ☐ | Underground Elect.& Tel. | ☐ Sidewalk ☐ Street Lights | Is the property located in a FEMA Special Flood Hazard Area? ☐ Yes ☒ No |

Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions)     The subject property sides and/or backs vacant and improved residential properties. It also fronts an area feeder street. No apparent adverse encroachments or environmental conditions were noted on the site. No signs of slippage or erosion were noted and drainage appears adequate to the lot line or natural water course. The preliminary title report was not reviewed by the appraiser.    * Is to build a new home on a minimum 40,000 square foot lot.

### MARKET DATA ANALYSIS

The undersigned has recited the following recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description includes a dollar adjustment reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to or more favorable than the subject property, a minus (–) adjustment is made, thus reducing the indicated value of subject; if a significant item in the comparable is inferior to or less favorable than the subject property, a plus (+) adjustment is made thus increasing the indicated value of the subject.

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | Dixie Canyon Avenue | 13411 Mulholland Dr | | 3802 Hollyline Ave | | 3585 Multiview Dr | |
| | Beverly Hills PO, CA 90210 | Beverly Hills, CA 90210 | | Sherman Oaks, CA 91423 | | Los Angeles, CA 90068 | |
| Proximity to Subject | | 1/2 Mile East | | 3/4 Mile Northwest | | .5 Miles East | |
| Sales Price | $ N/A | | $ 884,000 | | $ 1,125,000 | | $ 1,125,000 |
| Price $/Sq. Ft. | $ | $ 18.18 | | $ 14.41 | | $ 17.67 | |
| Data Source(s) | Inspection & P.R. | Bkr/MLS/PR Doc#192930 | | Bkr/MLS/PR Doc#1290793 | | Bkr/MLS/PR Doc#526148 | |
| ITEM | DESCRIPTION | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. |
| Date of Sale/Time Adj. | 11-8-17 | COE 2-16-17 | | COE 12-20-18 | | COE 5-25-18 | |
| Location | Fronts Traffic | Fronts Traffic | | Cul-de-Sac | -250,000 | Fwy Noise Similar | |
| Site/View | 169,010 SF / Good | 48,620 SF/ Good | +1,805,850 | 78,054 SF / Good | +1,364,340 | 63,651 Sq. Ft. | +1,580,235 |
| View | City Lights | City Lights | | City Lights | | City Lights | |
| Lot Buildability | Good | Similar | | Similar | | Similar | |
| APN | 2386-003-002 & 003 | 2386-001-003 | | 2272-002-030 | | 2425-011-001 | |
| Buildable Lots | Four per Owner | One | +1,500,000 | One | +1,500,000 | One | +1,500,000 |
| Sales or Financing | None Noted | All Cash | | Construction Loan | | All Cash | |
| Concessions | None | None | | None | | None | |
| Net Adj. (Total) | | ☒+ ☐ – $ | 3,305,850 | ☒+ ☐ – $ | 2,614,340 | ☒+ ☐ – $ | 3,080,235 |
| Indicated Value | | | | | | | |
| of Subject | | $ | 4,189,850 | $ | 3,739,340 | $ | 4,205,235 |

Comments on Market Data     Date of Sale was not adjusted for in this appraisal. The location adjustment includes overall area location and nuisances. Comparable #1 is within close proximity to the subject and is the most similar overall. Comparable #2 and #3 also have similar overall locations and views. Buildable lots was adjusted at $500,000 per lot. All comparables are weighted in the final value**

Comments and Conditions of Appraisal     The subject property was inspected on 5-25-21. The subject property was appraised as of 5-25-21. This is a Prospective Appraisal with the assumption the subject property's four vacant lots are developable. The four lots will have an average of 42,253+- square feet each. The Los Angeles County Assessor's plat map for the subject property shows 3.88+- total acres or 169,010 total square feet of land area.     ** conclusion with the most weight given to comparable #1 for being the most similar overall.

Final Reconciliation     The Sales Comparison Approach is considered the most indicative of buyer and seller attitudes in the current marketplace and is therefore given the greatest weight in the final value conclusion. The Cost Approach was not used in this report. The Income Approach was not used in this report, due to the lack of available vacant lots being held for income investment.

### RECONCILIATION

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE SUBJECT PROPERTY AS OF  May 25, 2021  TO BE $  4,000,000

| | |
|---|---|
| Appraiser  Charles H. Blaauw | Supervisory Appraiser (if applicable) |
| Date of Signature and Report  May 29, 2021 | Date of Signature |
| Title  General Certified Real Estate Appraiser | Title |
| State Certification #  AG023106  ST CA | State Certification #  ST |
| Or State License #  ST | Or State License #  ST |
| Expiration Date of State Certification or License  September 6, 2021 | Expiration Date of State Certification or License |
| Date of Inspection (if applicable)  May 25, 2021 | ☐ Did ☐ Did Not  Inspect Property  Date of Inspection |

Form LAND - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE     08/11

File No. 21-05-005

DEFINITION OF MARKET VALUE:  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.  (Source: FDIC Interagency Appraisal and Evaluation Guidelines, 2010.)

> * Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

CONTINGENT AND LIMITING CONDITIONS:  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property.  The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report.  This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

11. This appraisal assumes the current zoning of LARE40 requiring a minimum of 40,000 square feet of land for each buildable lot and is approved by the city of Los Angeles Planning Department and other regulatory agencies governing this development.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No. 21-05-005

**CERTIFICATION: The appraiser certifies and agrees that:**

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:**    Dixie Canyon Avenue, Beverly Hills PO, CA 90210

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: _Charles H. Blaauw_ | Signature: |
| Name: Charles H. Blaauw | Name: |
| Title: General Certified Real Estate Appraiser | Title: |
| State Certification #: AG023106 | State Certification #: |
| or State License #: | or State License #: |
| State: CA   Expiration Date of Certification or License: September 6, 2021 | State:   Expiration Date of Certification or License: |
| Date Signed: May 29, 2021 | Date Signed: |
| | ☐ Did  ☐ Did Not  Inspect Property |

Page 2 of 2

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, Inc. - 1-800-ALAMODE

## Plat Map

| Client | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Beverly Hills PO | County | Los Angeles | State | CA | Zip Code | 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |





**Location Map**

| Client | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Beverly Hills PO | County | Los Angeles | State CA | Zip Code 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



## County Map

| Client | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Beverly Hills PO | County | Los Angeles | State CA | Zip Code 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



### Subject Photo Page

| Client | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Beverly Hills PO | County | Los Angeles | State | CA | Zip Code 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Subject Property**

Dixie Canyon Avenue
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location          Near Traffic
View              169,010 SF / Good
Site              169,010 SF per owner 4 lots
Quality
Age



**Rear of Subject Property**



**Subject Street**
Beverly Ranch Road

## Subject Photo Page

| Client | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Beverly Hills PO | County | Los Angeles | State | CA | Zip Code | 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Mulholland Drive**

Dixie Canyon Avenue
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location          Near Traffic
View              169,010 SF / Good
Site
Quality
Age



**Utilities Near Subject Property**



**Subject View and Slope**

### Comparable Photo Page

| Client | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Beverly Hills PO | County | Los Angeles | State CA | Zip Code 90210 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



### Comparable 1

13411 Mulholland Dr
Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Comparable 2

3802 Hollyline Ave
Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Comparable 3

3585 Multiview Dr
Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

File No. 21-05-006

# Prospective Appraisal

of

## Los Angeles County

## APN 2386-006-001 and 002

for

## Mr. Patrick Kealy

## New Holland, LLC and 8h Street Mb, LLC

as

of

## May 29, 2021

## Fair Market Value

## $11,000,000

Form DCVR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | Mr. Patrick Kealy | | | File No. 21-05-006 | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Sherman Oaks | County | Los Angeles | State CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |

## TABLE OF CONTENTS

Cover Letter ........................................................................................................................................... 1
Land ...................................................................................................................................................... 2
Statement of Limiting Conditions ........................................................................................................ 3
Plat Map ............................................................................................................................................... 5
Addendum Slope Analysis .................................................................................................................... 6
Location Map ........................................................................................................................................ 7
Location Map ........................................................................................................................................ 8
Subject Photos ...................................................................................................................................... 9
Subject Photos ...................................................................................................................................... 10
Comparable Photos 1-3 ........................................................................................................................ 11

# LAND APPRAISAL REPORT

File No. 21-05-006

## SUBJECT

| | | |
|---|---|---|
| Borrower | Mr. Patrick Kealy | Census Tract 1417.00 | Map Reference 562-C6 |

| Property Address | Dixie Canyon Avenue |
|---|---|
| City Sherman Oaks | County Los Angeles | State CA | Zip Code 91423 |

Legal Description Lot 16 and 17, Tract No. 5571, Book 107, Page 72-80, Obtain Title Report. APN 2386-006-001 and 002

| Sale Price $ N/A | Date of Sale N/A | Loan Term yrs. | Property Rights Appraised ☒ Fee | ☐ Leasehold | ☐ De Minimis PUD |
|---|---|---|---|---|---|

Actual Real Estate Taxes $ 35,786   (yr)   Loan charges to be paid by seller $ N/A   Other sales concessions

Lender/Client None / Mr. Patrick Kealy c/o New Holland, LLC and 8h St   Address New Holland, LLC and 8h Street Mb, LLC

Occupant Vacant   Appraiser Charles H. Blaauw   Instructions to Appraiser Fair Market Value of Vacant Lots

## NEIGHBORHOOD

| | | | | | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | | | | |
| Built Up | ☐ Over 75% | ☒ 25% to 75% | ☐ Under 25% | Employment Stability | ☒ | ☐ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | Convenience to Employment | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☒ Increasing | ☐ Stable | ☐ Declining | Convenience to Shopping | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | Convenience to Schools | ☐ | ☒ | ☐ | ☐ |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ |
| Present   35 % One-Unit   5 % 2-4 Unit   10 % Apts.   ☐ Condo   10 % Commercial | | | | Recreational Facilities | ☒ | ☐ | ☐ | ☐ |
| % Industrial   40 % Vacant   % | | Land Use | | Adequacy of Utilities | ☐ | ☒ | ☐ | ☐ |
| Change in Present | ☐ Not Likely | ☐ Likely (*) | ☒ Taking Place (*) | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Land Use   (*) From Vacant   To New Large Home | | | | Protection from Detrimental Conditions | ☐ | ☒ | ☐ | ☐ |
| Predominant Occupancy | ☒ Owner | ☐ Tenant | % Vacant | Police and Fire Protection | ☐ | ☒ | ☐ | ☐ |
| One-Unit Price Range $ 750 to $ 5,000 Predominant Value $ 1,500 | | | | General Appearance of Properties | ☐ | ☒ | ☐ | ☐ |
| One-Unit Age Range New yrs. to 60 yrs. Predominant Age 40 yrs. | | | | Appeal to Market | ☒ | ☐ | ☐ | ☐ |

Comments including those factors, favorable or unfavorable, affecting marketability (e.g. public parks, schools, view, noise) The neighborhood is located within the
city of Los Angeles in the Sherman Oaks Area, along the Mulholland Drive corridor. The neighborhood shows good employment stability and
appeal due to quality infrastructure and a homogeneous area. It has close proximity to employment, schools, parks, the Pacific Ocean, and all
other consumer services.

## SITE

| Dimensions Irregular | = 433,709 sf | ☐ Corner Lot |
|---|---|---|

| Zoning Classification LARE40 | Present Improvements ☒ Do | ☐ Do Not | Conform to Zoning Regulations |
|---|---|---|---|

Highest and Best Use ☐ Present Use ☒ Other (specify)   Due to area trends & demand for new homes in this market area, the highest & be use*

| | Public | Other (Describe) | OFF SITE IMPROVEMENTS | Topo | Slope with some level pads. |
|---|---|---|---|---|---|
| Elec. | ☒ | In Area | Street Access ☒ Public ☐ Private | Size | Larger Than Typical for the area. |
| Gas | ☒ | In Area | Surface Asphalt | Shape | Irregular |
| Water | ☒ | In Area | Maintenance ☒ Public ☐ Private | View | City Lights |
| San. Sewer | ☒ | Down Hill | ☐ Storm Sewer ☐ Curb/Gutter | Drainage | Appears Adequate |
| | ☐ | Underground Elect. & Tel. | ☐ Sidewalk ☐ Street Lights | Is the property located in a FEMA Special Flood Hazard Area? | ☐ Yes ☒ No |

Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions) The subject property sides and/or backs
vacant and improved residential properties. No apparent adverse encroachments or environmental conditions were noted on this site. No
signs of slippage or erosion were noted and drainage appears adequate to the lot line or natural water course. The preliminary title report was
not reviewed by the appraiser.                                                                    * is to build a new home on a minimum 40,000 square foot lot.

## MARKET DATA ANALYSIS

The undersigned has recited the following recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description
includes a dollar adjustment reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the
comparable property is superior to or more favorable than the subject property, a minus (–) adjustment is made, thus reducing the indicated value of subject; if a
significant item in the comparable is inferior to or less favorable than the subject property, a plus (+) adjustment is made thus increasing the indicated value of the subject

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | Dixie Canyon Avenue | 13411 Mulholland Dr | 3802 Hollyline Ave | 3585 Multiview Dr |
| | Sherman Oaks, CA 91423 | Beverly Hills, CA 90210 | Sherman Oaks, CA 91423 | Los Angeles, CA 90068 |
| Proximity to Subject | | 1/2 Mile East | 3/4 Mile Northwest | 3.5 Miles East |
| Sales Price | $ N/A | $ 884,000 | $ 1,125,000 | $ 1,125,000 |
| Price $/Sq. Ft. | $ | $ 18.18 | $ 14.41 | $ 17.67 |
| Data Source(s) | Inspection & P.R. | Bkr/MLS/PR Doc#192930 | Bkr/MLS/PR Doc#1290793 | Bkr/MLS/PR Doc#526148 |
| ITEM | DESCRIPTION | DESCRIPTION +(–) $ Adjust. | DESCRIPTION +(–) $ Adjust. | DESCRIPTION +(–) $ Adjust. |
| Date of Sale/Time Adj. | 7-25-21 | COE 2-16-17 | COE 12-20-18 | COE 5-25-18 |
| Location | Good | Fronts Traffic +250,000 | Cul-de-Sac | Fwy Noise Similar +250,000 |
| Site/View | 1,137,813 sf | 48,620 SF/ Good +5,776,335 | 78,054 SF / Good +5,334,825 | 63,651 Sq. Ft. +5,550,870 |
| View | City Lights | City Lights | City Lights | City Lights |
| Lot Buildability | Good | Similar | Similar | Similar |
| APN | 2386-003-002 & 003 | 2386-001-003 | 2272-002-030 | 2425-011-001 |
| Buildable Lots | Ten per Owner | One +4,500,000 | One +4,500,000 | One +4,500,000 |
| Sales or Financing | None Noted | All Cash | Construction Loan | All Cash |
| Concessions | None | None | None | None |
| Net Adj. (Total) | | ☒ + ☐ – $ 10,526,335 | ☒ + ☐ – $ 9,834,825 | ☒ + ☐ – $ 10,300,870 |
| Indicated Value | | | | |
| of Subject | | $ 11,410,335 | $ 10,959,825 | $ 11,425,870 |

Comments on Market Data   Date of Sale was not adjusted for in this appraisal. Lot size was adjusted at $15 per SF. The location adjustment is for
overall location and nuisances. Comparable #1 is within close proximity to the subject property and is the most similar overall. Comparable #2
and #3 also have similar overall locations and views. Buildable lots were adjusted at $500,000 per lot. All comparables are weighted in the **

## RECONCILIATION

Comments and Conditions of Appraisal   The subject property was inspected on 5-25-21. The subject property was appraised as of 5-25-21. This is a
Prospective Appraisal with the assumption the subject property's ten vacant lots are developable. The ten lots will have an average of
43,371+- square feet each. The Los Angeles County Assessor's plat map for the subject property shows 9.96+- total acres or 433,709 total
square feet of land area. **final value conclusion with the most weight given to comparable #1 for being the most similar overall.

Final Reconciliation   The Sales Comparison Approach is considered the most indicative of buyer and seller attitudes in the current marketplace
and is therefore given the greatest weight in the final value conclusion. The Cost Approach was not used in this report. The Income Approach
was not used in this report, due to the lack of available vacant lots being used for income investment.

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE SUBJECT PROPERTY AS OF _____ TO BE $ 11,000,000

| Appraiser Charles H. Blaauw | Supervisory Appraiser (if applicable) |
|---|---|
| Date of Signature and Report May 29, 2021 | Date of Signature |
| Title General Certified Real Estate Appraiser | Title |
| State Certification # AG023106 ST CA | State Certification # ST |
| Or State License # ST | Or State License # ST |
| Expiration Date of State Certification or License September 6, 2021 | Expiration Date of State Certification or License |
| Date of Inspection (if applicable) May 25, 2021 | ☐ Did ☐ Did Not Inspect Property Date of Inspection |

Form LAND - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE                 08/11

File No. 21-05-006

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, 2010.)

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

11. This appraisal assumes the current zoning of LARE40 requiring a minimum of 40,000 square feet of land for each buildable lot and is approved by the city of Los Angeles Planning Department and other regulatory agencies governing this development.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No. 21-05-006

**CERTIFICATION:** The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:**   Dixie Canyon Avenue, Sherman Oaks, CA 91423

**APPRAISER:**

Signature: *Charles H. Blaauw*
Name:   Charles H. Blaauw
Title:   General Certified Real Estate Appraiser
State Certification #:   AG023106
or State License #:
State:  CA   Expiration Date of Certification or License:   September 6, 2021
Date Signed:   May 29, 2021

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:
Title:
State Certification #:
or State License #:
State:   Expiration Date of Certification or License:
Date Signed:
☐ Did   ☐ Did Not   Inspect Property

Page 2 of 2

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Plat Map**

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Addendum Slope Analysis**



**Location Map**

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Location Map**

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Subject Property**

Dixie Canyon Avenue
Sales Price            N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location            Good
View                1,137,813 sf
Site                169,010 SF per owner 4 lots
Quality
Age



**Rear of Subject Property**



**Subject Street**
Dixie Canyon Avenue

## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Dixie Canyon Avenue | | | | |
| City | Sherman Oaks | County Los Angeles | | State CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



### Dixie Canyon Avenue

| | |
|---|---|
| Dixie Canyon Avenue | |
| Sales Price | N/A |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Good |
| View | 1,137,813 sf |
| Site | 169,010 SF per owner 4 lots |
| Quality | |
| Age | |



### Utilities Near Subject Property



### Subject View and Slope

## Comparable Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Mr. Patrick Kealy | | | | | |
| Property Address | Dixie Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



### Comparable 1

13411 Mulholland Dr

| | |
|---|---|
| Prox. to Subject | 1/2 Mile East |
| Sale Price | 884,000 |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Fronts Traffic |
| View | 48,620 SF/ Good |
| Site | |
| Quality | |
| Age | |



### Comparable 2

3802 Hollyline Ave

| | |
|---|---|
| Prox. to Subject | 3/4 Mile Northwest |
| Sale Price | 1,125,000 |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Cul-de-Sac |
| View | 78,054 SF / Good |
| Site | |
| Quality | |
| Age | |



### Comparable 3

3585 Multiview Dr

| | |
|---|---|
| Prox. to Subject | 3.5 Miles East |
| Sale Price | 1,125,000 |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Fwy Noise Similar |
| View | 63,651 Sq. Ft. |
| Site | |
| Quality | |
| Age | |

File No. 21-05-007

# Prospective Appraisal

## of
## Los Angeles County

## APN 2386-010-008 and 009

## for

## Mr. Patrick Kealy

## New Holland, LLC and 8h Street Mb, LLC

## as

## of

## May 25, 2021

## Fair Market Value

## $3,500,000

| Borrower | Mr. Patrick Kealy | | | File No. | 21-05-008 |
| Property Address | Ventura Canyon Avenue 008 and 009 | | | | |
| City | Sherman Oaks | County | Los Angeles | State CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |

## TABLE OF CONTENTS

Cover Letter ........................................................................................................................................... 1
Land ...................................................................................................................................................... 2
Statement of Limiting Conditions ......................................................................................................... 3
Plat Map ................................................................................................................................................ 5
Addendum Slope Analysis ..................................................................................................................... 6
Location Map ......................................................................................................................................... 7
County Map ............................................................................................................................................ 8
Subject Photos ...................................................................................................................................... 9
Subject Photos ...................................................................................................................................... 10
Comparable Photos 1-3 ......................................................................................................................... 11

**LAND APPRAISAL REPORT**

File No. 21-05-007

| | | | |
|---|---|---|---|
| Borrower | Mr. Patrick Kealy | Census Tract 1417.00 | Map Reference 562-C6 |
| Property Address | Ventura Canyon Avenue 008 and 009 | | |
| City Sherman Oaks | | County Los Angeles | State CA   Zip Code 91423 |

**SUBJECT**

| | |
|---|---|
| Legal Description | Portion of Lot 13, Tract No. 5571, Book 107, Page 72-80. Obtain Title Report, APN 2386-010-008 and 009 |
| Sale Price $ N/A   Date of Sale N/A   Loan Term   yrs.   Property Rights Appraised ☒ Fee   ☐ Leasehold   ☐ De Minimis PUD | |
| Actual Real Estate Taxes $ 18,035   (yr)   Loan charges to be paid by seller $ N/A   Other sales concessions | |
| Lender/Client   None / Mr. Patrick Kealy, New Holland, LLC and 8h St   Address New Holland, LLC and 8h Street Mb, LLC | |
| Occupant Vacant   Appraiser Charles H. Blaauw   Instructions to Appraiser   Fair Market Value of Vacant Lots | |

**NEIGHBORHOOD**

| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Built Up | ☒ Over 75% | ☐ 25 to 75% | ☐ Under 25% | Employment Stability | ☒ | ☐ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | Convenience to Employment | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☒ Increasing | ☐ Stable | ☐ Declining | Convenience to Shopping | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | Convenience to Schools | ☐ | ☒ | ☐ | ☐ |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ |
| Present 35 % One-Unit 5 % 2-4 Unit 10 % Apts. ☐ Condo 10 % Commercial | Recreational Facilities | ☒ | ☐ | ☐ | ☐ |
| Land Use % Industrial 40 % Vacant | Adequacy of Utilities | ☐ | ☒ | ☐ | ☐ |
| Change in Present ☐ Not Likely ☐ Likely (*) ☒ Taking Place (*) | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Land Use (*) From Vacant To New Large Home | Protection from Detrimental Conditions | ☐ | ☒ | ☐ | ☐ |
| Predominant Occupancy ☒ Owner ☐ Tenant % Vacant | Police and Fire Protection | ☐ | ☒ | ☐ | ☐ |
| One-Unit Price Range $ 750 to $ 5,000   Predominant Value $ 1,500 | General Appearance of Properties | ☒ | ☐ | ☐ | ☐ |
| One-Unit Age Range New yrs. to 60 yrs.   Predominant Age 40 yrs. | Appeal to Market | ☒ | ☐ | ☐ | ☐ |

Comments including those factors, favorable or unfavorable, affecting marketability (e.g. public parks, schools, view, noise)   The neighborhood is located within the
city of Los Angeles in the Sherman Oaks Area, along the Mulholland Drive corridor. The neighborhood shows good employment stability and
appeal due to quality infrastructure and a homogenous area. It has close proximity to employment, schools, parks, the Pacific Ocean, and all
other consumer services.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions Irregular | = 155,070 sf | | ☐ Corner Lot |
| Zoning Classification LARE40 | Present Improvements ☒ Do ☐ Do Not Conform to Zoning Regulations | | |
| Highest and Best Use ☐ Present Use ☒ Other (specify)   Due to area trends & demand for new homes in this market area, the highest & be use* | | | |

| | Public | Other (Describe) | OFF SITE IMPROVEMENTS | Topo | Slope with some level pads. |
|---|---|---|---|---|---|
| Elec. | ☒ | In Area | Street Access ☒ Public ☐ Private | Size | Larger Than Typical for the area. |
| Gas | ☒ | In Area | Surface Asphalt | Shape | Irregular |
| Water | ☒ | In Area | Maintenance ☒ Public ☐ Private | View | Limited City Lights |
| San. Sewer | ☒ | Down Hill | ☐ Storm Sewer ☐ Curb/Gutter | Drainage | Appears Adequate |
| | ☒ | Underground Elect. & Tel. | ☐ Sidewalk ☐ Street Lights | Is the property located in a FEMA Special Flood Hazard Area? ☐ Yes ☒ No |

Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions)   The subject property sides and/or backs
vacant and improved residential properties. No apparent adverse encroachments or environmental conditions were noted on the site. No
signs of slippage or erosion were noted and drainage appears adequate to the lot line or natural water course. The preliminary title report was
not reviewed by the appraiser.   * is to build a new home on a minimum 40,000 square foot lot.

The undersigned has recited the following recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description
includes a dollar adjustment reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the
comparable property is superior to or more favorable than the subject property, a minus (–) adjustment is made, thus reducing the indicated value of subject; if a
significant item in the comparable is inferior to or less favorable than the subject property, a plus (+) adjustment is made thus increasing the indicated value of the subject.

**MARKET DATA ANALYSIS**

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | Ventura Canyon Avenue 008 and | 13411 Mulholland Dr | | 3802 Hollyline Ave | | 3585 Multiview Dr | |
| | Sherman Oaks, CA 91423 | Beverly Hills, CA 90210 | | Sherman Oaks, CA 91423 | | Los Angeles, CA 90068 | |
| Proximity to Subject | | 1/2 Mile East | | 3/4 Mile Northwest | | 3.5 Miles East | |
| Sales Price | $ N/A | $ | 884,000 | $ | 1,125,000 | $ | 1,125,000 |
| Price $/Sq. Ft. | $ | $ | 18.18 | $ | 14.41 | $ | 17.67 |
| Data Source(s) | | Bkr/MLS/PR Doc#192930 | | Bkr/MLS/PR Doc#1290793 | | Bkr/MLS/PR Doc#526148 | |
| ITEM | DESCRIPTION | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. |
| Date of Sale/Time Adj. | 11-8-17 | COE 2-16-17 | | COE 12-20-18 | | COE 5-25-18 | |
| Location | Good | Fronts Traffic | +250,000 | Cul-de-Sac | | Fwy Noise | +250,000 |
| Site/View | 155,070 sf | 48,620 SF/ Good | +1,596,750 | 78,054 SF / Good | +1,155,240 | 63,651 Sq. Ft. | +1,371,285 |
| View | City Lights | City Lights | | City Lights | | City Lights | |
| Lot Buildability | Good | Similar | | Similar | | Similar | |
| APN | 2386-003-002 & 003 | 2386-001-003 | | 2272-002-030 | | 2425-011-001 | |
| Buildable Lots | Three per Owner | One | +1,000,000 | One | +1,000,000 | One | +1,000,000 |
| Sales or Financing | None Noted | All Cash | | Construction Loan | | All Cash | |
| Concessions | None | None | | None | | None | |
| Net Adj. (Total) | | ☒+ ☐ – $ | 2,846,750 | ☒+ ☐ – $ | 2,155,240 | ☒+ ☐ – $ | 2,621,285 |
| Indicated Value | | | | | | | |
| of Subject | | $ | 3,730,750 | $ | 3,280,240 | $ | 3,746,285 |

Comments on Market Data   Date of Sale was not adjusted for in this appraisal. Lot size was adjusted at $15 per SF. The location adjustment is for
overall location and nuisances. Comparable #1 is within close proximity to the subject property and is the most similar overall. Comparable #2
and #3 also have similar overall locations and views. Buildable lots was adjusted at $500,000 per lot. All comparables are weighted in the **

**RECONCILIATION**

Comments and Conditions of Appraisal   The subject property was inspected on 5-25-21.  The subject property was appraised as of 5-25-21. This is a
Prospective Appraisal with the assumption the subject property's three vacant lots are developable. The three lots will have an average of
51,690+- square feet each.  The Los Angeles County Assessor's plat maps for the subject property shows 3.56+- total acres or 155,070 total
square feet of land area.  **final value conclusion with the most weight given to comparable #1 for being the most similar overall.

Final Reconciliation   The Sales Comparison Approach is considered the most indicative of buyer and seller attitudes in the current marketplace
and is therefore given the greatest weight in the final value conclusion. The Cost Approach was not used in this report. The Income Approach
was not used in this report, due to the lack of available vacant lots being held for income investment.

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE SUBJECT PROPERTY AS OF _____ TO BE $ 3,500,000

| | |
|---|---|
| Appraiser Charles H. Blaauw | Supervisory Appraiser (if applicable) |
| Date of Signature and Report May 29, 2021 | Date of Signature |
| Title General Certified Real Estate Appraiser | Title |
| State Certification # AG023106   ST CA | State Certification #   ST |
| Or State License # | Or State License #   ST |
| Expiration Date of State Certification or License September 6, 2021 | Expiration Date of State Certification or License |
| Date of Inspection (if applicable) May 25, 2021 | ☐ Did ☐ Did Not Inspect Property   Date of Inspection |

Form LAND - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   08/11

File No. 21-05-007

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, 2010.)

    * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

**1.** The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

**2.** Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

**3.** The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

**4.** Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

**5.** The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

**6.** The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

**7.** The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

**8.** The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

**9.** The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**10.** The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

**11.** This appraisal assumes the current zoning of LARE40 requiring a minimum of 40,000 square feet of land for each buildable lot and is approved by the city of Los Angeles Planning Department and other regulatory agencies governing this development.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No. 21-05-007

CERTIFICATION: The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:** Ventura Canyon Avenue 008 and 009, Sherman Oaks, CA 91423

**APPRAISER:**

Signature: *Charles H. Blaauw*
Name: Charles H. Blaauw
Title: General Certified Real Estate Appraiser
State Certification #: AG023106
or State License #:
State: CA    Expiration Date of Certification or License: September 6, 2021
Date Signed: May 29, 2021

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:
Title:
State Certification #:
or State License #:
State:    Expiration Date of Certification or License:
Date Signed:
☐ Did  ☐ Did Not  Inspect Property

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | Mr. Patrick Kealy | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | | | | |
| City | Sherman Oaks | County | Los Angeles | | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | | |





**Location Map**

| Borrower | Mr. Patrick Kealy | | | |
|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | |
| City | Sherman Oaks | County  Los Angeles | State  CA | Zip Code  91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | |



## County Map

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code  91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Subject Property**

Ventura Canyon Avenue 008 and 009

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Good |
| View | 155,070 sf |
| Site | 155,070 SF per owner 3 lots |
| Quality | |
| Age | |



**Rear of Subject Property**



**Subject Street**
Ventura Canyon Avenue

## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |



**Koster Avenue**

Ventura Canyon Avenue 008 and 009
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Good |
| View | 155,070 sf |
| Site | 155,070 SF per owner 3 lots |
| Quality | |
| Age | |



**Utilities Near Subject Property**



**Subject View and Slope**

## Comparable Photo Page

| Borrower | Mr. Patrick Kealy | | | |
|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue 008 and 009 | | | |
| City | Sherman Oaks | County Los Angeles | State CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | |



### Comparable 1

13411 Mulholland Dr
Prox. to Subject      1/2 Mile East
Sale Price            884,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location              Fronts Traffic
View                  48,620 SF/ Good
Site
Quality
Age



### Comparable 2

3802 Hollyline Ave
Prox. to Subject      3/4 Mile Northwest
Sale Price            1,125,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location              Cul-de-Sac
View                  78,054 SF / Good
Site
Quality
Age



### Comparable 3

3585 Multiview Dr
Prox. to Subject      3.5 Miles East
Sale Price            1,125,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location              Fwy Noise
View                  63,651 Sq. Ft.
Site
Quality
Age

File No. 21-05-007

# Prospective Appraisal

## of
## Los Angeles County

## APN 2386-011-002

## for

## Mr. Patrick Kealy

## New Holland, LLC and 8h Street Mb, LLC

## as

## of

## May 25, 2021

## Fair Market Value

## $7,500,000

Form DCVR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | Mr. Patrick Kealy | | | | File No. 21-05-007 | |
|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |

## TABLE OF CONTENTS

Cover Letter .................................................................................................................................................................... 1

Land ................................................................................................................................................................................ 2

Statement of Limiting Conditions ..................................................................................................................................... 3

Plat Map .......................................................................................................................................................................... 5

Addendum Slope Analysis ............................................................................................................................................... 6

Location Map ................................................................................................................................................................... 7

Location Map ................................................................................................................................................................... 8

Subject Photos ................................................................................................................................................................ 9

Subject Photos ................................................................................................................................................................ 10

Comparable Photos 1-3 .................................................................................................................................................. 11

## LAND APPRAISAL REPORT

File No.    21-05-007

| | | | | | |
|---|---|---|---|---|---|
| **SUBJECT** | Borrower  Mr. Patrick Kealy | | Census Tract  1439.02 | | Map Reference  562-C6 |

**SUBJECT**

Borrower  Mr. Patrick Kealy  Census Tract  1439.02  Map Reference  562-C6
Property Address  Ventura Canyon Avenue
City  Sherman Oaks  County  Los Angeles  State  CA  Zip Code  91423
Legal Description  Portion of Lot 14, Tract No. 5571, Book 107, Page 72-80. Obtain Title Report. APN 2386-011-002
Sale Price $  N/A  Date of Sale  N/A  Property Rights Appraised  ☒ Fee  ☐ Leasehold  ☐ De Minimis PUD
Actual Real Estate Taxes $  43,770  (yr)  Loan charges to be paid by seller $  N/A  Other sales concessions
Lender/Client  None / Mr. Patrick Kealy New Holland, LLC and 8h St  Address  New Holland, LLC and 8h Street Mb, LLC
Occupant  Vacant  Appraiser  Charles H. Blaauw  Instructions to Appraiser  Fair Market Value of Vacant Lots

**NEIGHBORHOOD**

| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Built Up | ☐ Over 75% | ☒ 25% to 75% | ☐ Under 25% | Employment Stability | ☒ | ☐ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | Convenience to Employment | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☒ Increasing | ☐ Stable | ☐ Declining | Convenience to Shopping | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | Convenience to Schools | ☐ | ☒ | ☐ | ☐ |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ |
| Present  35 % One-Unit  5 % 2-4 Units  10 % Apts.  ☐ Condo  10 % Commercial | | | | Recreational Facilities | ☒ | ☐ | ☐ | ☐ |
| Land Use  40 % Industrial  % Vacant  % | | | | Adequacy of Utilities | ☐ | ☒ | ☐ | ☐ |
| Change in Present  ☐ Not Likely  ☐ Likely (*)  ☒ Taking Place (*) | | | | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Land Use  (*) From  Vacant  To  New Large Home | | | | Protection from Detrimental Conditions | ☐ | ☒ | ☐ | ☐ |
| Predominant Occupancy  ☐ Owner  ☐ Tenant  % Vacant | | | | Police and Fire Protection | ☐ | ☒ | ☐ | ☐ |
| One-Unit Price Range $  750  to $  5,000  Predominant Value $  1,500 | | | | General Appearance of Properties | ☐ | ☒ | ☐ | ☐ |
| One-Unit Age Range  New  yrs. to  60  yrs.  Predominant Age  40  yrs. | | | | Appeal to Market | ☒ | ☐ | ☐ | ☐ |

Comments including those factors, favorable or unfavorable, affecting marketability (including such items as public parks, schools, view, noise)  The subject is located within the
city of Los Angeles in the Sherman Oaks Area, along the Mulholland Drive corridor. The neighborhood shows good employment stability and
appeal due to quality infrastructure and a homogeneous area. It has close proximity to employment, schools, parks, the Pacific Ocean, and all
other consumer services.

**SITE**

Dimensions  Irregular  379,408 sf  ☐ Corner Lot
Zoning Classification  LARE40  Present Improvements  ☒ Do  ☐ Do Not  Conform to Zoning Regulations
Highest and Best Use  ☐ Present Use  ☒ Other (specify)  Due to area trends & demand for new homes in this market area, the highest & be use*

| | Public | Other (Describe) | OFF SITE IMPROVEMENTS | | Topo | Slope with some level pads. |
|---|---|---|---|---|---|---|
| Elec. | ☒ | In Area | Street Access | ☒ Public | ☐ Private | Size | Larger Than Typical for the area. |
| Gas | ☒ | In Area | Surface | Asphalt | | Shape | Irregular |
| Water | ☒ | In Area | Maintenance | ☒ Public | ☐ Private | View | Limited City Lights |
| San. Sewer | ☒ | Down Hill | ☐ Storm Sewer | ☐ Curb/Gutter | | Drainage | Appears Adequate |
| | | ☐ Underground Elect. & Tel. | ☐ Sidewalk | ☐ Street Lights | | Is the property located in a FEMA Special Flood Hazard Area? | ☐ Yes  ☒ No |

Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions)  The subject property sides and/or backs
vacant and improved residential properties. No apparent adverse encroachments or environmental conditions were noted on the site. No
signs of slippage or erosion were noted and drainage appears adequate to the lot line or natural water course.  The preliminary title report was
not reviewed by the appraiser.  * is to build a new home on a minimum 40,000 square foot lot.

The undersigned has recited the following recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description
includes a dollar adjustment reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the
comparable property is superior to or more favorable than the subject property, a minus (−) adjustment is made, thus reducing the indicated value of subject; if a
significant item in the comparable is inferior to or less favorable than the subject property, a plus (+) adjustment is thus made increasing the indicated value of the subject.

**MARKET DATA ANALYSIS**

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | Ventura Canyon Avenue | 13411 Mulholland Dr | | 3802 Hollyline Ave | | 3585 Multiview Dr | |
| | Sherman Oaks, CA 91423 | Beverly Hills, CA 90210 | | Sherman Oaks, CA 91423 | | Los Angeles, CA 90068 | |
| Proximity to Subject | | 1/2 Mile East | | 3/4 Mile Northwest | | 3.5 Miles East | |
| Sales Price | $                    N/A | $          884,000 | | $        1,125,000 | | $        1,125,000 | |
| Price  $/Sq. Ft. | $ | $              18.18 | | $              14.41 | | $              17.67 | |
| Data Source(s) | Inspection & P.R. | Bkr/MLS/PR Doc#192930 | | Bkr/MLS/PR Doc#1290793 | | Bkr/MLS/PR Doc#526148 | |
| ITEM | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Date of Sale/Time Adj. | 11-8-17 | COE 2-16-17 | | COE 12-20-18 | | COE 5-25-18 | |
| Location | Good | Fronts Traffic | +250,000 | Cul-de-Sac | | Fwy Noise Similar | +250,000 |
| Site/View | 379,408 sf | 48,620 SF/Good | +4,961,820 | 78,054 SF / Good | +4,520,310 | 63,651 Sq. Ft. | +4,736,355 |
| View | City Lights | City Lights | | City Lights | | City Lights | |
| Lot Buildability | Good | Similar | | Similar | | Similar | |
| APN | 2386-003-002 & 003 | 2386-001-003 | | 2272-002-030 | | 2425-011-001 | |
| Buildable Lots | Four per Owner | One | +1,500,000 | One | +1,500,000 | One | +1,500,000 |
| Sales or Financing | None Noted | All Cash | | Construction Loan | | All Cash | |
| Concessions | None | None | | None | | None | |
| Net Adj. (Total) | | ☒ +  ☐ −  $  6,711,820 | | ☒ +  ☐ −  $  6,020,310 | | ☒ +  ☐ −  $  6,486,355 | |
| Indicated Value | | | | | | | |
| of Subject | | $        7,595,820 | | $        7,145,310 | | $        7,611,355 | |

Comments on Market Data  Date of Sale was not adjusted for in this appraisal. Lot size was adjusted at $15 per SF. The location adjustment is for
overall location and nuisances. Comparable #1 is within close proximity to the subject property and is the most similar overall. Comparable #2
and #3 also have similar overall locations and views. Buildable lots was adjusted at $500,000 per lot. All comparables are weighted in the **

**RECONCILIATION**

Comments and Conditions of Appraisal  The subject property was inspected on 5-25-21.  The subject was appraised as of 5-25-21. This is a
Prospective Appraisal with the assumption the subject property's four vacant lots are developable. The four lots will have an average of
94,852+- square feet each. The Los Angeles County Assessor's plat map for the subject property shows 8.71+- total acres or 379,408 total
square feet of land area.  **Final value conclusion with the most weight given to comparable #1 for being the most similar overall.
Final Reconciliation  The Sales Comparison Approach is considered the most indicative of buyer and seller attitudes in the current marketplace
and is therefore given the greatest weight in the final value conclusion. The Cost Approach was not used in this report. The Income Approach
was not used in this report, due to the lack of available vacant lots being held for income investment.

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE SUBJECT PROPERTY AS OF  May 25, 2021  TO BE $  7,500,000

| | | | |
|---|---|---|---|
| Appraiser  Charles H. Blaauw | | Supervisory Appraiser (if applicable) | |
| Date of Signature and Report  May 29, 2021 | | Date of Signature | |
| Title  General Certified Real Estate Appraiser | | Title | |
| State Certification #  AG023106  ST  CA | | State Certification #  ST | |
| Or State License # | ST | Or State License #  ST | |
| Expiration Date of State Certification or License  September 6, 2021 | | Expiration Date of State Certification or License | |
| Date of Inspection (if applicable)  May 25, 2021 | | ☐ Did  ☐ Did Not  Inspect Property  Date of Inspection | |

Form LAND - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    08/11

File No. 21-05-007

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, 2010.)

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

11. This appraisal assumes the current zoning of LARE40 requiring a minimum of 40,000 square feet of land for each buildable lot and is approved by the city of Los Angeles Planning Department and other regulatory agencies governing this development.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No. 21-05-007

**CERTIFICATION:** The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:**    Ventura Canyon Avenue, Sherman Oaks, CA 91423

**APPRAISER:**

| | |
|---|---|
| Signature: | _Charles H. Blaauw_ |
| Name: | Charles H. Blaauw |
| Title: | General Certified Real Estate Appraiser |
| State Certification #: | AG023106 |
| or State License #: | |
| State: CA    Expiration Date of Certification or License: | September 6, 2021 |
| Date Signed: | May 29, 2021 |

**SUPERVISORY or CO-APPRAISER (if applicable):**

| | |
|---|---|
| Signature: | |
| Name: | |
| Title: | |
| State Certification #: | |
| or State License #: | |
| State:    Expiration Date of Certification or License: | |
| Date Signed: | |
| ☐ Did  ☐ Did Not  Inspect Property | |

Form ACR2_DEFD — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Plat Map**

| Borrower | Mr. Patrick Kealy | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | | |
| City | Sherman Oaks | County | Los Angeles | State CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | |





**Location Map**

| Borrower | Mr. Patrick Kealy | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | | | |
| City | Sherman Oaks | County | Los Angeles | State | CA | Zip Code | 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | | |



## Location Map

| Borrower | Mr. Patrick Kealy | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | | | |
| City | Sherman Oaks | | County | Los Angeles | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | | |



## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | |
| City | Sherman Oaks | County Los Angeles | State CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



### Subject Property

Ventura Canyon Avenue
Sales Price          N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location          Good
View          379,408 sf
Site          169,010 SF per owner 4 lots
Quality
Age



### Rear of Subject Property



### Subject Street
Ventura Canyon Avenue

## Subject Photo Page

| Borrower | Mr. Patrick Kealy | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | | | |
| City | Sherman Oaks | | County | Los Angeles | State | CA | Zip Code 91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | | | |



**Koster Avenue**

Ventura Canyon Avenue
Sales Price            N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location            Good
View
Site            169,010 SF per owner 4 lots
Quality
Age



**Utilities Near Subject Property**



**Subject View and Slope**

Case 2:21-bk-16454-BR    Doc 58    Filed 10/30/21    Entered 10/30/21 22:20:51    Desc
Main Document    Page 100 of 140

## Comparable Photo Page

| Borrower | Mr. Patrick Kealy | | | | |
|---|---|---|---|---|---|
| Property Address | Ventura Canyon Avenue | | | | |
| City | Sherman Oaks | County  Los Angeles | | State  CA | Zip Code  91423 |
| Lender/Client | None / Mr. Patrick Kealy New Holland, LLC and 8h Street Mb, LLC | | | | |



### Comparable 1

13411 Mulholland Dr
Prox. to Subject     1/2 Mile East
Sale Price              884,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location               Fronts Traffic
View                   48,620 SF/ Good
Site
Quality
Age



### Comparable 2

3802 Hollyline Ave
Prox. to Subject     3/4 Mile Northwest
Sale Price              1,125,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location               Cul-de-Sac
View                   78,054 SF / Good
Site
Quality
Age



### Comparable 3

3585 Multiview Dr
Prox. to Subject     3.5 Miles East
Sale Price              1,125,000
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location               Fwy Noise
View                   63,651 Sq. Ft.
Site
Quality
Age

# EXHIBIT-J

Dr. Shirley N. Weber
California Secretary of State

 # Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Tuesday, October 12, 2021. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## 201330910386    ROSAMOND 5 PROPERTIES, LLC

| | |
|---|---|
| **Registration Date:** | 11/05/2013 |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Type:** | DOMESTIC |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | PATRICK KEALY |
| | 936 MONTEREY BLVD |
| | HERMOSA BEACH CA 90254 |
| **Entity Address:** | 936 MONTEREY BLVD |
| | HERMOSA BEACH CA 90254 |
| **Entity Mailing Address:** | 936 MONTEREY BLVD |
| | HERMOSA BEACH CA 90254 |
| **LLC Management** | One Manager |

**🛒 Certificate of Status**

A Statement of Information is due EVERY ODD-NUMBERED year beginning five months before and through the end of November.

| Document Type | ⬍ | File Date | ⬇ | PDF |
|---|---|---|---|---|
| SI-NO CHANGE | | 10/01/2021 | | |
| SI-COMPLETE | | 11/18/2013 | | |
| REGISTRATION | | 11/05/2013 | | |

\* Indicates the information is not contained in the California Secretary of State's database.

**Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**    **New Search**    **Back to Search Results**

| LLC-1 | **Articles of Organization**<br>**of a Limited Liability Company (LLC)** |
|---|---|

**2013309 10386**

To form a limited liability company in California, you can fill out this form, and submit for filing along with:

- A $70 filing fee.
- A separate, non-refundable $15 service fee also must be included, if you drop off the completed form or document.

*Important!* LLCs in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

LLCs may not provide "professional services," as defined by California Corporations Code sections 13401(a) and 13401.3.

Note: *Before submitting the completed form, you should consult with a private attorney for advice about your specific business needs.*

**FILED**
Secretary of State
State of California

**NOV 0 5 2013**

This Space For Office Use Only

For questions about this form, go to *www.sos.ca.gov/business/be/filing-tips.htm.*

**LLC Name**

① Rosamond 5 Properties, LLC

*Proposed LLC Name*    The name must end with: "LLC," "L.L.C.," "Limited Liability Company," "Limited Liability Co.," "Ltd. Liability Co." or "Ltd. Liability Company;" and may not include: "bank," "trust," "trustee," "incorporated," "inc.," "corporation," or "corp.," "insurer," or "insurance company." For general entity name requirements and restrictions, go to www.sos.ca.gov/business/be/name-availability.htm.

**Purpose**

② The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea Limited Liability Company Act.

**LLC Addresses**

③ a.  | 936 MONTEREY BLVD. | HERMOSA BEACH | CA | 90254 |
|---|---|---|---|
| *Initial Street Address of LLC* | *City (no abbreviations)* | *State* | *Zip* |

b.  | | | | |
|---|---|---|---|
| *Initial Mailing Address of LLC, if different from 3a* | *City (no abbreviations)* | *State* | *Zip* |

**Service of Process**  (List a California resident or an active 1505 corporation in California that agrees to be your initial agent to accept service of process in case your LLC is sued. You may list any adult who lives in California. You may not list an LLC as the agent. Do not list an address if the agent is a 1505 corporation.)

④ a.  Patrick Kealy
*Agent's Name*

b.  | 936 MONTEREY BLVD. | HERMOSA BEACH | CA | 90254 |
|---|---|---|---|
| *Agent's Street Address (if agent is not a corporation)* | *City (no abbreviations)* | *State* | *Zip* |

**Management** (Check only one.)

⑤ The LLC will be managed by:

[✓] One Manager   [ ] More Than One Manager   [ ] All Limited Liability Company Member(s)

This form must be signed by each organizer. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of organization.

▶ _____    Joseph Foster
*Organizer - Sign here*                    *Print your name here*

| Make check/money order payable to: Secretary of State<br>Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | **By Mail**<br>Secretary of State<br>Business Entities, P.O. Box 944228<br>Sacramento, CA 94244-2280 | **Drop-Off**<br>Secretary of State<br>1500 11th Street, 3rd Floor<br>Sacramento, CA 95814 |
|---|---|---|

Corporations Code §§ 17051, 17052, 17375, Revenue and Taxation Code § 17941
LLC-1 (REV 01/2013)

2013 California Secretary of State
www.sos.ca.gov/business/be

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (specify): **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF PATRICK R. KEALY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 10/13/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Ron Maroko ron.maroko@usdoj.gov
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Counsel for Grimm Investment: William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On 10/13/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
U.S. Trustee
Attn: Ron Maroko
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 10/13/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Honorable Barry Russell**
**United States Bankruptcy Court**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2021 | Peter Garza | /s/Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT B

1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6th Floor
   Beverly Hills, CA 90212-2929
3  Telephone:    (310) 271-6223
   Facsimile:    (310) 271-9805
4  Email: Michael.Berger@bankruptcypower.com
   Email: Sofya.Davtyan@bankruptcypower.com
5
   Attorneys for Debtor and Plan Proponent
6  New Holland, LLC

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                  LOS ANGELES DIVISION

10 In re                          )  CASE NO.: 2:21-bk-16454-BR
                                  )
11                                )
        NEW HOLLAND, LLC          )  Chapter 11
12                                )
                                  )  **DEBTOR'S CHAPTER 11 PLAN OF
13                       Debtor.) **REORGANIZATION**
                                  )
14                                )  Hearing on Adequacy of Disclosure Statement:
                                  )
15                                )  Date:   November 9, 2021
                                  )  Time:   10:00 a.m.
16                                )  Ctrm:   1668
                                  )          255 E Temple Street
17                                )          Los Angeles, CA 90012
                                  )
18                                )
                                  )
19                                )
                                  )
20                                )

21

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

                              1
          DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

## Table of Contents

I.      INTRODUCTION ...................................................................................4

II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.................4

        CLASSIFIED CLAIMS .............................................................................6

        1.    Classes of Secured Claims (Class 1) ....................................6

        2.    Classes of Priority Unsecured Claims ...................................7

        3.    Classes of General Unsecured Claims....................................7

        D.    MEANS OF PERFORMING THE PLAN .........................................8

        1.    Funding for the Plan .............................................................8

              2.   Post-Confirmation Management ....................................10

              3.   Disbursing Agent ...........................................................10

III.    TREATMENT OF MISCELLANEOUS ITEMS ........................................10

        A.    EXECUTORY CONTACTS AND UNEXPIRED LEASES ...................10

              1.   Assumptions ...................................................................10

              2.   Rejections .......................................................................10

        B.    RETENTION OF JURISDICTION...............................................11

IV.     EFFECT OF CONFIRMATION OF PLAN.............................................11

        A.    DISCHARGE..........................................................................11

        B.    REINVESTING OF PROPERTY IN THE DEBTOR.........................11

        C.    MODIFICATION OF THE PLAN.................................................11

        D.    POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF
        REORGANIZED DEBTOR'S PROFESSIONAL ...................................11

        E.    QUARTERLY FEES ................................................................12

        F.    POST-CONFIRMATION CONVERSION/DISMISSAL ....................12

2
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

G.    FINAL DECREE................................................................................................13

3

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

## I.  <u>INTRODUCTION</u>

Debtor, New Holland, LLC, is a California Limited Liability Company (the "<u>Debtor</u>"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on August 13, 2021.  It is hereinafter referred to as the "Debtor."

*The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.*

Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a Plan of Reorganization. The Plan of Reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. *The Debtor in this case is the proponent (the "Proponent") of a Reorganization Plan* (the "Plan").

In summary, this is a reorganizing plan that provides for payment to holders of allowed claims over time. The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan.

THE DISCLOSURE STATEMENT DESCRIBING THE CHAPTER 11 PLAN OF REORGANIZATION (hereinafter the "<u>Disclosure Statement</u>") also accompanies this Plan. The Disclosure Statement describes the Plan and provides additional information to enable creditors to make informed decisions about whether to vote for or against the Plan.

## II.  <u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>

### A. <u>General Overview</u>

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired.  The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired

classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the Shareholders.

**B. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.

### 1. ADMINISTRATIVE CLAIMS

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $30,000.00 (estimated); subject to court approval | To be paid on the Effective Date, subject to Bankruptcy Court's approval. If Debtor does not have sufficient funds in its DIP accounts to pay the awarded fees and costs in full, Debtor's bankruptcy counsel agrees to enter |

5
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

| | | into a payment plan with the Debtor. |
|---|---|---|
| Clerk's Office Fees | $0.00 (estimated) | Paid when due. |
| Office of the U.S. Trustee | $250.00 minimum fee; Amount to be determined per quarter | Estimated Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until until an order is entered closing the case on interim or final basis, or until the case is dismissed or converted. |

### Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

2.    **PRIORITY TAX CLAIMS**

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8). The Code requires that each holder of such a §507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the petition date.

Debtor does not have any priority tax claims.

C.    **CLASSIFIED CLAIMS AND INTERESTS**

**CLASSIFIED CLAIMS**

1.  **Classes of Secured Claims (Class 1)**

**CLASS 1(A)**

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Claim/Collateral: Los Angeles County Treasurer and Tax Collector ("LACT") with a $1,207,454.96 claim secured by the Mulholland Property and Vacant Lots [POC #1].

Impaired/Not Impaired: Impaired.

Treatment: The claim of LACT will be paid in full through the plan at the applicable 18% interest rate through either the refinancing or the sale of the Mulholland Property and/or Vacant Lots.

**CLASS 1(B)**

Claim/Collateral: Grimm Investments, LLC has a claim secured by a first position deed of trust in the estimated amount of $6,364,166.66 ("Grimm Loan #1") as of the Petition date.

Impaired/Not Impaired: Impaired.

Treatment: Debtor intends to pay off Grimm Loan #1 through the refinancing or sale of the Mulholland Property and/or Vacant Lots.

**CLASS 1(C)**

Claim/Collateral: Grimm Investments, LLC ("Grimm Loan #2") has a claim secured by a second position deed of trust with an estimated claim amount of $2,000,000.00 as of the Petition date. Grimm Loan #2 is cross-collateralized by another real property owned by Rosamond 5 Properties LLC, which is an entity owned and controlled by Debtor's principal, Patrick R. Kealy.

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor intends to pay off Grimm Loan #2 through the refinancing or sale of the Mulholland Property and/or Vacant Lots. A true and correct list of Debtor's secured creditors is attached to Debtor's Disclosure Statement as **Exhibit-G**.

2. **Classes of Priority Unsecured Claims**

Debtor does not have any classes of priority unsecured claims.

3. **Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). In the present case, the Debtor estimates that there are approximately $6,797.38 in general unsecured debts.

**Treatment**:  Holders of General Unsecured Claims will receive 100% of their claims upon the Debtor obtaining the funds through either the refinancing or sale of the Mulholland Property and/or Vacant Lots.  A true and correct list of Debtor's general unsecured creditors is attached to Debtor's Disclosure Statement as **Exhibit-D**.

**4.  Interest Holders (Class 3)**

Debtor's interest holder is Patrick R. Kealy who is the Debtor's Managing Member and 100% shareholder.  Mr. Kealy is not a creditor of the Debtor and will retain his equity interest in the Debtor.  A true and correct list of the equity interests is attached to Debtor's Disclosure Statement as **Exhibit-E**.

**Treatment**:  Mr. Kealy will retain his equity interest in the Debtor.

**D.  MEANS OF PERFORMING THE PLAN**

*1. Funding for the Plan*

The Debtor will fund the Plan from the refinancing or sale of some or all of its properties, which includes the seven vacant lots and the Mulholland Property.

Option #1: Refinancing with Capital2Market

Debtor's principal, Mr. Kealy, has been working with Capital2Market to obtain financing to pay off the Debtor's obligations in full.  Mr. Kealy owns another entity called Rosamond 5 Properties LLC which owns a 16.4-acre lot in Rosamond, Kern County ("Rosamond Property").  The Rosamond Property will be used as a collateral for Capital2Market's funding.  Capital2Market will loan the funds to Rosamond 5 Properties LLC, and Rosamond 5 Properties LLC will pay off Grimm Loan #1 and Loan #2 in full, as well as the property taxes and Debtor's general unsecured creditors in full. The details of Capital2Market's proposal are attached to Debtor's Disclosure Statement as **Exhibit-B.** Debtor anticipates getting a commitment letter from Capital2Market on or before November 5, 2021 regarding the advance of the initial $8 Million to Rosamond 5 Properties LLC.  If, for some unanticipated reasons, the deal with Capital2Market does not memorialize, Debtor will consider Option #2.

Option #2: Development Project with Venture Capital Partners LLC

On October 11, 2021, Debtor received a Letter of Intent to refinance from Venture Capital Partners LLC ("VCP"). VCP has been reviewing a number of projects, including the development of a multi-lot property on Mulholland Drive, which property (the Mulholland Property and the seven lots) is owned by the Debtor jointly with 8th Street MB LLC. VCP made the following proposal to the Debtor regarding a development project:

**Investor**: Venture Capital Partners LLC
**Amount and Use**: $34,000,000 to be used for the purchase of the Property for all lots and existing residence.
**Project Manager**: Ocean Grown Organics, Inc. ("OGO")
**Conditions**: Due diligence of the Property, to VCP's satisfaction, showing all easements, CC&Rs, appraisals, soil tests, and any other tests, city permits, code compliance, engineering documents, architectural permits, reports, approvals, instruments or records as may be required to verify the owners' ability to develop the Property in accordance with OGO's plans, which involve (a) the demolition and re-building of the existing residence at 13511 Mulholland Dr., and (b) construction of up to 20 new residencies on adjacent lots described in the definition of the Property.

If Debtor's efforts to obtain the funds through Option #1 fail, Debtor will consider VCP's proposal, and once an agreement is reached, the necessary motion to obtain this Court's approval will be filed. If Debtor proceeds with Option #2, Debtor anticipates receiving the funds in or about March 2022 to pay off all obligations in full.

Option #3: Sale of Debtor's Properties

On or about September 27, 2021, Debtor's principal met with the owner of Yucca Valley Property LLC ("Potential Buyer") for the Vacant Lots and the Mulholland Property. On September 28, 2021, the Potential Buyer made an offer to purchase the Vacant Lots and the Mulholland Property. On or about October 8, 2021, Debtor submitted a counter offer to the Potential Buyer. The negotiations are still ongoing, and if the Potential Buyer agrees to the Debtor's proposed counter offer, the terms will be memorialized in writing and a Sale Motion will be filed with this Court. The proceeds from the sale will be sufficient to satisfy all of the Debtor's obligations in full.

A true and correct copy of the Debtor's projected income and expense statement with a copy of the October 11, 2021 Letter of Intent sent to Debtor by Venture Capital Partners LLC

and October 12, 2021 Offer Letter from Capital2Market is attached to Debtor's Disclosure Statement as **Exhibit B.**

   *2. Post-Confirmation Management*

   Management of the Reorganized Debtor will remain with its Managing Member, Patrick R. Kealy.

   Mr. Kealy, as the Principal and Managing Member of the Debtor, handles the business operation, including the marketing, refinancing, and/or the sale negotiations. He does not receive any compensation from the Debtor and does not intend to receive any salary from the Debtor post-confirmation.

   *3. Disbursing Agent*

   Debtor's principal, Mr. Kealy, shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. He shall not be compensated for performing these services.

   Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

   Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be re-vested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

**III.    TREATMENT OF MISCELLANEOUS ITEMS**

A. EXECUTORY CONTACTS AND UNEXPIRED LEASES

   1.    Assumptions

   The Debtor does not have any executory contracts and/or unexpired leases to assume.

   2.    Rejections

   Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date. The Debtor rejects the residential lease agreement it currently has with its tenant, Todd Graham for the Mulholland Property.

B.  RETENTION OF JURISDICTION

The Court will retain jurisdiction over this bankruptcy case until a final decree is entered by the Court. It is estimated that the final decree will be entered approximately six (6) months after the Plan is confirmed by the Court. At that time the bankruptcy case will be closed.

IV.    EFFECT OF CONFIRMATION OF PLAN

A.  DISCHARGE

Debtor is eligible for a discharge upon entry of the order confirming the Plan.

B.  REINVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and are free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

C.  MODIFICATION OF THE PLAN

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

D.  POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF
    REORGANIZED DEBTOR'S PROFESSIONAL

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by the Post-Confirmation Professionals, the

11
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Case 2:21-bk-16454-BR   Doc 53   Filed 11/30/21   Entered 11/30/21 21:39:51   Desc
Main Document      Page 137 of 141

1  Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses

2  without notice, hearing, or order of the Bankruptcy Court.

3      In the event there is a default by Debtor in its payment of fees to Law Offices of Michael

4  Jay Berger ("Berger"), Berger will give the Debtor notice of the default by electronic mail and

5  advise the Debtor that it has ten (10) days to cure the default. If Debtor does not cure within that

6  time period, Berger will be permitted to accelerate the balance due at the time and enforce the

7  order of this Court approving the fees by whatever means are available to it including the costs

8  and expenses related to the recording of the order and costs of collection. Berger shall not be

9  required to get any further approval of this Court for payments related to outstanding fees.

10     Berger and Debtor are permitted to communicate and agree to payment of Berger's

11  administrative claim on an expedited basis, if the ability to pay arises.

12  **E.  QUARTERLY FEES**

13     Debtor will pay the quarterly fees as they become due.

14  **F.  POST-CONFIRMATION CONVERSION/DISMISSAL**

15     A creditor or party in interest may bring a motion to convert or dismiss the case under

16  §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court

17  orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had

18  been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

19  revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property,

20  but only to the extent that relief from stay was not previously authorized by the Court during this

21  case.

22     The order confirming the Plan may also be revoked under very limited circumstances.

23  The Court may revoke the order if the order of confirmation was procured by fraud and if the

24  party in interest brings an adversary proceeding to revoke confirmation within one hundred and

25  eighty (180) days after the entry of the order of confirmation.

26  ///

**12**
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

## G. FINAL DECREE

The Debtor reserves the right to request an entry of the Final Decree once the Plan has been substantially consummated.

Dated: October 12, 2021         LAW OFFICES OF MICHAEL JAY BERGER

By:    /s/ Michael Jay Berger
         MICHAEL JAY BERGER
         Attorneys for Debtor and Plan Proponent,
         New Holland LLC

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/13/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Ron Maroko ron.maroko@usdoj.gov
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Counsel for Grimm Investment: William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 10/13/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
U.S. Trustee
Attn: Ron Maroko
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 10/13/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Honorable Barry Russell**
**United States Bankruptcy Court**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2021 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION; DECLARATION OF PATRICK R. KEALY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/13/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Ron Maroko ron.maroko@usdoj.gov
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Counsel for Grimm Investment: William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On 10/13/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
U.S. Trustee
Attn: Ron Maroko
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 10/13/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Honorable Barry Russell**
**United States Bankruptcy Court**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2021 | Peter Garza | /s/Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF PATRICK KEALY AND MICHAEL JAY BERGER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/30/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Michael Jay Berger michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Ron Maroko ron.maroko@usdoj.gov
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Counsel for Grimm Investment: William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On 11/30/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
U.S. Trustee
Attn: Ron Maroko
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 11/30/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Honorable Barry Russell**
**United States Bankruptcy Court**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/30/2021 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**